7940 Receipt 04-05-19 (A)

(EXHIBIT- B-1)

Page 1 of 2, Attachment A, IMPP 01-118D
Effective 03-30-16
0590

(NOTE: RETURNED TO ME 4/17/2019 BY U.T. B. GRAFF A-2/227/HCF)

# 7940

## PROPERTY DAMAGE/LOSS OR PERSONAL INJURY CLAIM FORM

(PROCESSED AND RETURNED TO ME ON 4-17-2019)

### Section I

DEPUTY WARDEN
APR 05 2019
PROGRAMS

(3-PAGES ATTACHED)

| Filed AT Facility No.: 02 | Facility Initials: H.C.F.-C |
|---|---|
| Filed AGAINST Facility No.: 02 | Facility Initials: H.C.F.-C |

(Refer to PLC coding manual for facility no. & initials)

Name of Claimant (Last, First, MI): BROWN DAVID C. KDOC Number: #57800

Type of Claim (circle one): Lost Property Damaged Property **(Injury)**

Amount of Claim: $500.00 Date of Loss Damage, or Injury (MO/DAY/YR): 9-13-2018

Where Loss, Damage, or Injury Occurred:

If occurred in cellhouse, enter cellhouse/room number: A-2 / CELL #227 / HCF-C

Otherwise, circle one of the following: Mailroom Laundry Other Location Rec Gym Central Property Dining Room

RECEIVED MAR 25 2019 Facility Management Area

NATURE OF CLAIM (Set forth detailed facts, including date of loss, damage or injury, how it occurred, place of occurrence, how you claim institution or employee was negligent, and amount of the claim.):

THIS CLAIM IS AGAINST CSI TODD E. SWENSON FOR HIS INTENTIONAL USE OF ILLEGAL EXCESSIVE USE OF FORCE ON 9-13-2018 IN A-2 CELLHOUSE AT MY CELL #227.

SEE THE ATTACHMENTS FOR DETAILS AND FACTS

I am aware that presenting a false claim may result in penalties (under K.S.A. 75-7501 et seq., K.A.R. 44-12-101 et seq., etc.), and I declare (or verify, certify or state) that the foregoing is true and correct to the best of my knowledge, understanding, and belief.

Claimant Signature: David Brown Date: 9-21-2018

Subscribed and sworn to before me this 24th day of September, 2018

JEFFREY NEAL PETTIJOHN
Notary Public - State of Kansas
My Appt. Expires 7-19-22

Notary Public [signature]

My Commission Expires: ______

Received from Offender/Claimant: [signature] Date: 9-24-18 Time: [illegible]

UT Name (print): [signature] UT Signature: [signature] Claimant Initials: DB

### Section II

Received by Warden/Superintendent on (MO/DAY/YR): 10-01-18 Facility Log No. Assigned: BA0007940

Investigation Report:

SEE ATTACHED

| Date (MO/DAY/YR): | Investigator Name (print): | UT Member or Investigator Signature: |
|---|---|---|
| 1/4/19 | Lloyd Jensen III UTM | [signature] |

(PAGE-1-OF-5)

Form #01-118D-001

JDG

#7940

**Section III**

Warden/Superintendent's Findings:

(EXHIBIT-B-2)

Warden/Superintendent's Recommendation: (circle one)

01-Approved for same amount
02-Approved for lesser amount of ___________
03-Disapproved (circled)
04-Claim Withdrawn

Date (MO/DAY/YR): 3-14-19 | Signature - Warden/Superintendent or Designee

**Section IV**

Date Received by Central Office (MO/DAY/YR): 3-25-19

Secretary's Response:

Secretary's Recommendation: (circle one)

01-Approved for same amount
02-Approved for lesser amount of ___________
03-Disapproved (circled)
04-Claim Withdrawn
10-Held pending submission of supplemental data

Date (MO/DAY/YR): 3-25-19 | Signature - Secretary or Designee

**Section V**

Offer of Settlement (STAFF USE ONLY):

**CLAIMANT MUST COMPLETE THE FOLLOWING IF PAYMENT IS TO BE AWARDED**

I agree to accept the above offer as full and final settlement of this claim against the State of Kansas and any individual, employee or agent thereof, and I waive any claims against the State, its agencies or employees arising out of this incident.

Date: | Claimant Signature: | Social Security No.:

**NOTE**: This claim cannot be processed and paid by the Division of Accounts and Reports unless the claimant has disclosed his/her social security number. Any payments to offender claimants shall be in the form of credits to offender trust fund accounts.

Action by Accounts & Reports: **Paid** ___________ **Not Paid** ___________

(PAGE-2-OF-5)

Form #01-118D-001

(INJURY CLAIM) (EXHIBIT-B-3)
#7940

RE: ATTACHMENTS TO 9-13-2018 INJURY CLAIM

ON SEPTEMBER 13TH, 2018 AT HUTCHINSON CORRECTIONAL FACILITY, IN A-2 CELLHOUSE, AT THIS PRISONERS ASSIGNED CELL #227, CSI TODD F. SWENSON KNOWINGLY, INTENTIONALLY AND WITH THE INTENT TO PHYSICALLY HARM ME SLAMMED THE FOOD PASS DOOR ON MY HAND AND FINGERS WHILE I CRIED OUT IN PAIN, CONTINUED TO APPLY PRESSURE CAUSING ME FURTHER PAIN. CSI SWENSON SAID THINGS DURING THIS TIME SUCH AS, "HOW'S THAT FEEL B****?!", "DON'T MOVE YOUR HAND NOW PUNK!!", I'M GONNA RIP YOUR F***'EN HAND OFF!!" AND OTHER THINGS, WHAT CAUSED ME THE MOST PAIN, AND WHICH IM STILL SUFFERING FROM SIX DAYS LATER IS WHEN CSI SWENSON CLIMBED ON THE TOP RAIL, GRIPPING THE RAIL AND USING IT AS LEVERAGE, PUT HIS COMBAT BOOT ON THE FOOD PASS DOOR, WITH MY HAND STILL OUTSIDE THE FOOD PASS, AND STARTED CRUSHING MY HAND. ALTHOUGH I SAID ALRIGHT, ALRIGHT! CSI SWENSON REFUSED TO ALLOW ME TO PULL MY HAND IN AND CONTINUED TO CRUSH MY HAND TRAPPED IN THE METAL FOOD PASS DOOR WHILE I CRIED OUT IN PAIN AND WHILE CSI SWENSON SAID, "YEAH BITCH, DONT CRY NOW!" AS I CRIED OUT IN PAIN. I NEVER ONCE TRIED TO GRAB CSI SWENSON OR HIT HIM OR THROW ANYTHING OR DAMAGE ANYTHING. I HAD MY HAND OUT THE FOOD PASS BECAUSE CSI SWENSON TOOK MY CUPS REACHED IN MY CELL DROPPED THEM ON THE FLOOR, AND TOLD ME I WASNT GETTING COFFEE OR TEA, WHICH IS PART OF DINNER, BECAUSE I WAS BEING ARGUMENTIVE, WHICH I ONLY STATED THE FACTS, WHICH WERE, CSI SWENSON CUSSED AT ME, BEING UNPROFESSIONAL AND DISRESPECTFUL. THAT IS NOT CAUSE AND/OR JUSTIFICATION TO DENY ME

→→ CONTINUE TO THE NEXT PAGE → → →

(INJURY CLAIM) (EXHIBIT-B-4)

#7940

RE: ATTACHMENTS TO 9-13-2018 INJURY CLAIM

PART OF MY DINNER. I WASNT YELLING EITHER. SO I SHOULDNT OF BEEN DENIED PART OF MY DINNER UNIT TEAM PETTIJOHN SAW CSI SWENSON CLIMB ON THE RAILING AND USE HIS FOOT/LEG ON THE FOOD PASS DOOR TO CRUSH MY HAND. MY NEIGHBOR DID AS WELL SEVERAL INMATES HEARD CSI SWENSON CALL ME PUNK BITCH, TELL ME HE WAS GOING TO RIP MY F****N HAND OFF, ETC. AND WERE YELLING CUSSING AT CSI SWENSON AND BANGING ON THEIR DOORS AS CSI SWENSON CAUSED A HOSTILE WORK PLACE BY HIS UNPROFESSIONAL, ILLEGAL, EXCESSIVE USE OF FORCE AND HARMING ME. THE FACT IS CSI SWENSON'S INTENT WAS NOT TO RESTORE ORDER OR HAVE ME COMPLY WITH A DIRECT ORDER, BUT TO CAUSE ME PAIN AND SUFFERING CSI SWENSON WAS REMOVED FROM THE CELLHOUSE DUE TO HIS UNPROFESSIONAL/ILLEGAL ACTIONS AND I BELIEVE ITS FAIR TO SEEK REQUESTED RELIEF

[signature] Daniel Brown #57800
A-2/227/HCF

SUBMITTED THIS CLAIM ON FRIDAY
9-21-2018

# 7740

(EXHIBIT-B-5)

RE: ATTACHMENT TO INJURY CLAIM

THINGS I'M WILLING TO ACCEPT IN PAYMENT FOR THE SEPTEMBER 13TH, 2018 INJURY CLAIM AGAINST CSI TODD SWENSON, DUE TO HIS UNNECESSARY, ILLEGAL, UNPROFESSIONAL, VIOLENT, ASSAULT, BATTERY AND EXCESSIVE USE OF FORCE AGAINST ME AT HUTCHINSON CORRECTIONAL FACILITY, IN A-2 CELLHOUSE AT MY ASSIGNED CELL # 227.

1) FAN
2) PLUG IN CLOCK
3) AM/FM CLOCK RADIO
4.) WRIST WATCH
5.) LAMP
6.) BATTERY CHARGER
7) RECHARGABLE BATTERIES
8.) HOT POT
9.) MP3 / MP4 PLAYER
10.) GYM SHORTS / SIZE LARGE
11.) SWEAT SHIRT / SIZE LARGE
12.) SHOES / SIZE 10
13.) COFFEE CUP OR MUG W/ LID
14.) CANTEEN FOOD, DRINK, HYGIENE ITEMS
I'D LIKE COFFEE, SOUPS, CHIPS, MEATS, FISH, SOAP, P B J, CEREAL, BEANS, RICE, JAL. PEPPERS, CHEESE, COTTON SWABS, SWEATS, ETC.
15.) I'D LIKE TO BE ALLOWED TO RECEIVE A MONTHLY UNION SUPPLY BOX FROM FAMILY / FRIENDS
16.) CALCULATOR

# 7940
(EXHIBIT-B-6)

Property Claim Receipt Date: 10-01-18

Brown, D , # 57800 Location AZ-227

Your property claim has been received by the Warden's Office for investigation. Please refer to the number on the attached copy when making inquiries regarding this claim.

C. Wise, HCF Central Unit

# 7740

(EXHIBIT-B-7)

# MEMO

AD ASTRA PER ASPERA
Kansas
Department of Corrections
Hutchinson Correctional Facility

**Hutchinson Correctional Facility**
**P.O. Box 1568**
**Hutchinson, KS 67504-1568**
**(620) 728-3338**
**Fax: (620) 728-3473**
**Email: HCFI@doc.ks.gov**
**www.doc.ks.gov**

**DATE:** November 26, 2018
**TO:** D. Schnurr, Warden
**FROM:** UTS J. Pettijohn

**CC:** Brown, David #57800
**RE:** Injury Claim #BA0007940

---

Offender Brown submitted a personal injury claim #BA00007940 on 9-21-18. Brown claims that CSI Swenson used excessive use of force on 9-13-18 at his cell A2-227. Brown states that Swenson knowingly and intentionally slammed the food pass port door on his hand and fingers. Brown claims that Swenson used the top rail of the 200 run for leverage to put his combat boots on the food pass port door, with Brown's hand still outside. Brown claims the price of his injuries are $500.

Corizons medical staff was questioned about the extent of offender Brown's injuries. They stated that Brown was seen on 9-13-2018, after the incident took place. The RN stated that he had some scratches on his hand, but noted no bleeding or immediate major injury. RN also put in a follow up appointment for an x-ray, in which Corizons states was completed the next day 9-14-18. The x-ray showed no fractures or any real significant injury. Brown was also seen by the Doctor on 9-27-18 for a follow up, and it was noted that he had been treated and was released from the injury.

During the investigation it was found that CSI Swenson did in fact use excessive force in this situation, and the captain's office was notified immediately after. Supervisory staff are notified in the event that an employee is being accused of inappropriate behavior. Be advised that, upon completion of an investigation, if it is determined that a security staff person has behaved inappropriately; he/she will be counseled by security supervision regarding acceptable behavior. Any action taken will be at the discretion of security supervision and administration, will not be made known to the inmate population. CSI Swenson's actions were deemed inappropriate and the situation was handled at a supervisory level.

This investigator does not support payment.

FINALLY RETURNED TO ME BY, U.T. GRAFF, AT CELL #227, IN A-2 CELLHOUSE, ON 4-17-2019.

(EXHIBIT- B-8)

# AFFIDAVIT

STATE OF KANSAS )
) SS.
COUNTY OF RENO )

I, John K. Delaney, being of lawful age, do solemnly swear upon my oath and under the penalty of perjury that the following facts and allegations contained herein are true and correct:

On September 13, 2018, while housed in cell A2 135, during food pass I began hearing a confrontation between CSI Swenson and David Brown (#57800), I am familiar with both people and recognised their voices. I came to my cell door, and could hear CSI Swenson refusing David Brown drinks and food.

Words where exchanged back and forth, and I heard CSI Swenson tell David Brown, that he would "Rip your fucking arm off", he also stated, "don't move your arm you little bitch". The statements caused me to look up, and I was able to barely see the confrontation in the reflection of the window.

I was able to see David Brown trying to pull his hand in as CSI Swenson began slamming the food pass door over and over, useing it as a weapon, and telling David Brown, "no, don't move your hand", and, "don't cry you little bitch".

(EXHIBIT-B-9)

I was able to see CSI Swenson climb up onto the top rail of the railing of the 200 run, useing his body weight and the leverage of the rail to smash David Brown's hand between the door and the food pass.

I could hear David Brown screaming in pain, and telling CSI Swenson to stop. David Brown was screaming for help from other gaurds or staff.

CSI Swenson would not allow David Brown to pull his hand inside, and continued to use the food pass door as a weapon to smash David Brown's hand, asking him "how's that feel you little bitch", and, "shut up, stop crying".

This continued for ruffly two-three minutes before I heard the food pass slam shut, and saw CSI Swenson walk off laughing. I could also hear David Brown asking for medical assistance, and heard CSI Swenson tell him to "shut the fuck up". This is all that I know.

John Delaney 72292
John K. Delaney #72292

SUBSCRIBED AND SWORN to before me on this 13 day of May, 2019.

[signature]
Notary Public

My Commission Expires:
03/08/2023

BRENDAN D. GRAFF
Notary Public - State of Kansas
My Appt. Expires

(EXHIBIT-B-10) #1 7940

# AFFIDAVIT

STATE OF KANSAS )
) ss.
COUNTY OF RENO )

I, Anthony T. Jackson being of lawful age, do solemnly swear upon my oath and under the penalty of perjury that the following facts and allegations contained herein are true and correct:

On 9-13-18 While being housed in A-2 cell#223 at Hutchinson correctional facility. I heard for unit team Petty John, I heard David Brown#57800 Screaming for Petty John, the unit team, telling him CSI Swenson was refusing to give Inmate brown#57800 his Lunch and Drink.
I heard CSI Swenson yelling about Inmate brown#57800 "not getting Shit to drink", And "I'm going to Rip your arm off." "I'm going to Rip your fucken arm off". "Hows That feel" I heard Inmate brown 57800 Screaming "Let my arm out" "Hows that feel" "Dont try to move It now you Little bitch." There was alot of banging and hollering and I could Still hear Inmate Brown#57800 yelling for Petty John to come. And Its an Emergency, CSI Swenson is refusing to give me my food and Drink, Then I heard Inmate brown 57800 yelling "Alright Alrigh, Stop". I was yelling and telling the CSI Swenson, to stop Smashing his hand, And I was yelling for help. Also, I could partially See CSI Swenson Standing, like Stooping on The bar or pole, and It looked like he was using the pole for leverage to Smash Inmate browns#57800 arm or hand. I Know he was on the pole Though. I Think It was the Third Pole. After that part, when he got down. I believe Inmate Brown 57800 got his arm out the food Pass, I heard It Slam, Then CSI Swenson walked off down the run.

anthony jackson
Affiant

SUBSCRIBED AND SWORN to me on this 15 day of March, 2019.

[signature]
Notary Public

My Commission Expires: 03/08/2023

BRENDAN D. GRAFF
Notary Public - State of Kansas
My Appt. Expires

LEFT HAND, FINGERS, WRIST, #794 (1)

(EXHIBIT-B-11)

✓ 9-13-2018 HCF/A-2/CELL #227/3-11 SHIFT/ CSI TODD E. SWENSON

U.T. PETTIJOHN WITNESSED, AND TOLD U.T. DAWES ABOUT IT. TOLD ME HE WITNESSED IT.

SEEN NURSE FOR EMERGENCY SICK CALL. BLEEDING, SWELLING, GIVEN ICE BAG AND R. JONES WITNESSED SWOLLEN HAND, INJURIES. CO/ GIBBS ESCORTED ME TO EMERGENCY SICK CALL. | Follow up sick call on 9-14-2018 ✓

~~9-21-2018 - CSI Smith took INJURY claim to U.T. Pettijohn to get copy/refused me a copy~~ ~~[illegible]~~ told Smith to tell me I'd get a copy back not just the front page, which I said would happen, as it did a couple times in the past.

~~[illegible]~~ nurse practitioner - 9-27-2018 Said it didn't look too bad didn't even look at my hand yet! Carmen g. Baynham * CRONIC care * ordered X-Ray

X-RAY on hand - 10-1-2018 ✓ BY EDWIN A. JOYNER JT. (18) DAYS TO GET X-RAY

/ 11-7-2018 SICK CALL W/ NINA J. MORALES. SAID SHE'D PUT ME DOWN FOR A FOLLOW UP. SAID SHE COULDN'T GIVE ME ACE BANDAGE/WRAP. SAID I'M USING A COUPLE SOCKS. SAID I HAVE SERIOUS PAIN Said she'd put me in for a follow up to see the practitioner

ESCORTED BY 2 SST

SST THOMAN GEORGE, SST GONZALES GILBERTO - Assault and battery

SICK CALL ON 11-26-2018 A-2/227/HCF ESCORTED BY CO ZAGER

NURSE SAID SHE DIDN'T SEE ANYTHING ABOUT A FOLLOW UP, BUT SAW WHEN I WAS SEEN KATY WINKLER

GOOD LOOKING OLDER NURSE - ? KATHLEEN M. WINKLER

SAID I'M IN PAIN 24/7 RATED 7 TO 8, BUT IF I TRY TO PICK UP BOOK, FOOD TRAY, ICE CHEST, SOMETHING WITH A LITTLE WEIGHT ITS PAIN RATED AT 15 ON SCALE OF 1-10. SAID I'M NOT TRUSTING IN KDOC MEDICAL SAYING SOMETHING'S NOT BROKE AFTER AN X RAY DUE TO PAST EXPERIENCES

Had to put in another sick call as a reminder to been seen by practitioners

Seen by Casey Silas (pm)

Sick call 12-6-2018 THUR. SEEN PRACTITIONER BLACK LADY CARMEN BAYNHAM * CRONIC CARE * SHIRLEY HOOVER LPN old bitch nurse there too. Took Blood pressure, was high, took again, still a little high

Said my hand hurts really bad. Am using a sock, need a ace wrap. refused to give me one. said she wants to get another X-ray. Although last one they said my hand is fine. Said I was in pain all the time. (no blood lab taken for cronic care)

Also talked about T.B. I took T.B. test later THAT DAY. THYROID CRONIC CARE PLUS FOLLOW UP ON HAND

2nd X-RAY DONE - CO/ ZAGER ESCORTED ME HCF MAX CLINIC. JR DID X-RAY. ON

2-24-2018 | Provider black lady. Case escorted AZ sick call cronic care - lady said hand not broke, bad bruise, "contusion" will always be there... THAT 12-24-2018

RE: DO I HAVE RIGHT TO PRIVACY OF MEDICAL RECORDS FROM NON MEDICAL STAFF?

Page 1 of 1, Attachment A, HCF GO 01-101
Effective 06-19-18

OFFENDER REQUEST TO STAFF MEMBER

(EXHIBIT–B-12)

To: DEBRA LUNDRY R.N. H.S.A. AT HCF Date: 5-8-2019
(Name and Title of Officer or Department)

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Offender

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

MAY 1 0 2019

KANSAS DEPARTMENT OF CORRECTIONS

# 57800
Number

**OFFENDER REQUEST TO STAFF MEMBER**

**To:** DEBRA LUNDRY R.N., H.S.A. AT HCF **Date:** 5-8-2019
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

I WANT TO KNOW IF NON-MEDICAL STAFF, UNIT TEAMS, GUARDS, WARDENS, CAN ACCESS MY MEDICAL FILES TO SEE WHAT DISEASE I MIGHT HAVE, OR WHAT KINDS OF MEDICATIONS I MIGHT TAKE, OR WHAT INJURIES I'VE HAD WITHOUT MY CONSENT? OR DO I HAVE A LEGAL RIGHT TO PRIVACY WHEN IT COMES TO MY MEDICAL INFORMATION THAT PREVENTS NON MEDICAL STAFF FROM ACCESSING MY MEDICAL RECORDS?

Work Assignment: Living Unit Assignment: A-2/227/H.C.F.

Comment: Detail or C.H. Officer:

Disposition:

To: Brown 57800 Date: 5/10/19
(Name & Number)

Disposition: All records belong to KDOC. Information is released to KDOC depending on issue and security needs of the facility. Otherwise your signature is required for all release of information.

Dlund for HSA
Employee's Signature

To be returned to offender.

D 0000

(RE: CAN NON MEDICAL ACCESS MY MEDICAL RECORDS WITHOUT MY CONSENT?)

Page 1 of 1, Attachment A, HCF GO 01-101
Effective 06-19-18

OFFENDER REQUEST TO STAFF MEMBER

(EXHIBIT-B-13)

To: U.T. GRAFF OF A-2 AT H.C.F. Date: 5-8-2019
(Name and Title of Officer or Department)

Kenny
Unit Team, Detail or Cellhouse Officer's Signature

To be retained by Offender

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

#57800
**Number**

## OFFENDER REQUEST TO STAFF MEMBER

**To:** U.T. GRAFF OF A-2 AT H.C.F. **Date:** 5-8-2019
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

CAN WARDENS, UNIT TEAMS, GUARDS, (NON-MEDICAL STAFF) ETC. GET ON THE COMPUTER OR ACCESS THE CLINICS MEDICAL FILES TO SEE WHAT MEDICATIONS I TAKE, OR WHAT DISEASE I HAVE OR WHAT INJURIES IVE HAD WITHOUT MY CONSENT?

Work Assignment: N/A Living Unit Assignment: A-2/227/H.C.F.
Comment: Detail or C.H. Officer:

Disposition:

To: Date: 5/15/19
(Name & Number)

Disposition: We have access only to your medical level and restrictions that would impact housing assignment or ability to participate in activities/details.

Employee's Signatnre

**P-0009**

**To be returned to offender.**

INMATE REQUEST TO STAFF MEMBER

(EXHIBIT-B-14)

11-19-2018 (MONDAY)

To: U.T. Pettijohn Date: 11-18-18

(Name and Title of Officer or Department) C/O ZAGER

Zager

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Inmate

(INJURY CLAIM BA0007940)

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE-1-of-2)

57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

To: U.T. PETTIJOHN **Date:** 11-19-2018

(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

AS I TOLD YOU U.T. PETTIJOHN AND AS C/O SMITH INFORMED YOU FOR ME I WANT THE COMPLETE INJURY CLAIM CASE NO.# 7940 WHICH YOU ONLY GAVE ME THE FRONT PAGE OF. THIS IS MY 2ND REQUEST FOR THE RECORDS, AND AGAIN YOU HAVEN'T ANSWERED AND RETURNED ANOTHER FORM-9 IN OVER A MONTHS TIME, YOU TOLD ME/ASSURED ME I'D GET A COPY OF THE WHOLE INJURY CLAIM →

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer:

Disposition:

To: Date:

(Name & Number)

Disposition: This claim was completed and you should receive copy in the mail

[signature]

Employee's Signature

**To be returned to inmate.**

P-0009

(RE FORM 9 DATED 1-19-2018 PAGE-2-OF-2)

(EXHIBIT-B-15)

WHICH YOU SAID YOU HAD ON YOUR DESK AND WOULD MAKE SURE I GOT A COPY OF SO THIS IS A REMINDER I STILL NEED IT AND I AM STILL WAITING.

DENIED AND ITS IN THE MAIL AND ID GET IT SOON AND SIX DAYS LATER I STILL HAVENT GOTTEN INMATE REQUEST TO STAFF MEMBER AND YOU SAID IT WAS DENIED BECAUSE THE MATTER WAS HANDLED INTERNALLY AND ID HAVE TO TAKE IT DOWN TOWN

To: UNIT TEAM PETTIJOHN Date: 12-5-2018

(Name and Title of Officer or Department)

(EXHIBIT-B-16)

[signature] CO1

Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by Inmate**

(INJURY CLAIM BA00057940)

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE-1-OF-2)

57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

**To:** UNIT TEAM PETTIJOHN **Date:** 12-5-2018

**(Name and Title of Officer or Department)**

**State completely but briefly the problem on which you desire assistance. (Be specific.)**

YOU TOLD ME, LAST WEEK, MY INJURY CLAIM AGAINST, CSI SWENSON WAS DENIED, BECAUSE THEY SAID IT WAS HANDLED INTERNALLY, AND YOU SAID ITS IN THE MAIL, AND ID GET IT SOON, BUT SIX DAYS LATER, AND I STILL HAVENT GOTTEN ANYTHING, AS YOU SAID ID HAVE TO TAKE IT DOWN TOWN I FIRST NEED THE CLAIM RETURNED TO ME. THE COMPLETE INJURY CLAIM AS I EXPLAINED. CAN YOU →

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer: [signature] CO1

Disposition:

To: Date:

(Name & Number)

Disposition: When it is finished with its process you will recieve copies

[signature]

Employee's Signature

**To be returned to inmate.**

P-0009

RE: INJURY CLAIM ON CSI SWENSON

(RE: PAGE-2-OF-2 TO FORM-9 DATED 12-5-2018)

(EXHIBIT-B-17)

CHECK THE STATUS OF THIS INJURY CLAIM AND FIND OUT WHY I HAVENT RECEIVED IT IN THE MAIL TO DATE?

SUBMITTED 9-21-2018 #7940

INMATE REQUEST TO STAFF MEMBER (EXHIBIT-B-18)

To: DEPUTY WARDEN T. WILLIAMS Date: 4-16-2019
(Name and Title of Officer or Department) (PAGE 1-OF-4)

Unit Team, Detail, or Cellhouse Officer's Signature (COPY) To be retained by Inmate

(ALLEGEDLY SUBMITTED) ↑ 405 TOLLESON BRACKEEN

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN D.
Last Name Only

KANSAS DEPARTMENT OF CORRECTIONS
(PAGE-1-of-4)
INMATE REQUEST TO STAFF MEMBER

#57800
Number

To: DEPUTY WARDEN T. WILLIAMS Date: 4-12-2019
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I SUBMITTED AN INJURY CLAIM #7940 ON 9-21-2018. I WAS TOLD BY U.T. PETTEJOHN THE CLAIM WAS DISMISSED BECAUSE THE MATTER WAS HANDLED INTERNALLY AND AS I TOLD U.T. PETTEJOHN THAT DOESN'T COMPENSATE ME FOR MY INJURIES (PAIN & SUFFERING), WHICH FOR THE RECORD IM STILL SUFFERING FROM TO DATE 4-10-2019. BUT IM NOT UNDERSTANDING WHY MY INJURY CLAIM WAS DENIED IN THE FIRST PLACE → →

Work Assignment: N/A Living Unit Assignment: A-2/227/H.C.F.

Comment: Detail or C.H. Officer:

Disposition:

NOTE: ALL OF A SUDDEN I GET THE CLAIM BACK ON 4-17-2019 FROM U.T. GRAFF AT CELL 227/A-2/HCF

To: Date:
(Name & Number)

Disposition:

Employee's Signature

To be returned to inmate.

P-0009

(EXHIBIT-B-19)

(RE: FORM-9 DATED 4-12-2019 / PAGE-2-OF-4)

CONTINUED... NOT ONLY DID STAFF WITNESS THE INCIDENT (U/T. PETTIJOHN), BUT SEVERAL INMATES DID AS WELL, THEN, ITS ON CAMERA ON TOP OF THAT. I RECEIVED EMERGENCY MEDICAL TREATMENT DUE TO THE TRAUMA MY HAND WRIST AND FINGERS WERE SUBJECTED TO. U/T. DAWES SAID HE WAS TALKING TO U/T. PETTIJOHN ABOUT IT, AND U/T. DAWES SAID ITS REAL MESSED UP WHAT HAPPEND TO ME, AND U/T. DAWES SAID HE ENCOURAGED U/T. PETTIJOHN TO APPROVE MY INJURY CLAIM, BUT WHEN I SPOKE TO U/T. PETTIJOHN ABOUT HIM KEEPING MY COPY OF THE INJURY CLAIM, HE SAID HE WASN'T THE ONE INVESTIGATING/PROCESSING THE CLAIM, BUT THAT DOESN'T EXPLAIN WHY ITS 4-10-2019 AND I STILL DONT HAVE THE CLAIM. FOR THE RECORD U/T. PETTIJOHN KEPT MY PERSONAL COPY OF THE INJURY CLAIM, WHEN I HAD A GUARD BRING IT TO HIM, WITH THE ORIGINAL TO SIGN AND NOTARIZE. U/T. PETTIJOHN SAID HE'D DO IT LATER AND THAT TURNED OUT TO BE ANOTHER LIE, THEN U/T. PETTIJOHN SAID I'D GET THE COPY WHEN THEY SENT ME THE LOG NUMBER, WHICH ALSO TURNED OUT TO BE A LIE, BECAUSE I ONLY GOT THE FIRST PAGE OF THE CLAIM, SO THE REST OF IT WAS STOLEN BY U/T. PETTIJOHN. SEEMINGLY TO HINDER MY EFFORTS AT BEING COMPENSATED FOR MY INJURIES. THERE IS NO EXCUSE FOR CSI SWENSON REPEATEDLY BATTERING ME WITH A [redacted] PIECE OF STEEL (FOOD PASS DOOR) TO INTENTIONALLY CRUSH MY WRIST, HAND, AND FINGERS, TO REACH IN MY CELL AND TRY TO POKE MY EYES OUT, TO CALL ME B****, P***, P**** AND THEN TO CLIMB ON THE TOP RAIL TO GAIN LEVERAGE AND KICK THE FOOD PASS DOOR INTO MY HAND AND USE HIS BOOT LEG AND BODY WEIGHT TO PIN MY HAND, AND CRUSH IT.

(EXHIBIT-B-20)

(RE: FORM-9 DATED 4-12-2019/PAGE-3-of-4)

CONTINUED... AND ALL THIS WAS DONE WHILE CSI SWENSON WAS VERBALLY ABUSIVE. CSI SWENSON WAS REMOVED FROM THE CELLHOUSE, AND ITS CRAZY MY CLAIM WOULD BE DENIED. U.T. GRAFF TOLD ME EVEN WHEN A CLAIM IS DENIED ITS SENT TO THE DEPUTY WARDEN FOR FINAL REVIEW AND THATS WHY I'M SENDING YOU THIS FORM-9. U.T. PETTIJOHN TOLD ME HE WOULD OF APPROVED THE CLAIM IF HE'D OF PROCESSED IT, BUT HE'S LIED TO ME SO MANY TIMES I WOULDN'T HOLD MY BREATH. U.T. PETTIJOHN SHOULD OF CAME TO MY CELL #227 AND INTERVIEWED TRUTH BE TOLD BECAUSE HE WAS ON THE RUN AND WITNESS THIS INCIDENT. I'M GUILTY OF DISOBEYING AN ORDER AT FIRST, BUT THEN I WAS COMPLYING WITH THE ORDER I WAS GIVEN WHEN CSI SWENSON SAID "DON'T MOVE YOUR HAND NOW B****" BUT NO MATTER OF SUCH FACT I WASN'T DOING ANYTHING BUT TRYING TO GET MY COFFEE AND TEA, AND THEN MY MEAL BECAUSE CSI SWENSON SAID I'M NOT EATING, AND THEN I WAS CALLING U.T. PETTIJOHN TO PLEASE COME TO MY CELL. I'VE BEEN OUTRIGHT DENIED WHOLE MEALS AT THIS FACILITY AT LEAST 3 TIMES, AND ITS [illegible] ED BEEN DOCUMENTED, BUT STAFF ALWAYS GET IMPUNITY SO I DOUBT ANYTHING CAME FROM IT. EVEN SO I REACTED AS I DID BECAUSE I WAS HUNGRY AND WANTED TO SPEAK TO A HIGHER RANKING STAFF MEMBER (U.T. PETTIJOHN) TO SPEAK TO HIM AND MAKE SURE I GOT FED. I DIDN'T TRY TO HURT CSI SWENSON OR HIT HIM OR ANY HARMFUL ACT. THERE'S NO REASON HE HURT ME AS HE DID AND DID SO BECAUSE HE'S GOTTEN IMPUNITY OVER AND OVER AGAIN FOR HIS EXCESSIVE USE OF FORCE IN THE PAST. AND IN THIS CASE, I'M TOLD HE DID GET INTO TROUBLE

(EXHIBIT- B-21)

(RE: FORM-9 DATED 4-12-2019/PAGE-4 of -4)

CONTINUED... FOR HIS ACTIONS, BUT IM SURE THATS JUST DUE TO THE CAMERA FOOTAGE AND SO MANY WITNESSES, SO IM NOT UNDERSTANDING WHY MY CLAIM WAS DENIED AND REQUEST THAT YOU REVIEW AND OVERTURN THE DENIAL AND APPROVE MY CLAIM AS ITS THE JUST THING TO DO. I ALSO REQUEST THAT YOU CAUSE THE COMPLETE CLAIM IS RETURNED TO ME. THANK YOU FOR YOUR TIME AND DO APPRECIATE YOUR ATTENTION INTO THE INJURY CLAIM.

David Brown #57800
H.C.F. PO BOX 1568
HUTCHINSON, KS. 67504
A-2/227

(EXHIBIT-B-22)

RE: CSI SWENSON / INJURY CLAIM / #7940 / SUBMITTED 9-21-2018 / #7940

INMATE REQUEST TO STAFF MEMBER

To: DEPUTY WARDEN T. WILLIAMS

(Name and Title of Officer or Department)

Date: 4-16-2019

(1 PAGE 1 OF 4)

4-2/2021 / HCF Unit 601 c/o S. Johnson

S. Johnson

Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by Inmate**



(EXHIBIT-B-23)

P.O. Box 1568
Hutchinson, KS 67504

Department of Corrections
**Hutchinson Correctional Facility**

Phone: (620) 662-2321
Fax: (620) 728-3473
HCFI@doc.ks.gov
www.doc.ks.gov/facilities/hcf

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 05/03/2019

TO: Brown, David #57800
A2-227

SUBJECT: Form-9 regarding injury claim BA0007940

FROM: Warden Dan Schnurr
HUTCHINSON CORRECTIONAL FACILITY

Your injury claim went through the entire process and was disapproved by Central office. You received a copy of your injury claim from unit team staff. Your injury claim was handled properly and went through every level. There is nothing more that can be done in the matter.

D. Schnurr

Warden Dan Schnurr
Hutchinson Correctional Facility

c: file

RE: MEDICAL FEB 1 2 2019 HCF (3)

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

(EXHIBIT-C-1)

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number #57800

Facility HUTCHINSON CORR. FAC. Housing Unit A-2/CELL# 227 Work Detail N/A. L.T.R.H.U.

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). (ATTACHED ARE (5) HEALTH SERVICES REQUEST FORM'S, AND (5) PAGES DETAILING MY COMPLAINT AGAINST CARMEN G BAYNHAM H.C.F.'S CORIZON'S HEALTH CARE PROVIDER/NURSE PRACTITIONER, FOR DENYING ME MEDICAL TREATMENT, RETALIATION, AND/OR SUBSTANDARD/INADEQUATE TREATMENT, FOR THE INJURIES TO MY LEFT HAND, WRIST, AND FINGERS AND RESULTING PAIN AND SUFFERING)

(SEE ATTACHED DOCUMENTS)

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 2-8-2019(3)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

B. [signature] UTS 2/19/19

Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). __________

David Brown

Inmate Signature (RE: RETURNED TO ME 2-20-2019) Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received 2-26-19 Date of Final Answer 2-28-19 Date Returned to Inmate __________

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

| | |
|---|---|
| Grievance Serial Number | BA00018951 |
| Type of Complaint (Item 4: Code 01-75) | 0 2 |
| Cause of Complaint (Item 5: Code 01-30) | 0 7 |
| Type of Response (Item 6a: Code 01,02,08 or 09) | 0 8 |

HCF/(3)

RE: MEDICAL

(EXHIBIT-C-2)

CORIZON'S NURSE PRACTITIONER/HEALTH CARE PROVIDER CARMEN G. BAYNHAM HAS/CONTINUES TO EITHER DENY ME MEDICAL TREATMENT ALTOGETHER FOR A MEDICAL ISSUE I HAVE, OR PROVIDE INADEQUATE SUBSTANDARD MEDICAL TREATMENT FOR A MEDICAL ISSUE I HAVE, IN RETALIATION, FOR INVOKING THE GRIEVANCE PROCEDURE, AND WRITING FORM-9 COMPLAINTS AGAINST HER. HER INTENTIONAL REFUSAL TO PROVIDE ME WITH PROFESSIONAL AND ADEQUATE MEDICAL TREATMENT, FOR MY IMPORTANT MEDICAL ISSUES, IS DELIBERATE INDIFFERENCE TO MY HEALTH, WITH SERIOUS, IF NOT LIFE THREATENING, CONSEQUENCES, I NOT ONLY SUFFER FROM NOW, BUT WILL LATER ON AS WELL. MY 1ST, 8TH, AND 14TH AMENDMENT RIGHTS, UNDER THE UNITED STATES CONSTITUTION, ARE REPEATEDLY BEING VIOLATED. AS THERE HAVE BEEN MULTIPLE ISSUES/INCIDENTS, IM MAKING "THIS" COMPLAINT AGAINST, CARMEN G. BAYNHAM'S REFUSAL TO PROPERLY TREAT THE INJURIES I RECEIVED ON MY LEFT WRIST, HAND, AND FINGERS, DUE TO BEING ATTACKED BY, CSI TODD E. SWENSON ON, 9-13-2018, IN A-2 CELLHOUSE, AT MY ASSIGNED CELL #227, WHEN HE REPEATEDLY SLAMED AND SMASHED THE FOOD PASS DOOR ON AND AGAINST MY LEFT WRIST, HAND, AND FINGERS, WHILE STANDING IN FRONT OF MY ASSIGNED CELL #227, AND THEN CLIMBED ONTO THE TOP RAIL, IN FRONT OF MY CELL, IN ORDER TO GAIN A BETTER VANTAGE POINT, TO USE HIS BOOT TO KICK THE FOOD PASS DOOR INTO/AGAINST MY LEFT WRIST, HAND, AND FINGERS, AND

HCF/(3)

RE: MEDICAL

(EXHIBIT-C-3)

THEN TO USE HIS BOOT, LEG, AND BODY WEIGHT TO CRUSH MY WRIST AND HAND, WHICH WERE TRAPPED BETWEEN THE METAL FOODPASS DOOR AND ITS FRAME, TAKING AWAY MY ABILITY TO REMOVE MY WRIST/HAND, FORCING ME TO SUFFER THE EXCRUCIATING PAIN HE WAS INTENTIONALLY SUBJECTING ME TO. WHEN I WENT TO MY CHRONIC CARE THYROID APPOINTMENT ON 9-27-2018 I WAS ABLE TO REPORT THE INJURIES TO MY WRIST, HAND, AND FINGERS AND THE EXTREME PAIN I WAS EXPERIENCING TO CARMEN G. BAYNHAM, AND WHEN SHE ASKED ME "WHAT HAPPEND", I SAID A GUARD ATTACKED ME, AND STARTED TO EXPLAIN HOW THE GUARD SLAMMED THE METAL FOOD PASS DOOR AGAINST MY WRIST, HAND, AND FINGERS, SEVERAL TIMES, AND WHILE I WAS EXPLAINING "HOW I WAS INJURIED" CARMEN G. BAYNHAM CUT ME OFF, INTERRUPTING ME, TO ASK "WHAT MY WEIGHT WAS, WHEN I WAS INJURIED", AND THEN SAID, "WELL IT DIDN'T LOOK TO BAD". IT BEARS MENTION CARMEN G BAYNHAM WAS STILL SITTING DOWN AT THE DESK, USING THE COMPUTER, AND HADNT STOOD UP SINCE I CAME INTO THE ROOM, AND I WAS SITTING DOWN, FACING CARMEN G. BAYNHAM, HANDCUFFED BEHIND MY BACK! CLEARLY, AN ATTEMPT TO EXTENUATE MY INJURIES BECAUSE THEY WERE ADMINISTERED BY STAFF. WHEN I CONTINUED TO EXPLAIN "HOW I WAS INJURIED", CARMEN G. BAYNHAM, INTERRUPTED ME AGAIN SAYING, "MY COMPUTERS NOT WORKING" AND THEN SAID, "I DONT NEED TO KNOW ALL THAT". ALTHOUGH CARMEN G. BAYNHAM HAD SAID MY INJURIES DIDNT LOOK TOO BAD, THE OUTER INJURIES → →

(... 2 of 6)

RE: MEDICAL

HCF/(3)
(EXHIBIT-C-4)

WERE CLEARLY VISIBLE DUE TO THE EXTREME TRAUMA I WAS SUBJECTED TO e.g. SUBSTANTIAL SWELLING, DISCOLORING, BRUISING, BROKEN SKIN, AND THE SERIOUS PAIN I REPORTED. WHEN CARMEN G BAYNHAM GOT UP TO EXAMINE ME SHE ASKED, "WHICH HAND IT WAS" AFTER I JUST TOLD HER, BUT I AGAIN TOLD HER, MY LEFT WRIST, HAND AND FINGERS, AND TO BE EASY, BECAUSE IT HURTS TO TOUCH. EVEN SO, CARMEN G. BAYNHAM ROUGHLY AND AGGRESSIVELY MOVED, PRESSED AND BENT MY WRIST, HAND, AND FINGERS, CAUSING ME TO TELL HER TWO DIFFERENT TIMES THAT SHES HURTING ME. CARMEN G. BAYNHAM SAID SHE'D ORDER AN X-RAY. I ASKED HER IF I COULD GET A SPLINT OR ACE BANDAGE, BECAUSE IM USING A SOCK AND THE FIRM PRESSURE FEELS GOOD AND HELPS PROTECT MY INJURIES WHILE IM SLEEPING. CARMEN G. BAYNHAM SAID, "NO, AND THAT SHE WANTS TO SEE THE X-RAYS FIRST, AND THEN, IF IT'S NEEDED, WE'D TALK ABOUT IT. I THEN SAID, "I NEEDED SOMETHING FOR THE PAIN," AND CARMEN G. BAYNHAM SAID, "PUT IN A SICK CALL," AND TOLD THE GUARD WERE DONE. I RECEIVED MY FIRST X-RAY ON 10-1-2018 FROM EDWIN A. JOYNER JR.. I PUT IN SICK CALL MEDICAL REQUEST, AND WAS SEEN BY NURSES ON 11-17-2018, 11-26-2018, 11-27-2018, FOR INJURIES/PAIN AND WAS FINALLY SEEN BY CARMEN G. BAYNHAM ON 12-6-2018, AT WHICH TIME SHE, AGAIN, REFUSED ME PAIN MEDS, AND REFUSED TO ISSUE ME A ACE BANDAGE, AGAIN, BUT ORDERED ANOTHER X-RAY, WHICH WAS DONE ON 12-24-2018. ALL THE TIMES THAT I PUT IN SICK CALLS TO GET PAIN MEDS WAS FOR ASPRIN → =

RE: MEDICAL

H.F/(3)
(EXHIBIT-C-5)

AND IBPRIN, WHICH DID NOTHING FOR THE PAIN. I EXPLAINED THAT TO THE NURSES, WHO SAID ID HAVE TO SEE THE DOCTOR/HEALTH CARE PROVIDER/NURSE PRACTITIONER, WHO IS CARMEN G. BAYNHAM, BUT SHE REFUSE TO GIVE ME ANYTHING ELSE, AND TOLD ME TO PUT IN A SICK CALL, WHEN THAT WAS UNNECESSARY, RETALIATORY HARASSMENT AND TO CAUSE ME TO CONTINUE TO SUFFER. WHEN I NEXT SAW CARMEN G. BAYNHAM ON 12-27-2018 AGAIN FOR MY CHRONIC CARE THYROID APPOINTMENT, AND WHICH I TOOK THE OPPORTUNITY TO DISCUSS MY INJURIES AND PAIN, AND DURING THIS DISCUSSION CARMEN G. BAYNHAM TOLD ME THAT THE X-RAYS ARE FINE, AND THAT NOTHINGS BROKE, AND WHEN I ASKED WHY THERES STILL A LUMP ON THE TOP OF MY HAND CARMEN G. BAYNHAM TOLD ME, ITS BECAUSE IT WAS BADLY BRUISED, AND THAT BONE INFUSED WITH THE BADLY BRUISED BONE, AND THAT IT WILL ALWAYS BE LIKE THAT." I SAID THAT DOESNT SOUND RIGHT, AND THAT BONE INFUSING WITH BONE MEANS IT WAS BROKE OR FRACTURED OR SOMETHING, AND CARMEN G. BAYNHAM BECAME ARGUMENTIVE, AND DISRESPECTFUL, AND RUDE, TELLING ME TO, "BELIEVE WHATEVER I WANT, AND SHE'S NOT GONNA GO AROUND AND AROUND WITH ME ABOUT IT." I SAID I KNOW I'M STILL IN PAIN AND THESE INJURIES WERE LIKE 3 OR 4 MONTHS AGO AND I STILL CANT PICK UP MY FOOD TRAY OR ICE CHEST WITH MY LEFT HAND WITHOUT GETTING A FEELING OF MY BONE GETTING READY TO BREAK AND I DROP THE TRAY OR ICE CHEST BECAUSE IT HURTS TO BAD. I SAID YOU WONT EVEN GIVE ME A ACE BANDAGE OR PAIN MEDS THATS STRONGER THAN WHAT YOUD TAKE FOR A COMMON HEADACHE. CARMEN SAID HAVE A GOOD DAY DISMISSING ME AND TELLING THE GUARD TO ESCORT ME BACK TO MY CELL. THE FACTS IVE STATED STATE MY COMPLAINTS AND FOR THE RECORD I WANT A WRITTEN REPLY AS TO RATHER OR NOT CARMEN G. BAYNHAM WAS CORRECT IN THE INFORMATION SHE GAVE ME ABOUT, "BONE INFUSING WITH BADLY BRUISED BONE" WHICH CAUSED THE LUMP/KNOT ON MY HAND, BECAUSE IVE NEVER HEARD ANYTHING LIKE THAT BEFORE, AND DON'T BELIEVE IT! ITS ALSO A FACT IF NOT FOR MY CHRONIC CARE THYROID APPOINTMENTS I'D NOT OF SEEN CARMEN G. BAYNHAM TO ADDRESS MY INJURIES/PAIN. THERES A ISSUE, THAT CARMEN G. BAYNHAM CAN ORDER PAIN MEDICATION THATS FOR AN INJURY NOT JUST A HEADACHE AND SHE REFUSED. THERES ALSO THE ISSUE, THAT CARMEN G. BAYNHAM COULD OF GIVEN ME AN ACE BANDAGE

(EXHIBIT-C-6)

RE: MEDICAL HCF(3)

TO WRAP MY INJURED WRIST, AND HAND IN, AND KNOWING I'M USING SOCKS AS A MAKE SHIFT ACE BANDAGE, BECAUSE IT HELPS WITH THE PAIN, YET SHE REFUSED TO DO ANYTHING TO LESSEN MY SUFFERING. THERES ALSO A PATTERN OF BEHAVIOR. A HISTORY OF CARMEN G. BAYNHAM SAYING NOTHING IS WRONG WITH ME BEFORE SHE HAS LOOKED AT ME, WHICH MY OTHER COMPLAINTS AGAINST HER SUPPORT, WHICH WAS AGAIN THE SAME BEHAVIOR SHOWN HERE WHEN SHE SAID, "MY INJURIES DIDN'T LOOK TOO BAD" WITHOUT HAVING SEEN THEM. THE FACT OF THE MATTER IS CARMEN G. BAYNHAM HAS BEEN/CONTINUES TO BE DELIBERATELY INDIFFERENT TO MY MEDICAL NEEDS VIOLATING MY 8TH AMENDMENT TO THE U.S. CONSTITUTION. RETALIATION ALSO VIOLATES MY FIRST AMENDMENT RIGHTS. AND OBSTRUCTING JUSTICE IS NOT ONLY CIVIL BY CRIMINAL AND CARMEN G. BAYNHAM SHOULD BE COMPLETELY INVESTIGATED FOR THE CLAIMS IVE MADE. MY WRIST, HAND AND FINGER SEEM TO BE INJURIES THAT ARE CHRONIC AS I AM STILL IN PAIN AND SUFFERING TO DATE 1-3-2019. LET THE RECORD REFLECT THE ABOVE FACTS. THE WARDEN DAN SCHNURR AT H.C.F. SHOULD CAUSE THIS CORIZON EMPLOYEE TO BE INVESTIGATED, AND MATTERS DOCUMENTED. THE WARDEN SHOULD NOT STAND FOR MEDICAL STAFF INTENTIONALLY REFUSING ANY MEDICAL TREATMENT TO A PRISONER/ME WHO'S INJURED AND SUFFERING, IN RETALIATION. IT BEARS MENTION I RECEIVED EMERGENCY MEDICAL TREATMENT ON 9-13-2018 AND PHOTOS WERE TAKEN OF MY INJURIES AND TRYING TO PROTECT STAFF BY ATTEMPTING TO EXTENUATE MY INJURIES AND SUFFERING IS OBSTRUCTIN' JUSTICE, SUPPORTING STAFFS USE OF EXCESSIVE FORCE ASSAULT AND BATTERY IS BEING AN ACCESSORY TO THE CRIMES. I SHOULD NOT HAVE TO BE SUBJECTED TO FURTHER RETALIATION BY CARMEN G. BAYNHAM I HOPE THERE IS A SPEEDY RESOLUTION TO THE PROBLEMS STATED HERE WITHOUT FURTHER DELAY.

RESPECTFULLY,

David Brown #57800

A-2/227/ H.C.F MAX

FOLLOW UP    HCF/(3)

CORIZON HEALTH

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

| FOR MEDICAL USE ONLY Sólo para uso médico |
|---|
| Date Received: |
| Time Received: (CMO) |

| Service Requested Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

(EXHIBIT C-7) HCF/(3)

Print Name (Imprimir nombre): DAVID BROWN

Date of Request (Fecha de solicitud): 9-13-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227T / HCF

Nature of problem or request (Naturaleza del problema o solicitud): MY LEFT HAND WAS SMASHED AND CRUSHED IN THE CELLDOORS FOOD PASS. HURTS EXTREMELY BAD. THE KNUCKLES ALSO SMASHED/CRUSHED IN FOOD PASS, ALSO THUMB. WHOLE HAND HURTS TO TOUCH. THROBBING PAIN, NEED PAIN MEDICATION, SWOLLEN, HAD BLEEDING, PICTURES TAKEN, SEEN BY NURSE FOR EMERGENCY SICK CALL, GIVEN ASPRIN, BAG FOR ICE ALSO, JUST NEED AN ORDER OF A PAIN MEDI, TOLD TO SEE THE NURSE AGAIN AND STAFF SAID PUT IN A SICK CALL.

I consent to be treated by health staff for the condition described. (Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral. (Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

David Brown
PATIENT SIGNATURE (Paciente Firma)

PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)

DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

150 98 183/91 86 / 18 93.1

(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)

Triaged by: PA

Date: Time: (CMO) am pm (circle one)

Called Down at: (for urgent issue)

Other: Lt hand slammed. Hurts to the touch

Response Recommendation (to be completed by Medical Staff Only)

| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
|---|---|---|---|---|---|---|
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

Comments: Give ibuprofen when tylenol runs out.

Staff Signature: [signature] Date: 9/14/18

©2013 Corizon Health, Inc.

FOLLOW UP FOR LEFT HAND/FINGERS

CORIZON HEALTH

| FOR MEDICAL USE ONLY Solo para uso médico | |
|---|---|
| Date Received: | 9/15 |
| Time Received: | 4:30 |

| Service Requested Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-C-8) HCF (3)

Date of Request (Fecha de solicitud): 9-14-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): JUST NEED PAIN MEDICATION FOR MY HAND THAT IS EXTREMELY PAINFUL, HURTS TO TOUCH, SWELLON DUE TO BEING SMASHED AND CRUSHED IN CELLDOOR FOODPASS ACROSS TWO FINGERS/KNUCKLES, WAS BLEEDING FROM ALL FIVE POINTS OF INJURY, GIVEN ASPRIN, BUT NEED SUPPLY TO LAST LONGER THAN A COUPLE DAYS, GIVEN ICE BAG FOR SWELLING, PHOTOS TAKEN SO I DONT EVEN NEED TO COME TO SICK CALL UNLESS

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral.

I'M WANTED TO BE TOLD ITS NOT BROKE BECAUSE I CAN MOVE HAND/FINGERS

(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

BUT IT JUST HURTS SO BAD AND THAT REQUEST IS SOMETHING FOR THE PAIN. PLEASE THANK YOU.

[signature]
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**
**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** [signature]

**Date:** 9/15/18 **Time:** 4:40 am / pm (circle one) [am circled]

**Called Down at:** ________ **(for urgent issue)**

**Other:** 9/14/13

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:** 98.3 / 18 / 155 / 133/85 Ant L thumb Some Swollen SBU

**Staff Signature:** ________ **Date:** ________

NA7141-KS-DOC
Issued 01/06/2013

©2013 Corizon Health, Inc.



| FOR MEDICAL USE ONLY<br>Sólo para uso médico |
|---|
| Date Received: ________ |
| Time Received: (AM) |

| Service Requested<br>Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse<br>Enfermera | ☒ Doctor<br>Doctor | ☐ Dental<br>Dental |
| ☐ Mental Health<br>Salud Mental | ☐ Eye Doctor<br>Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-C-9) HCF (3)

Date of Request (Fecha de solicitud): 11-14-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): MY LEFT HAND IS EXTREMELY PAINFUL, THE WEIGHT FROM MY ICE CHEST, FOOD TRAY, OR BOOK CAUSES OVERWHELMING PAIN. I NEED SOME BANDAGE WRAP AS I'M USING SOCKS AND I DON'T CARE IF MEDICAL CLAIMS IT'S NOT BROKE IT HURTS REALLY REALLY BAD. MY HAND DOESN'T OPEN AND CLOSE LIKE IT SHOULD AND HAS THROBBING PAIN, I'M HURT AND BADLY. I'M IN SERIOUS NEED OF MEDICAL TREATMENT FOR MY LEFT HAND AFTER BEING SMASHED IN THE STEEL FOOD PATH

I consent to be treated by health staff for the condition described.

(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral. DOOR OVER AND OVER

(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

David Brown

PATIENT SIGNATURE (Paciente Firma)

PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)

DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

Left hand
Needs bandage
[illegible]

(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)

Triaged by: ______ (10+14 days)

Date: ______ Time: (AM) am pm (circle one)

Called Down at: 0815 (for urgent issue)

Other: 159 98.6 81 20 146/87

Response Recommendation (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

Comments:______

Staff Signature: NM/PN Date: 11/7/18

(2) SST ESCORTED ME TO SICK CALL ROOM
NURSE NINA J. MORALES
SAID SHE PUT ME IN FOR A FOLLOW UP TO SEE THE DOCTOR

DOC 6/2013

©2013 Corizon Health, Inc.



**FOR MEDICAL USE ONLY**
Sólo para uso médico

Date Received: ______

Time Received: 0600

**Service Requested**
Servicio Solicitado

| | | |
|---|---|---|
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

**(Formulario de Solicitud de Servicios de Salud)**

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-C-10) 4C-F(3)

Date of Request (Fecha de solicitud): 11-25-18

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): WHEN AM I SUPPOSE TO SEE THE DOCTOR FOR MY FOLLOW-UP SICK CALL?

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral.
(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

[signature]
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**
**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy-Inmate/Patient Pink Copy-Business Office)

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** S. Carter, RN

**Date:** ______ **Time:** 0600 **am pm (circle one)**

**Called Down at:** 0803 **(for urgent issue)**

**Other:** ______

**Response Recommendation** (to be completed by Medical Staff Only).

| | | | | | | |
|---|---|---|---|---|---|---|
| **Initial** | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| **Appointment** | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| **Fee Charge** | ☐ $2.00 | | | | | |

**Comments:** Naproxen 220mg (2 tabs) PO twice a day KOP ...

**Staff Signature:** [signature] **Date:** 11/26/18

NA7141-KS-DOC
Issued 01/06/2013

Said I wasn't on list for follow up to see doctor, but saw where I was seen for my hand on 11-17-18

©2013 Corizon Health, Inc.



| FOR MEDICAL USE ONLY<br>Solo para uso médico |
|---|
| Date Received: |
| Time Received: 0600 |

| Service Requested<br>Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse<br>Enfermera | ☐ Doctor<br>Doctor | ☐ Dental<br>Dental |
| ☐ Mental Health<br>Salud Mental | ☐ Eye Doctor<br>Médico de los ojos | |

# IEALTH SERVICES REQUEST FORM

ormulario de Solicitud de Servicios de Salud)

int Name (Imprimir nombre): DAVID BROWN (EXHIBIT-C-11) HCF (3)

ate of Request (Fecha de solicitud): 11-27-2018

#: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

ousing Location (Ubicación de la Vivienda): A-2/227/HCF

ature of problem or request (Naturaleza del problema o solicitud): THIS IS A REMINDER TO BE SEEN BY THE DOCTOR BECAUSE MORALES SAID SO BEEN SEEN ON A FOLLOW UP BUT I NEVER WAS AND WHEN I WENT TO SICK CALL LAST THE NURSE SAID THERE WAS NOTHING IN THE COMPUTER ABOUT A FOLLOW UP. SO JUST AS A REMINDER IM SUBMITTING THIS SICK CALL AND FOR THE RECORD. I THINK THE LAST NURSE I SAW WILL HAVE HAD TAKEN CARE OF IT BUT JUST IN CASE.

onsent to be treated by health staff for the condition described.

a su consentimiento para ser tratada por el personal de salud para la condición descrita.)

nderstand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare rvices. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I iderstand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit referral.

ntiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos or dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

[signature]
PATIENT SIGNATURE (Paciente Firma)

ACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)

**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

**HE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

iaged by: [signature] RN

ite: ______ Time: 0600 am pm (circle one)

lled Down at: 1043 (for urgent issue)

her: ______

**sponse Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ial | ☒ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| pointment | ☒ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Charge | ☐ $2.00 | | | | | |

mments: ______

ff Signature: Casey Sutor Date: 11-28-18

'141-KS-DOC
ed 01/06/2013

©2013 Corizon Health, Inc.

NO REASON TO GIVE ME AN ACE WRAP. HOW ABOUT HCF/(3) BECAUSE THE PRESSURE AROUND MY WRIST AND HAND FROM SOCKS I USED LIKE AN ACE WRAP LESSENED THE PAIN AS WELL PROTECTED MY INJURIES.

(EXHIBIT-C-12)

**KANSAS DEPARTMENT OF CORRECTIONS**
**HUTCHINSON CORRECTIONAL FACILITY**

**INTERDEPARTMENTAL MEMORANDUM**

YOU ALSO IGNORED BAYNHAM TELLING ME BECAUSE I WAS BADLY BRUISED BONE INFUSED WITH THE BRUISED BONE AND THATS WHY I HAVE A KNOT ON THE TOP OF MY HAND AND IT WILL ALWAYS BE LIKE THAT. THAT DOESNT

**BROWN, DAVID # 57800** **DATE**: February 12, 2019
Hutchinson Correctional Facility – Unit Team

MAKE SENSE AND ISNT NORMAL. SO STOP TRYING TO EXTENUATE MY INJURIES!

**SUBJECT:** Grievance received February 12, 2019

**FROM:** Debra Lundry, RN
Health Services Administrator

**FINDING OF FACT:** I have reviewed your complaint regarding your MEDICAL issue and treatment by APRN Baynham. – THE LACK OF MEDICAL TREATMENT YOU MEAN.

**CONCLUSIONS MADE:** I have reviewed your complaint and your medical records. Your injury occurred on 09/13/2018 and you were seen and treated by nursing and referred to the provider and Ms. Baynham examined you and had x-rays done of your injuries. They were negative for any issues that would require outside intervention or other treatment. There was really no medical reason to give you any type of splint or ace wrap. You only had soft tissue swelling from the altercation and that would only take time to resolve. You were prescribed Ibuprofen for pain and Epsom Salt soaks for 7 days. You had additional x-rays done in December and they were NORMAL. You were absolutely treated appropriately and within community standards.

Debra Lundry RN HSA

Debra Lundry RN, HSA

YOU CLAIM ITS NORMAL AND APPROPRIATE MEDICAL TREATMENT TO BE REPEATEDLY BASHED WITH METAL ON MY FINGERS, WRIST AND HAND, WHICH CAUSED SWELLING, BLEEDING AND EXTREME PAIN TO TOUCH OR MOVE MY LEFT WRIST HAND AND FINGERS, THEN WAIT (18) DAYS FOR AN X-RAY, AND TO BE GIVEN IBUPROFEN FOR THE PAIN WHICH DID NOTHING. IT WASNT EVEN STRONG IBUPROFEN BUT REGULAR 200 MG, AND TO HAVE NURSE BAYNHAM SAY MY INJURIES LOOK FINE BEFORE SHE GOT UP FROM THE DESK/COMPUTER AND BEFORE SHE EXAMINED MY WRIST, HAND FINGERS IS SOMETHING YOU MADE SURE NOT TO ADDRESS. I DONT BELIEVE ANY OF THIS IS NORMAL AND APPROPRIATE MEDICAL TREATMENT, BUT FOR A PRISONER I GUESS YOU THINK SO...



HCF/(3)
(EXHIBIT-C-13)

P.O. Box 1568
Hutchinson, KS 67504-1568

Department of Corrections
Hutchinson Correctional Facility

Phone: (620) 728-3338
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 2/28/2019

TO: Brown, David #57800
A2-227

SUBJECT: Grievance #BA00018251

FROM: Dan Schnurr, Warden
HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACT:** In your grievance, you allege Corizon staff did not provide you with adequate medical attention for an injury to your left wrist, hand, and fingers.

**CONCLUSIONS:** I have reviewed your grievance and the response from Mrs. Lundry. It appears you have received both adequate and standard care to your injured wrist, hand, and fingers. Please continue to work with Corizon staff for any medical issues you may have.

**ACTION TAKEN:** None warranted. This is my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

RETURNED TO ME BY U.T. GRAFF ON 3-5-2019 AT CELL #227/A-2 HCF

DS/MAN/eks

cc: HCF File

(M)

HCF/(3)

**APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS**

Inmate Name: DAVID BROWN Facility: HUTCHINSON CORR. FAC.

Inmate Number: 57800 Grievance Serial No. BA00018251

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.) (EXHIBIT-C-14)

MAIL TO: Secretary of Corrections
Landon State Office Building
900 Jackson, 4th Floor
Topeka, Kansas 66612

Date Mailed: 3-6-2019 (3)

(PAGE-1-OF-2)

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) IVE STATED AND I RESTATE ALL THATS IN THE ATTACHED GRIEVANCE AND INCORPORATE IT ALL HEREIN THIS APPEAL. IM STILL SUFFERING FROM PAIN IN MY HAND, MY QUESTION WERE NOT ANSWERED, AND MY COMPLAINTS WERE NOT ADDRESSED, BUT IGNORED. THE SECRETARY OF CORRECTIONS SHOULD CAUSE MY COMPLAINTS TO BE ANSWERED COMPLETELY. AND THE FACT THAT A NURSE CAN SAY MY HAND LOOKS FINE WITHOUT EVEN SEEING IT OR TOUCHING IT YET SHOWS THAT BAYNHAM DIDNT HAVE ANY INTENTIONS OF →

David Brown
Signature of Inmate → NEXT PAGE →

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)

If applicable - Confidential File No. ________

Date Received in Office of Secretary of Corrections: ________

Date of Final Answer: ________ Date Sent to Inmate: ________

RECEIVED
MAR 14 2019
DOC Facility Management Area

Finding of Fact:

Conclusions Made:

Action Taken:

________
Signature of Secretary of Corrections

**For D.O.C. Staff Use Only**

Type of Response (Item 6b: Code Ø1, Ø2, Ø8 or Ø9) ___

DC Ø9Ø, Effective May 1, 1988

P-157a

HCF(3)

(RE: GRIEVANCE APPEAL #(3) PAGE-2-OF-2)

(EXHIBIT-C-15)

PROVIDING ME WITH PROPER MEDICAL TREATMENT, BUT INSTEAD INTENDED TO EXTENUATE MY INJURIES, AS IS THE USUAL ROUTINE FOR NURSES SEEING PRISONERS THAT WERE SUBJECTED TO EXCESSIVE USE OF FORCE AND/OR BATTERY AT THE HAND OF KDOC STAFF AND IT WAS A CHANCE FOR NURSE BAYNHAM TO RETALIATE AGAINST ME FURTHER FOR WRITING HER UP. THE SECRETARY REALLY NEEDS TO CAUSE CORIZON STAFF TO BE INVESTIGATED FOR EACH COMPLAINT BROUGHT AGAINST THEM, AND BEING TOLD MY BONE INFUSED WITH MY BADLY BRUISED BONES IS THE REASON I HAVE A KNOT ON THE TOP OF MY HAND, THAT WILL ALWAYS BE THERE I DONT BELIEVE TO BE KOSHER, AND THAT SHOULD OF BEEN ADDRESSED AS WELL IN WRITING, RATHER THAN THE HEALTH CARE/SERVICES ADMINISTRATOR JUST SAYING I RECEIVED PROPER TREATMENT AND IGNORING ALL OTHER FACTS IN MY COMPLAINT. ALTHOUGH THAT TOO IS THE USUAL PATTERN OF BEHAVIOR OF HIGHER RANKING OFFICIALS (TO GIVE LOWER RANKING EMPLOYEES IMMUNITY). AND I'M STILL IN PAIN AND SUFFERING AND MY HAND IS NOW DEFORMED DUE TO THE INTENTIONAL REFUSAL OF MEDICAL TREATMENT. SO I ASK THE SECRETARY TO CAUSE DEBRA LUNDRY H.C.F.'S HSA TO ADDRESS EACH OF MY ISSUES AND RESPOND TO THEM ALL, AS IF I'M BEING LIED TO BY BAYNHAM AS TO THE KNOT ON MY HAND I SHOULD BE INFORMED OF SUCH FACT AS SHOULD LUNDRY AND TOPEKA OFFICIALS IN CHARGE OF CORIZON/MEDICAL.

STACKED RESPONSES FOR (3), (5), (8)

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

Department of Corrections

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@doc.ks.gov
doc.ks.gov

Roger Werholtz, Secretary

Laura Kelly, Governor

(EXHIBIT-C-16)

## Grievance-Response on Appeal

**FACILITY:** Hutchinson Correctional Facility

**OFFENDER:** BROWN, DAVID #57800 A2-227

**GRIEVANCE NO:** N/A; BA0001851; BA00018253 (8)
SHOULD BE BA00018251

**DATE:** 4/2/2019 (3) AND (5)

RECEIVED
APR 23 2019
HCF Office Of The Warden

**COMPLAINT:**

The concerns regard 1) a thyroid issue, 2) a medication issue, and 3) a hand wrist and finger injury.

**FINDINGS OF FACTS BY CLINICAL REVIEWER:**

The Kansas Department of Corrections Medical Health Authorities reviewed the correspondence, site response, and EHR. 1) the offender states that he feels weak, lethargic and falls asleep after most meals. Per the MAR, he was issued 30 of the levothyroxine tablets on 3/4/2019. 2) There was a break in his medication where he did not get it but is back on it regularly at present. The offender also states confusion with who he is supposed to see in the chronic care clinic. 3) The offender sustained injuries to his left hand on 9/13/2018.the offender was seen on 9/14/2018 and was advised to ice and elevate the hand. He returned on 9/15/2018 and was scheduled to see a site provider. The offender was seen on 9/27/2018 by the site provider. He was started on Bactrim for the drainage in his left 5th digit, and ibuprofen for the pain. An x-ray was ordered which was negative. The offender was seen again on 10/4/2018. At that time, he stated the pain was less as was the swelling. The offender returned to the clinic on 11/17/2018 and stated that his hand was painful. He was told to continue ibuprofen, Epsom salt soaks and ibuprofen. He returned on 11/26/2018 complaining of pain in wrist and numbness near 2nd and 3rd metacarpal areas. The offender was referred to the HCP. He was seen by a provider on 12/27/2018 and a raised deformity proximal to the 4th metacarpal which is non-tender was documented. On 3/19/2019, the offender was given ibuprofen because of another injury.

**CONCLUSIONS MADE BY CLINICAL REVIEWER:**

In order, 1) The offender had a thyroid profile on 2/25/2019, and it was founded that his TSH was low. Recommend the site healthcare team recheck his TSH levels in a month. In addition, recommend the offender be seen by a site physician regarding the dosage of his medication. 2) The break in his medications has been resolved. 3)The offender was treated appropriately for his hand, wrist, and finger injury.

**ACTION TAKEN:**

Recommendations have been forwarded to Corizon's Regional Medical Director.

Doug Burris
**Secretary of Corrections Designee**

CC: Warden
Corizon's Regional Medical Director
Site H.S.A.
BROWN, DAVID #57800
File

RETURNED TO ME IN MANILA ENVELOPE AFTER BREAKFAST IN A-2/227/HCF WITH 3 OTHER GRIEVANCES (3) (5) (8) AND (25). (5) AND (25) ARE NOT PROCESSED OUT HAVE GRIEVANCE SERIAL NUMBERS. (25) NO STAMPED AT TOP EITHER.

The original response on appeal and all attached documents were mailed by way of United States Mail on 04/17/19.

The information provided in the response above concerning the grievant's medical and/or mental health condition and treatment is confidential and private in nature, and is not intended for re-disclosure or sharing with third parties. That statement, however, does not apply to exercise of any other administrative remedies provided by the Kansas Department of Corrections, nor to pursuit of other administrative relief connected with medical and/or mental health condition and treatment, such as, for example, application for disability benefits under state or federal law, or to pursuit of litigation concerning the adequacy or propriety of medical and/or mental health care diagnosis and treatment furnished to the grievant

SPECIAL ACKING OF PRODUCT [illegible] # 7940 4-21-1

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM HCF/C31

**INMATE COMPLAINT** (EXHIBIT-D-1)

Inmate's Name DAVID BROWN Number #57800

Facility HUTCHINSON CORR FAC. Housing Unit A-2/227 Work Detail N/A

(PAGE-1-of-4)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

ATTACHED IS A COPY OF A INJURY CLAIM #7940 THAT WAS FINALLY RETURNED TO ME ON 4-17-2019 BY UNIT TEAM GRAFF IN A-2 CELLHOUSE AT MY ASSIGNED CELL# 227 AT HUTCHINSON CORRECTIONAL FACILITY. ALSO ATTACHED ARE FIVE(5) CORIZON HEALTH SERVICES REQUEST FORMS DATED 9-13-2018, 9-14-2018, 11-14-2018, 11-25-2018, AND 11-27-2018. MY COMPLAINT IS THAT I WAS SUBJECTED TO UNNECESSARY EXCESSIVE USE OF FORCE BY CSI TODD E. SWENSON AND THE INCIDENT WAS WITNESSED... → NEXT PAGE →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 4-25-2019 (31)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

Per KAR 44-15-101 the grievance procedure is not to be used as a substitute for or part of the injury claims procedure. You can not grieve the property claim response.

UNIT TEAM GRAFF REFUSES TO SIGN → Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am not satisfied with the Unit Team response, and wish ~~to forward~~ to the Warden's office. (This must be done within 3 calendar days.) (SENDING TO WARDEN AGAIN VIA U.S. MAIL) Date forwarded to Warden's Office (to be completed by staff).

[signature] 5-28-2019

Inmate Signature Date (RETURNED TO ME 5-28-2019 BY U.T. GRAFF AT CELL AGAIN)

**WARDEN RESPONSE** (RETURNING OFFICIAL MAIL TO WARDEN'S OFFICE) (Complete, attach response and return within 10 Working days.)

Date Received _______ Date of Final Answer _______ Date Returned to Inmate _______

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number _______

Type of Complaint (Item 4: Code 01-75) _______

Cause of Complaint (Item 5: Code 01-30) _______

Type of Response (Item 6a: Code 01,02,08 or 09) _______

(SPECIAL KINDS OF PROBLEMS) #7940

(RE: GRIEVANCE (31) PAGE-2-OF-4) HCF (31)

(EXHIBIT-D-2)

...CONTINUED→ BY STAFF AND INMATES AND ITS ON CAMERA SO THERES NO REASON MY CLAIM SHOULD OF BEEN DENIED OTHER THAN STAFF GIVING STAFF IMMUNITY, AND STAFF RETALIATING AGAINST ME. MY INJURY CLAIM WAS DENIED FOR AN ALLEGED REASON THAT THE MATTER WAS HANDLED INTERNALLY AND/OR ON A SUPERVISORY LEVEL, BUT THAT DOESNT COMPENSATE ME FOR MY PAIN, SUFFERING, TRAUMA, FEAR, HUMILIATION, INJURIES OR RETALIATION I'VE BEEN SUBJECTED TO. THEN I WAS REFUSED PROPER MEDICAL TREATMENT, AND MY INJURIES ARE LONG TERM AND MEDICAL STAFF ATTEMPT TO CLAIM IM FINE. IT ALSO BEARS MENTION THAT UNIT TEAM PETTIJOHN LIED WITH HIS MEDICAL ACCOUNT OF MY INJURIES AND OF WHEN I SAW MEDICAL AND WHEN I RECEIVED MY FIRST X-RAY, OR THAT I WAS RELEASED FROM THE INJURY. ITS ALSO A LIE CLAIMING THERE WAS NO BLEEDING. FIRST, I DIDNT GET MY FIRST X-RAY UNTIL 10-1-2018, AND ONLY THEN BECAUSE I KEPT PUSHING THE ISSUE AND WRITING GRIEVANCES, AND MAKING VERBAL COMPLAINTS EACH TIME I SAW MEDICAL. BUT U.T. PETTIJOHN LIED CLAIMING I HAD AN X-RAY ON 9-14-2018 BECAUSE IT WASNT UNTIL 10-1-2018! NEXT, THERE WAS BLEEDING. NOT ONLY DOES U.T. PETTIJOHN LIE CLAIMING THERE WASNT, BUT IF THE RN CLAIMS THERE WAS NO BLEEDING THEY ARE ALSO LYING. THE NURSE CLEANED THE BLOOD OFF MY WOUND AND THAT IS WHY SHE ASKED WHEN MY LAST TETANUS SHOT WAS. ALSO, I HAVE CHRONIC CARE FOR MY THYROID, AND I SAW THE NURSE PRACTITIONER ON 9-27-2018 FOR MY THYROID CHRONIC CARE NOT A FOLLOW UP ON MY WRIST, HAND, AND FINGERS. ALSO, MY SICK CALLS DETAIL FACTS INCLUDING MY INJURIES ON 9-13-2018, WHICH INCLUDE BLEEDING AND BLOOD. SEE SICK CALLS DATED 9-13-2018 AND 9-14-2018. I ALSO WANT TO STATE FOR THE RECORD THAT I DIDNT AGREE TO UNIT TEAM PETTIJOHN REVIEWING MY MEDICAL RECORDS OR TO DISCUSS MY MEDICAL PROBLEMS WITH MEDICAL STAFF AND YET U.T. PETTIJOHN REVIEWED/DISCUSSED MEDICAL ISSUES ALTHOUGH THEY ARE FALSE, WITH MEDICAL STAFF, VIOLATING MY MEDICAL PRIVACY RIGHTS. BUT UNIT TEAM PETTIJOHN HAS DONE NOTHING BUT LIE ABOUT THE MEDICAL EVENTS, DATES, INJURIES, ETC AND SHOULD BE HELD ACCOUNTABLE FOR PROVIDING A FALSE MEDICAL REPORT, AND FOR VIOLATING MY MEDICAL PRIVACY RIGHTS. IT BEARS MENTION THAT

NEXT PAGE → →

(SPECIAL KINDS OF PROBLEMS) HCF/
(RE: GRIEVANCE (31) / PAGE-3-OF-4) (31)
(EXHIBIT-D-3)

IVE ALSO SUBMITTED A GRIEVANCE COMPLAINT AGAINST CORIZON MEDICAL STAFF/PRACTITIONER CARMEN G. BAYNHAM FOR REFUSING ME MEDICAL TREATMENT AND ALSO PROVIDING ME WITH INADEQUATE SUBSTANDARD TREATMENT AND FOR RETALIATING AGAINST ME. SEE GRIEVANCE (3). ITS ALSO A FACT THAT CSI SWENSON DID NOT GET DEMOTED AS HES WORKED IN A-1 CELLHOUSE AND STILL HOLD THE SAME RANK UPON INFORMATION AND BELIEF. ITS ALSO A FACT THAT UNIT TEAM PETTIJOHN SAID HE WASNT WHO WAS INVESTIGATING AND/OR PROCESSING THIS CLAIM, WHICH TURNS OUT TO BE ANOTHER LIE FROM U.T. PETTIJOHN. U.T. PETTIJOHN TOLD ME HE WOULD APPROVE MY CLAIM IF HE WAS PROCESSING IT, WHICH TURNS OUT TO BE YET ANOTHER LIE BY U.T. PETTIJOHN AS HE IS WHO PROCESSED MY CLAIM, AND DENIED THE CLAIM IN RETALIATION AGAINST ME FOR WRITING HIM UP FOR REFUSING TO PROCESS MY PREA COMPLAINTS, FOR NOT ANSWERING AND RETURNING MY FORMS 9 AND GRIEVANCES AND FOR NOT ALLOWING ME TO USE THE PHONE TO MAKE PREA COMPLAINTS. U.T. PETTIJOHN WAS ENCOURAGED TO APPROVE THE CLAIM BY U.T. DAWES AS THEY TALKED ABOUT THE INCIDENT. MY HAND STILL HURTS TO DATE 4-24-2019 AND I STILL HAVE A KNOT ON THE TOP OF MY HAND. IM ABLE TO PROVE THAT I WAS BLEEDING AND I DOCUMENTED IT IN THE SICK CALLS AS YOU CAN SEE. UNIT TEAM PETTIJOHN ALSO DENIED THE INJURY CLAIM BECAUSE I TOLD HIM HE'S PARTLY AT FAULT FOR THE INCIDENT BECAUSE HE HAD A DUTY TO INTERVENE AND STOP CSI SWENSON FROM CONTINUING HIS ASSAULT AND BATTERY AND EXCESSIVE USE OF FORCE AGAINST ME BECAUSE U.T. PETTIJOHN WAS ON THE RUN A FEW CELLS AWAY AND WITNESSED THE INCIDENT, AND I TOLD U.T. PETTIJOHN IM GONNA WRITE HIM UP TOO. MY COMPLAINT IS DUE TO U.T. PETTIJOHN RETALIATING AGAINST ME, AND FOR LYING AND FABRICATING THE RECORD BY CLAIMING I WASNT BLEEDING AND THAT I WAS SEEN BY MEDICAL AT TIMES I WASNT AND FOR LYING ABOUT THE DATE I FINALLY RECEIVED MY FIRST X-RAY. ITS ALSO A FACT THAT SECURITY ARE NOT TO HAVE ACCESS TO MY MEDICAL RECORDS BY LAW AND ITS JUST ANOTHER EXAMPLE OF HOW KDOC/HCF STAFF DISREGARD PRISONERS RIGHTS AT EVERY TURN. BUT LET THE RECORD REFLECT THESE FACTS. BUT I FIND IT TO BE FUNNY THAT AS SOON AS I SENT A FORM-9 TO DEPUTY WARDEN T. WILLIAMS ON 4-16-2019 I FINALLY RECEIVE THE INJURY CLAIM BACK ON 4-17-2019

→ → NEXT PAGE →

(SPECIAL KIND OF PROBLEMS) #7940

(RE: GRIEVANCE (31) PAGE-4-OF-4) HCF (31)
(EXHIBIT-D-4)

AS IVE BEEN WAITING SINCE 9-21-2018 WHEN I TURNED IN THE INJURY CLAIM. IM NOT ABLE TO FILE A GRIEVANCE ON A INJURY CLAIM SO LET ME BE CLEAR, MY COMPLAINT ISNT ABOUT MY INJURY CLAIM, BUT INSTEAD ABOUT U.T. PETTIJOHN RETALIATING AGAINST ME FOR WRITING HIM UP IN FORM-9'S AND GRIEVANCES AND U.T. PETTIJOHN RETALIATING AGAINST ME IN SEVERAL WAYS INCLUDING BUT NOT LIMITED TO LYING TO ME, FABRICATING AN ALLEGED INVESTIGATION DENYING ME RELIEF WHEN IM JUSTIFIED IN GETTING IT, TO GET BACK AT ME FOR INVOKING THE GRIEVANCE PROCEDURE FOR ME [illegible] EXERCISING MY FIRST AMENDMENT RIGHT. THE WARDEN NEEDS TO HOLD U.T. PETTIJOHN ACCOUNTABLE FOR RETALIATING AGAINST ME FOR WRITING HIM UP WHEN IM WELL WITHIN MY RIGHTS TO DO SO BY LAW, AND BECAUSE IM FORCED TO WRITE STAFF UP IN THE FIRST PLACE AND THEY SHOULDNT BE UPSET ABOUT IT, BUT ARE AND RETALIATION IS ILLEGAL. MY SUPPORTING DOCUMENTS SUPPORT MY ALLEGATIONS AND THE WARDEN NEEDS TO CAUSE U.T. PETTIJOHN TO BE DEMOTED AND REMOVED FROM A U.T. POSITION WHERE HES ABUSED HIS AUTHORITY NUMEROUS TIMES AND RETALIATED AGAINST ME NUMEROUS TIMES USING HIS U.T. POSITION TO DO SO.

#7940

Page 1 of 2, Attachment A, IMPP 01-118D
Effective 03-30-16
P-0590

HCF (31)

(FINALLY PROCESSED AND RETURNED TO ME)
4-17-2019

# PROPERTY DAMAGE/LOSS OR PERSONAL INJURY CLAIM FORM

(EXHIBIT D-5)

## Section I

(3-PAGES ATTACHED)

| Filed **AT** Facility No.: 02 | Facility Initials: H.C.F.-C |
|---|---|
| Filed **AGAINST** Facility No.: 02 | Facility Initials: H.C.F.-C |

(Refer to PLC coding manual for facility no. & initials)

Name of Claimant (Last, First, MI): BROWN DAVID C. KDOC Number #57800

Type of Claim (circle one): Lost Property Damaged Property **(Injury)** [circled]

Amount of Claim: $500.00 | Date of Loss Damage, or Injury (MO/DAY/YR): 9-13-2018

Where Loss, Damage, or Injury Occurred:

If occurred in cellhouse, enter cellhouse/room number: A-2 /CELL#227 /HCF-C

Otherwise, circle one of the following: Mailroom R&D Central Property Laundry Gym Dining Room Other Location

NATURE OF CLAIM (Set forth detailed facts, including date of loss, damage or injury, how it occurred, place of occurrence, how you claim institution or employee was negligent, and amount of the claim.):

THIS CLAIM IS AGAINST CSI TODD E. SWENSON FOR HIS INTENTIONAL USE OF ILLEGAL EXCESSIVE USE OF FORCE ON 9-13-2018 IN A-2 CELLHOUSE AT MY CELL #227.

SEE THE ATTACHMENTS FOR DETAILS AND FACTS

I am aware that presenting a false claim may result in penalties (under K.S.A. 75-7501 et seq., K.A.R. 44-12-101 et seq., etc.), and I declare (or verify, certify or state) that the foregoing is true and correct to the best of my knowledge, understanding, and belief.

Claimant Signature: David Brown Date: 9-21-2018

Subscribed and sworn to before me this 24th day of September, 2018

JEFFREY NEAL PETTIJOHN
Notary Public - State of Kansas
My Appt. Expires 7-19-22

[signature]
Notary Public

My Commission Expires

Received from Offender/Claimant: Date: 9-24-18 Time: 1100

UT Name (print): [signature] | UT Signature: [signature] | Claimant Initials: DB

## Section II

Received by Warden/Superintendent on (MO/DAY/YR): 10-01-18 | Facility Log No. Assigned: BA0007940

Investigation Report:

| Date (MO/DAY/YR): | Investigator Name (print): | UT Member or Investigator Signature: |
|---|---|---|
| | | |

(PAGE-1-OF-5)

# 7940
HCF/(31)

(INJURY CLAIM)

RE: ATTACHMENTS TO 9-13-2018 INJURY CLAIM
(EXHIBIT-D-6)

ON SEPTEMBER 13TH, 2018 AT HUTCHINSON CORRECTIONAL FACILITY, IN A-2 CELLHOUSE, AT THIS PRISONERS ASSIGNED CELL #227, CSI TODD E. SWENSON KNOWINGLY, INTENTIONALLY AND WITH THE INTENT TO PHYSICALLY HARM ME SLAMMED THE FOOD PASS DOOR ON MY HAND AND FINGERS WHILE I CRIED OUT IN PAIN, CONTINUED TO APPLY PRESSURE CAUSING ME FURTHER PAIN. CSI SWENSON SAID THINGS DURING THIS TIME SUCH AS, "HOW'S THAT FEEL B****?!", "DON'T MOVE YOUR HAND NOW PUNK!!", I'M GONNA RIP YOUR F***'EN HAND OFF!!" AND OTHER THINGS. WHAT CAUSED ME THE MOST PAIN, AND WHICH I'M STILL SUFFERING FROM SIX DAYS LATER IS WHEN CSI SWENSON CLIMBED ON THE TOP RAIL, GRIPPING THE RAIL AND USING IT AS LEVERAGE, PUT HIS COMBAT BOOT ON THE FOOD PASS DOOR, WITH MY HAND STILL OUTSIDE THE FOOD PASS, AND STARTED CRUSHING MY HAND. ALTHOUGH I SAID ALRIGHT, ALRIGHT! CSI SWENSON REFUSED TO ALLOW ME TO PULL MY HAND IN AND CONTINUED TO CRUSH MY HAND TRAPPED IN THE METAL FOOD PASS DOOR WHILE I CRIED OUT IN PAIN AND WHILE CSI SWENSON SAID, "YEAH BITCH, DON'T CRY NOW!" AS I CRIED OUT IN PAIN. I NEVER ONCE TRIED TO GRAB CSI SWENSON OR HIT HIM OR THROW ANYTHING OR DAMAGE ANYTHING. I HAD MY HAND OUT THE FOOD PASS BECAUSE CSI SWENSON TOOK MY CUPS REACHED IN MY CELL DROPPED THEM ON THE FLOOR, AND TOLD ME I WASN'T GETTING COFFEE OR TEA, WHICH IS PART OF DINNER, BECAUSE I WAS BEING ARGUMENTIVE, WHICH I ONLY STATED THE FACTS, WHICH WERE, CSI SWENSON CUSSED AT ME, BEING UNPROFESSIONAL AND DISRESPECTFUL. THAT IS NOT CAUSE AND/OR JUSTIFICATION TO DENY ME

→→ CONTINUE TO THE NEXT PAGE → → →

(INJURY CLAIM)

#7940
HCF/(31)

RE: ATTACHMENTS TO 9-13-2018 INJURY CLAIM
(EXHIBIT-D-7)

PART OF MY DINNER. I WASN'T YELLING EITHER. SO I SHOULDN'T OF BEEN DENIED PART OF MY DINNER. UNIT TEAM PETTIJOHN SAW CS1 SWENSON CLIMB ON THE RAILING AND USE HIS FOOT/LEG ON THE FOOD PASS DOOR TO CRUSH MY HAND. MY NEIGHBOR DID AS WELL. SEVERAL INMATES HEARD CS1 SWENSON CALL ME PUNK BITCH, TELL ME HE WAS GOING TO RIP MY F****N HAND OFF, ETC. AND WERE YELLING CUSSING AT CS1 SWENSON AND BANGING ON THEIR DOORS AS CS1 SWENSON CAUSED A HOSTILE WORK PLACE BY HIS UNPROFESSIONAL, ILLEGAL, EXCESSIVE USE OF FORCE AND HARMING ME. THE FACT IS CS1 SWENSON'S INTENT WAS NOT TO RESTORE ORDER OR HAVE ME COMPLY WITH A DIRECT ORDER, BUT TO CAUSE ME PAIN AND SUFFERING. CS1 SWENSON WAS REMOVED FROM THE CELLHOUSE DUE TO HIS UNPROFESSIONAL/ILLEGAL ACTIONS. AND I BELIEVE ITS FAIR TO SEEK REQUESTED RELIEF.

[signature] #57800
A-2/227/HCF

SUBMITTED THIS CLAIM ON FRIDAY 9-21-2018

#7940
HCF (31)

RE: ATTACHMENT TO INJURY CLAIM
(EXHIBIT-D-8)

THINGS I'M WILLING TO ACCEPT IN PAYMENT FOR THE SEPTEMBER 13TH, 2018 INJURY CLAIM AGAINST CSI TODD SWENSON, DUE TO HIS UNNECESSARY, ILLEGAL, UNPROFESSIONAL, VIOLENT, ASSAULT, BATTERY AND EXCESSIVE USE OF FORCE AGAINST ME AT HUTCHINSON CORRECTIONAL FACILITY, IN A-2 CELLHOUSE AT MY ASSIGNED CELL #227.

1) FAN
2) PLUG IN CLOCK
3) AM/FM CLOCK RADIO
4.) WRIST WATCH
5.) LAMP
6.) BATTERY CHARGER
7) RECHARGABLE BATTERIES
8.) HOT POT
9.) MP3 / MP4 PLAYER
10.) GYM SHORTS/SIZE LARGE
11.) SWEAT SHIRT/SIZE LARGE
12.) SHOES/SIZE 10
13.) COFFEE CUP OR MUG W/LID
14.) CANTEEN FOOD, DRINK, HYGIENE ITEMS
I'D LIKE COFFEE, SOUPS, CHIPS, MEATS, FISH, SOAP, P.J.J, CEREAL, BEANS, RICE, JAL. PEPPERS, CHEESE, COTTON SWABS, SWEATS, ETC.
15.) I'D LIKE TO BE ALLOWED TO RECEIVE A MONTHLY UNION SUPPLY BOX FROM FAMILY/FRIENDS
16.) CALCULATOR

# MEMO

HCF / #7940
(31)

Kansas
Department of Corrections
*Hutchinson Correctional Facility*

(EXHIBIT-D-9)

Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
(620) 728-3338
Fax: (620) 728-3473
Email: HCFI@doc.ks.gov
www.doc.ks.gov

**DATE:** November 26, 2018
**TO:** D. Schnurr, Warden
**FROM:** UTS J. Pettijohn
**CC:** Brown, David #57800
**RE:** Injury Claim #BA0007940

---

Offender Brown submitted a personal injury claim #BA00007940 on 9-21-18. Brown claims that CSI Swenson used excessive use of force on 9-13-18 at his cell A2-227. Brown states that Swenson knowingly and intentionally slammed the food pass port door on his hand and fingers. Brown claims that Swenson used the top rail of the 200 run for leverage to put his combat boots on the food pass port door, with Brown's hand still outside. Brown claims the price of his injuries are $500.

Corizons medical staff was questioned about the extent of offender Brown's injuries. They stated that Brown was seen on 9-13-2018, after the incident took place. The RN stated that he had some scratches on his hand, but noted no bleeding or immediate major injury. RN also put in a follow up appointment for an x-ray, in which Corizons states was completed the next day 9-14-18. The x-ray showed no fractures or any real significant injury. Brown was also seen by the Doctor on 9-27-18 for a follow up, and it was noted that he had been treated and was released from the injury.

During the investigation it was found that CSI Swenson did in fact use excessive force in this situation, and the captain's office was notified immediately after. Supervisory staff are notified in the event that an employee is being accused of inappropriate behavior. Be advised that, upon completion of an investigation, if it is determined that a security staff person has behaved inappropriately; he/she will be counseled by security supervision regarding acceptable behavior. Any action taken will be at the discretion of security supervision and administration, will not be made known to the inmate population. CSI Swenson's actions were deemed inappropriate and the situation was handled at a supervisory level.

This investigator does not support payment.

FINALLY RETURNED TO ME ON 4-17-2019 BY U.T. GRAFF AT CELL #227, IN A-2 CELLHOUSE, AT HCF MAX.

Follow up HCF (31)

CORIZON HEALTH

| FOR MEDICAL USE ONLY Sólo para uso médico |
| --- |
| Date Received: |
| Time Received: 1400 |

| Service Requested Servicio Solicitado | | |
| --- | --- | --- |
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-D-10)

Date of Request (Fecha de solicitud): 9-13-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227T / HCF

Nature of problem or request (Naturaleza del problema o solicitud): MY LEFT HAND WAS SMASHED AND CRUSHED IN THE CELLDOORS FOOD PASS. HURTS EXTREMELY BAD. THE KNUCKLES ALSO SMASHED/CRUSHED IN FOOD PASS, ALSO THUMB. WHOLE HAND HURTS TO TOUCH. THROBBING PAIN, NEED PAIN MEDICATION, SWOLLEN, HAD BLEEDING/PUNCTURES TAKEN, SEEN BY NURSE FOR EMERGENCY SICK CALL, GIVEN ASPRIN, BAG FOR ICE ALSO, BUT NEED AN ORDER OF A PAIN MEDS TO BE SEE THE NURSE AGAIN AND STAFF SAID PUT IN A SICK CALL.

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral.
(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

David Brown
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**
**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

150 98 129 | 8317 97.6
(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** [signature]

**Date:** **Time:** 1400 **am pm (circle one)**

**Called Down at:** **(for urgent issue)**

**Other:** Lt. hand slammed. Hurts to the touch.

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:** Give Ibuprofen with Tylenol PRN. Ret.

**Staff Signature:** [signature] **Date:** 9/14/18

NA7141-KS-DOC
Issued 01/06/2013

©2013 Corizon Health, Inc.

FOLLOW UP FOR LEFT HAND/FINGERS HCF (31)

CORIZON HEALTH

## HEALTH SERVICES REQUEST FORM
(Formulario de Solicitud de Servicios de Salud)

| FOR MEDICAL USE ONLY Sólo para uso médico |
|---|
| Date Received: 9/15 |
| Time Received: 4:30 |

| Service Requested Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-D-11)
Date of Request (Fecha de solicitud): 9-14-2018
ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74
Housing Location (Ubicación de la Vivienda): A-2/227/HCF
Nature of problem or request (Naturaleza del problema o solicitud): JUST NEED PAIN MEDICATION FOR MY HAND THAT IS EXTREMELY PAINFUL, HURTS TO TOUCH, SWELLON DUE TO BEING SMASHED AND CRUSHED IN CELLDOOR FOODPASS AT [illegible] FINGERS/KNUCKLES, WAS BLEEDING FROM ALL FIVE POINTS OF INJURY, GIVEN ASPRIN, BUT NEED SUPPLY TO LAST LONGER THAN A COUPLE DAYS & GIVEN ICE BAG FOR SWELLING, PHOTOS TAKEN SO I DONT EVEN NEED TO COME TO SICK CALL UNLESS
I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral. I'M WANTED TO TOLD ITS NOT BROKE BECAUSE I CAN MOVE HAND/FINGERS
(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)
BUT IT JUST HURTS SO BAD AND ALL I REQUEST IS SOMETHING FOR THE PAIN. PLEASE & THANK YOU.

David Brown
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**
**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

---

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** Pdinacua RN

**Date:** 9/15/18 **Time:** 4:40 (am) pm (circle one)

**Called Down at:** ______ **(for urgent issue)**

**Other:** 9/14/13

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:** 98.3 / 18 / 155 / 133/85 Anterior thumb some swollen SBU

**Staff Signature:** ______ **Date:** ______

NA7141-KS-DOC
Issued 01/06/2013

©2013 Corizon Health, Inc.

CORIZON HEALTH

| FOR MEDICAL USE ONLY Solo para uso médico |
|---|
| Date Received: |
| Time Received: 0840 |

| Service Requested (31) Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse Enfermera | ☒ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-D-12)

Date of Request (Fecha de solicitud): 11-14-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): MY LEFT HAND IS EXTREMELY PAINFUL. THE WEIGHT FROM MY ICE CHEST, FOOD TRAY, OR BOOK CAUSES OVERWHELMING PAIN. I NEED SOME BANDAGE WRAP AS I AM USING SOCKS AND I DONT CARE IF MEDICAL CLAIMS ITS NOT BROKE. IT HURTS REALLY REALLY BAD. MY HAND DOESNT OPEN AND CLOSE LIKE IT SHOULD AND HAS THROBBING PAIN. I AM HURT AND BADLY. I AM IN SERIOUS NEED OF MEDICAL TREATMENT FOR MY LEFT HAND AFTER BEING SMASHED IN THE STEEL FOOD PASS

I consent to be treated by health staff for the condition described.

(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral. DOOR OVER AND OVER

(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

David Brown
PATIENT SIGNATURE (Paciente Firma)

Pt: Left hand Needs bandage ... 3...

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**

**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** JA (10+14 days)

**Date:** **Time:** 0840 **am pm (circle one)**

**Called Down at:** 0815 **(for urgent issue)**

**Other:** 159 98.6 81 20 146/87

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:**

**Staff Signature:** NMLPN **Date:** 11/17/18

(2) SST ESCORTED ME TO SICK CALL ROOM NURSE NINA J. MORALES SAID SHE PUT ME IN FOR A FOLLOW UP TO SEE THE DOCTOR

DOC 6/2013

©2013 Corizon Health, Inc.



HCF/(31)

# HEALTH SERVICES REQUEST FORM

**(Formulario de Solicitud de Servicios de Salud)**

| FOR MEDICAL USE ONLY<br>Sólo para uso médico |
|---|
| Date Received: |
| Time Received: 0600 |

| Service Requested<br>Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse<br>Enfermera | ☐ Doctor<br>Doctor | ☐ Dental<br>Dental |
| ☐ Mental Health<br>Salud Mental | ☐ Eye Doctor<br>Médico de los ojos | |

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT D-13)

Date of Request (Fecha de solicitud): 11-25-18

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): WHEN AM I SUPPOST TO SEE THE DOCTOR FOR MY FOLLOW-UP SICK CALL?

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral.
(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

[signature]
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**
**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

---

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** J. Carter, RN

**Date:** **Time:** 0600 **am pm (circle one)**

**Called Down at:** 0803 **(for urgent issue)**

**Other:**

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:** Naproxen 220mg (2 tabs) twice a day [illegible]

**Staff Signature:** [signature] **Date:** 11/26/18

NA7141-KS-DOC
Issued 01/06/2013

Said I wasn't on list for follow up to see doctor, but saw where I was seen for my hand on 11-17-18

©2013 Corizon Health, Inc.

CORIZON HEALTH

| FOR MEDICAL USE ONLY Sólo para uso médico |
|---|
| Date Received: |
| Time Received: 0600 |

| Service Requested Servicio Solicitado | | |
|---|---|---|
| ☒ Nurse Enfermera | ☐ Doctor Doctor | ☐ Dental Dental |
| ☐ Mental Health Salud Mental | ☐ Eye Doctor Médico de los ojos | |

# HEALTH SERVICES REQUEST FORM

(Formulario de Solicitud de Servicios de Salud)

Print Name (Imprimir nombre): DAVID BROWN (EXHIBIT-D-14)

Date of Request (Fecha de solicitud): 11-27-2018

ID #: 57800 Date of Birth (Fecha de nacimiento): 11-6-74

Housing Location (Ubicación de la Vivienda): A-2/227/HCF

Nature of problem or request (Naturaleza del problema o solicitud): THIS IS A REMINDER TO BE SEEN BY THE DOCTOR BECAUSE MORALES SAID ID BEEN SEEN ON A FOLLOW UP BUT I NEVER WAS AND WHEN I WENT TO SICK CALL LAST THE NURSE SAID THERE WAS NOTHING IN THE COMPUTER ABOUT A FOLLOW UP. SO JUST AS A REMINDER IM SUBMITTING THIS SICK CALL AND FOR THE RECORD. I THINK THE LAST NURSE I SAW WILL HAVE HAD TAKEN CARE OF IT BUT JUST IN CASE.

I consent to be treated by health staff for the condition described.

(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to heatlh care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respecto de recibir servicios de salud no necesariamente implica que estoy de acuerdo en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuerdo con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de urgencia, si no se trata de una visita de seguimiento o por una derivación.)

[signature]
PATIENT SIGNATURE (Paciente Firma)

**PLACE THIS SLIP IN MEDICAL REQUEST BOX OR DESIGNATED AREA (Pon este artículo en la caja médica u otra área designada.)**

**DO NOT WRITE BELOW THIS AREA (No escriba debajo de esta área.)**

(Original – Medical Record Yellow Copy- Inmate/Patient Pink Copy-Business Office)

**(THE AREA BELOW IS NOT TO BE USED FOR EDUCATION, COUNSELING, OR DOCUMENTING A CLINICAL ENCOUNTER)**

**Triaged by:** [signature] RN

**Date:** **Time:** 0600 **am pm (circle one)**

**Called Down at:** 1043 **(for urgent issue)**

**Other:**

**Response Recommendation** (to be completed by Medical Staff Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☒ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☒ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 | | | | | |

**Comments:**

**Staff Signature:** Casey Sutton **Date:** 11-28-18

A7141-KS-DOC
Issued 01/06/2013

©2013 Corizon Health, Inc.



HCF (31)

Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

(EXHIBIT-D-15)

DATE: April 29, 2019

TO: Mike Nickels
A CH, UTM

FROM: Elizabeth Smith,
Admin. Specialist

RE: Brown, David #57800
A2-227

Please investigate the attached grievance that was sent to the Warden's Office by the inmate. If not resolved at the UT level, return with the Warden's response.

Thanks

Elizabeth Smith

Graff,
He can not grieve property claim response.
Please handle.
Nickels

I'M GRIEVANCING U.T. PETTIJOHNS RETALIATION, LIES, AGAINST ME, WHICH I'VE MADE MORE THAN CLEAR IN MY COMPLAINT!!

OFFENDER REQUEST TO STAFF MEMBER

(EXHIBIT-D-16) (31)

To: HCF WARDEN SCHNURR Date: 5-31-2019
(Name and Title of Officer or Department)

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Offender

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

RECEIVED JUN 4 2019 HCF Office Of The Warden

BROWN
Last Name Only

KANSAS DEPARTMENT OF CORRECTIONS

(1-OF-2)

57800
Number

OFFENDER REQUEST TO STAFF MEMBER

To: HCF WARDEN SCHNURR Date: 5-31-2019 (31)
(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

THE ENCLOSED GRIEVANCE DATED 4-23-2019 (31) HAS BEEN RETURNED TO ME, AGAIN, FIRST OF ALL PER KAR 44-15-201 THE "SPECIAL KINDS OF PROBLEMS" GRIEVANCE WHICH I SENT IN A SEALED ENVELOPE MARKED OFFICIAL MAIL TO THE WARDEN DAN SCHNURR SHOULD HAVE BEEN ANSWERED BY HIM AND THE OFFICIAL THAT CLAIMED MY SPECIAL KINDS OF →→

Work Assignment: N/A Living Unit Assignment: A 2/227/HCF

Comment: Detail or C.H. Officer:

Disposition: SEE ATTACHED REPLY FROM WARDEN

To: (Name & Number) Date:

Disposition:

Employee's Signature

To be returned to offender.

P-0009

RE PAGE-2 OF 2 (FORM - DATED 5-30-19) UCF/ (31)

(EXHIBIT-D-17)

PROBLEMS GRIEVANCE WASNT A MATTER THAT MEETS THE CRITERIA SHOULD HAVE INFORMED ME [illegible] SPECIAL, WHICH WAS NOT DONE. INSTEAD ELIZABETH SMITH RETURNED THE GRIEVANCE TO THE UNIT TEAM, OR SENT IT TO THE UNIT TEAM I SHOULD SAY, AND THEN THE UNIT TEAM TOLD [illegible] THE GRIEVANCE ISNT RESOLVED RETURN IT WITH THE WARDENS RESPONSE. SO THE WARDEN IS NOT EVEN INVOLVED IN THE GRIEVANCE PROCEDURE AND DOESNT REPLY [illegible], BUT INSTEAD HAS THE UNIT TEAM DO IT, VIOLATING K.A.R. 44-15-102(A)(2). SO THE UNIT TEAM MANAGER NICKELS TELLS UNIT TEAM GRAFF I CANT GRIEVE PROPERTY CLAIM RETALIATE, AND TO TAKE CARE OF IT, I MAKE CLEAR IN MY GREEVANCE IM NOT WRITTING THE GRIEVANCE ABOUT THE CLAIM, BUT INSTEAD ABOUT UNIT TEAM PETTIJOHN RETALIATING AGAINST ME AND LYING AND DENYING THE CLAIM IN RETALIATION AGAINST ME FOR WRITING HIM UP, BUT IT DOESNT MATTER UNIT TEAM GRAFF GIVES UNIT TEAM MANAGER NICKELS REPLY. SO I MARK IM NOT SATISFIED AND RESUBMIT THE GRIEVANCE WHICH SHOULD HAVE GONE TO THE WARDENS OFFICE TO BE PROCESSED BUT INSTEAD WAS RETURNED TO ME. IT [illegible] MENTION UNIT TEAM GRAFF DIDNT SIGN OR DATE HIS REPLY. PLEASE REPLY TO MY FORM-9 HERE, ATTACHED TO THE GRIEVANCE (31) AND PROCESS MY GRIEVANCE COMPLAINT AS IM NOT SATISFIED WITH UT GRAFFS RESPONSE BECAUSE ITS WRONG/FALSE AS IT STATES IM DOING SOMETHING IM NOT. IM MAKING A HAND WRITTEN COPY OF THIS DOCUMENT FOR MY RECORDS.

HCF (31)

(EXHIBIT-D-18)

Kansas
Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 662-7646
HCFI@ks.gov
www.doc.ks.gov

Chuck Simmons, Interim Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 06/17/2019

TO: Brown, David #57800 – A2-227

FROM: D. Schnurr, Warden

SUBJECT: Form-9 - Correspondence ← WRONG GRIEVANCE FORM NOT FORM-9/CORRESPONDENCE SPECIAL KIND OF PROBLEMS

I have received the form-9 you sent me regarding the grievance you attached and how it was not handled properly.

The grievance that you initially sent to my office was handled properly. It was returned to Unit Team (UTS Graff), since you did not follow the proper grievance procedure according to K.A.R. 44-15-102. At that time, the grievance was returned to you since the issue you brought up concerning your injury claim is a non-grievable issue according to the following K.A.R.:

*KAR 44-15-101a provides that the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, or* ***the property loss or personal injury claims procedure****, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure.*

UTS Pettijohn is not retaliating against you and his response to your injury claim #BA0007940 is professional and has been approved.

If you are unhappy with the outcome of the injury claim, you have the right to file a claim with the joints claim committee.

D. Schnurr

Dan Schnurr, Warden
Hutchinson Correctional Facility

DS/JB/eks

c: file

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM HKF/(7)

(EXHIBIT-D-19)

INMATE COMPLAINT

Inmate's Name DAVID BROWN Number 57800

Facility H.C.F.-MAX Housing Unit A-2/227 Work Detail N/A

(PAGE-1-OF-2) (AND)(3-FORM-9 ATTACHMENTS)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). (ATTACHED ARE (3) FORM-9'S DATED 2-3-2019, 9-13-2018, AND 9-27-2018) MY COMPLAINT IS THAT U.T. JEFREY PETTIJOHN PROMISED TO SWITCH ME OUT WITH ANOTHER RADIO FOR THE ONE HE GAVE ME TO RESOLVE PROPERTY CLAIM #7698 BECAUSE THE RADIO U.T. PETTIJOHN GAVE ME WAS ALTERED. THE ANTENNA WIRES WERE NOT HOOKED UP AND WERE WERE IN OTHER PLACES IN ORDER FOR A PERSON TO LISTEN TO THEIR T.V. THROUGH THE SPEAKER OF THE RADIO. I SHOWED U.T. PETTIJOHN THE WIRES THAT WERE NOT HOOKED UP AND OTHERS NOT WHERE THEY SHOULD OF BEEN. ALSO BECAUSE OF THE ALTERED WIRES THE RADIO WOULD JUST CUT OFF. U.T. PETTIJOHN TOLD ME TO REMIND HIM TO SWITCH THE RADIO OUT, AND EACH TIME I DID HE SAID → → →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 2-11-2019 (7)

UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

See attached response.

B. [signature] UTS — 2/21/2019
Unit Team Signature — Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am (not) satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). ______

[signature] — 2-22-2019
Inmate Signature — Date

GOT BACK MAIL PASS 2-22-2019

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received 2-26-19 Date of Final Answer 2-28-19 Date Returned to Inmate 3-14-2019

[signature] 3-14-19 — [signature]
Inmate's Signature — Date — Unit Team Signature — Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number BA00018254

Type of Complaint (Item 4: Code 01-75) 5 4

Cause of Complaint (Item 5: Code 01-30) 0 3

Type of Response (Item 6a: Code 01,02,08 or 09) 0 8

(EXHIBIT-D-20)

HCF/(7)

RE: GRIEVANCE #(7) PAGE-2-OF-2

HE HAINT FORGOT AND WOULD DO IT AS SOON AS HE FINDS ANOTHER RADIO. I SUBMITTED A COUPLE FORM-9'S ABOUT IT AS WELL. THEN ON 12-18-2018 WHILE U.T. PETTIJOHN WAS GIVING ME MY SHOES I ASKED HIM WHAT WAS UP ON MY RADIO, AND U.T. PETTIJOHN SAID, "OH, I THOUGHT I DID THAT ALREADY", AND I SAID "NO YOU DIDN'T, DONT BE ON THAT BULL S*** MAN, YOU KNOW YOU HAVENT SWITCH ME OUT RADIOS YET". U.T. PETTIJOHN SAID, "I'LL GET IT TO YOU SOON AS I GET ANOTHER RADIO, BE PATIENT." I SAID, "I'VE BEEN PATIENT AND I'LL BE PATIENT AS LONG AS YOU DO IT." THEN ON 2-1-2019 U.T. PETTIJOHN TELLS ME HE'S BEEN ROTATED TO D-CELLHOUSE AND TO TALK TO THE U.T. WE GET AND HE'S SURE HE'LL HELP ME WITH IT AND IF NOT HE WOULD. I SUBMITTED A FORM-9 IN TO THE NEW UNIT TEAM, BRENDAN D. GRAFF ON 2-7-2019 AND HE RESPONDS SAYING U.T. PETTIJOHN SAYS THE RADIO WAS WORKING WHEN HE GAVE IT TO ME AND IT CAN NOT BE REPLACED AT THIS TIME. MY COMPLAINT IS U.T. PETTIJOHN LIED TO ME OVER AND OVER AND NOW ANOTHER ONE OF HIS LIES IS CAUSING ME PROBLEM. U.T.M. NICKELS TELL ME WORK WITH PETTIJOHN, AND DOESNT UNDERSTAND ALL THE S*** I DELT WITH WHILE WORKING WITH HIM. U.T. PETTIJOHN ALSO SWORE HE'D FIND ME ANOTHER REMOTE TO MY T.V. BECAUSE IT DIDNT WORK, BUT I PUT TOILET PAPER AGAINST THE EYE AND IT WORKED, AND I ALSO SHOWED ALL THAT TO U.T. PETTIJOHN, BUT WAS LIED TO. STAFF SHOULD LIE TO SHOULDN'T/CORRECTION SOMEONE THATS TRYING TO WORK WITH THEM AS IT ONLY CAUSES FURTHER PROBLEM FOR OTHER STAFF TO DEAL WITH E.G. THIS GRIEVANCE. ONCE AGAIN I'M SCREWED OVER BY STAFF. THE RADIO DOESNT WORK AND THE U.T.M., WARDEN, SECRETARY SHOULD CAUSE ME TO GET A UNALTERED WORKING RADIO AND HOLD STAFF ACCOUNTABLE FOR UNPROFESSIONAL LYING AND/DEMEANOR.

(PER U.T. PETTIJOHN DIDN'T REPLACE MY RADIO, WHICH IS BROKE DUE TO THE WIRES INSIDE BEING ALTERED, WHICH I SHOWED U.T. PETTIJOHN AT ONCE AND HE PROMISED AN EXCHANGE OF THE RADIO FOR ME BUT HAS NOW ROTATED, CAN YOU AID ME IN THIS. HAVE FORMS ON IT AND YOU CAN CALL HIM. HCF(7))

INMATE REQUEST TO STAFF MEMBER

To: U.T. OF A-2 CELLHOUSE
(Name and Title of Officer or Department)

Date: 2-3-2019 (7)

(EXHIBIT-D-21)

[signature] C.O. I
Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Inmate

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

#57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

**To:** U.T. OF A-2 CELLHOUSE **Date:** 2-3-2019 (7)
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

UNIT TEAM PETTIJOHN IS ROTATING TO ANOTHER CELLHOUSE AND HE DIDN'T REPLACE MY RADIO, WHICH HE SAID HE WOULD BECAUSE ITS BROKE DUE TO THE WIRES INSIDE BEING ALTERED. I ACCEPTED THE RADIO AS PART OF A PROPERTY CLAIM AND INFORMED U.T. PETTIJOHN OF THE RADIOS CONDITION AND SHOWED HIM, BUT ITS NOT BEEN EXCHANGED. I HAVE OTHER FORM 9'S ABOUT THIS AND YOU CAN CALL AND SPEAK TO U.T. PETTIJOHN ABOUT THIS. CAN YOU AID IN THIS?

Work Assignment: N/A Living Unit Assignment: A-2/227/H.C.F.

Comment: Detail or C.H. Officer:

Disposition:

To: Date: 2/5/19
(Name & Number)

Disposition: Per UT Pettijohn this radio was in working condition when it was given to you. This is not something that can be replaced at this time.

[signature]
Employee's Signature

To be returned to inmate.

P-0009

RE: CAN YOU GET ANOTHER RADIO AS THESE ONES MESSED UP. WIRERS ARE TAPED TO CIRCUIT BOARD ETC. NEED SOLDER GUN TO FIX WIRE. HCF (7)

INMATE REQUEST TO STAFF MEMBER

(EXHIBIT-D-22)

To: U.T. PETTIJOHN OF A-2 Date: 9-13-2018
(Name and Title of Officer or Department)

U.T. [signature]
Unit Team, Detail, or Cellhouse Officer's Signature
Pettijohn

To be retained by Inmate

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

**To:** U.T. PETTIJOHN OF A-2 **Date:** 9-13-2018
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

MAN, THIS RADIO IS MESSED UP. I WAS GOING TO HAVE THE PORTER FRANK SEE IF HE COULD FIX IT, BUT HE GOT FIRED, PLUS, I WAS LOOKING THROUGH THE BACK AND SEE A COUPLE WIRES TAPED TO THE CIRCUIT BOARD AND IT TAKES A SOLDER GUN TO FIX THAT. ALSO, IT JUST STOPS PLAYING SOMETIMES CAN YOU GET ANOTHER RADIO THAT HASNT HAD WIRERS MOVED AROUND AND TAPED CAUSE THIS DRIVES ME CRAZY.

Work Assignment: N/A Living Unit Assignment: A-2/227/H.C.F.

Comment: Detail or C.H. Officer:

Disposition:

To: Date:
(Name & Number)

Disposition: I will keep this in mind when I can find another Radio

[signature] Pettijohn

Employee's Signature

**To be returned to inmate.**

HCF (7)

(RE: 2ND REMINDER TO TRADE OUT RADIO THAT HASN'T BEEN OPENED UP AND HAD THE WIRES ALTERED TAKING HIM AS MAN OF HIS WORD, RADIO GETS ONE STATION, SHOWED HIM WHERE WIRES WERE MOVED AROUND AND NOT CONNECTED)

INMATE REQUEST TO STAFF MEMBER

To: U.T. PETTIJOHN
(Name and Title of Officer or Department)

Date: 9-27-2018

(EXHIBIT- D-23)

[signature] Jagen CO1
Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by Inmate**

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE -1- OF- 2)

57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

**To:** U.T. PETTIJOHN **Date:** 9-27-2018
**(Name and Title of Officer or Department)**

**State completely but briefly the problem on which you desire assistance. (Be specific.)**

I'M REMINDING YOU TO TRADE ME OUT WITH A RADIO THAT HASN'T BEEN OPENED UP AND HAD THE WIRES ALTERED YOU GAVE ME YOUR WORD YOU WOULD SOON AS YOU GOT ANOTHER ONE, I'VE SPOKEN TO YOU SEVERAL TIMES ABOUT THIS SO I'M TAKING YOU AS A MAN OF HIS WORD THAT YOU'LL DO THIS BECAUSE YOU GAVE ME A ALTERED RADIO THAT GOT ONE →

Work Assignment: N/A Living Unit Assignment: A-2/227 / HCF

Comment: Detail or C.H. Officer:

Disposition:

To: Date:
(Name & Number)

Disposition: I don't have one at the moment but will keep you in mind when I do

[signature]

To be returned to inmate

(EXHIBIT-D-24)

HCF/(7)

(RE: FORM-9 DATED 9-27-2018 PAGE-2-OF-2)

STATION AND THE ANTENNA WAINT HOOKED UP. YOU ALSO SAID YOU GET ME ANOTHER REMOTE FOR MY T.V. WHICH YOU HAVENT DONE YET EITHER. TELLING ME WHAT YOUR GONNA DO, THEN WRITING SOMETHING ABOUT KEEPING IT IN MIND IS CONCERNING. GET MY RADIO AND REMOTE MAN.



(EXHIBIT-D-25)
HCF/(7)

P.O. Box 1568
Hutchinson, KS 67504-1568

Department of Corrections
Hutchinson Correctional Facility

Phone: (620) 728-2321
Fax: (620) 728-3476
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

Date: 02/21/2019

To: Brown, David #57800

Subject: Grievance

From: B. Graff UTS
Hutchinson Correctional Facility

**FINDING OF FACTS:** On 02/11/2019 you submitted a grievance against UTS Pettijohn concerning him not replacing a radio that he gave you for a property claim.

**CONCLUSIONS MADE:** I spoke with UTS Pettijohn and he stated that he had not yet come across a replacement radio as is specified in the form-9 responses that you have attached to this grievance. Furthermore, UTS Pettijohn states in his responses that he will keep you in mind if he is to obtain another radio, which is not a promise or guarantee to replace this item. You accepted and signed for this item, leaving no obligation to Unit Team to replace it. In offering the possibility of replacing if circumstances permitted, UTS Pettijohn was extending a courtesy to you.

**ACTION TAKEN:** None warranted. If you are unsatisfied by the Unit Team's response, you may forward this grievance to the Warden's office within three calendar days of your receipt of it.

U.T. PETTIJOHN DID PROMISE AND/OR GUARANTEE ME VERBALLY, BY GIVING ME HIS WORD HE WOULD SWITCH THE BROKE/ALTERED RADIO OUT FOR ANOTHER ONE BECAUSE THE ONE HE GAVE ME WAS BROKE/ALTERED, WHICH HE ALSO SAID HE'D FIND ANOTHER REMOTE AS THE ONE HE GAVE ME WAS BROKE. ITS NOT A COURTESY ITS A VERBAL CONTRACT, AND SHAME ON ME FOR THINKING STAFF WOULD BE HONEST AND A MAN OF THEIR WORD AND HONOR WHAT THE PROMISE.



(EXHIBIT-D-26)
(COPY) HCF (7)

P.O Box 1568
Hutchinson KS 67504-1568

Department of Corrections
Hutchinson Correctional Facility

Phone (620) 728-3338
Fax. (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 2/28/2019

TO: Brown, David #57800
A2-227

SUBJECT: Grievance #BA00018254

FROM: Dan Schnurr, Warden
HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACT:** In your grievance, you allege UTS Pettijohn did not replace a radio given to you as result of a property claim you submitted.

**CONCLUSIONS:** I have reviewed your grievance and the response from UTS Graff. Although UTS Pettijohn has not replaced that radio yet, he is still keeping you in mind if he was to come in possession of another such radio. You accepted the radio "as is" as a replacement on the property claim. As UTS Graff stated, UTS Pettijohn is still extending a courtesy. BECAUSE HE GAVE ME HIS WORD HE'D CHANGE ME OUT FOR ANOTHER RADIO

**ACTION TAKEN:** None warranted. This is my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/MAN/eks

cc: HCF File

(EXHIBIT-D-27)

HCF/(7)

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: DAVID BROWN ✓ Facility: HUTCHINSON CORR. FAC.

Inmate Number: 57800 Grievance Serial No. BA00018254 (7)

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO: Secretary of Corrections
Landon State Office Building
900 Jackson, 4th Floor
Topeka, Kansas 66612

Date Mailed: 3-17-2019 (7)

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) MY COMPLAINT STANDS AS WRITTEN IN THE ATTACHED GRIEVANCE. U.T. PETTEJOHN LIED TO ME BY MAKING A PROMISE TO ME THAT HE WOULD REPLACE THE RADIO HE WAS GIVING ME AS SOON AS HE COULD LOCATE ANOTHER ONE. THIS IS JUST ANOTHER EXAMPLE OF U.T. PETTEJOHNS LIES UNPROFESSIONAL CONDUCT AND RETALIATION AGAINST ME, AS U.T. PETTEJOHN KNEW HE WAS GIVING ME A ALTERED RADIO THAT DIDNT WORK PROPERLY. AND NOW HE'S ROTATED TO A NEW POST. HE'S NOT HONORING HIS PROMISE AND I'M ONCE AGAIN GETTING THE SHORT END OF THE STICK FOR THINKING I COULD TRUST KDOC STAFF → →

David Brown
Signature of Inmate

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)

If applicable - Confidential File No. ________

Date Received in Office of Secretary of Corrections: ________

Date of Final Answer: ________ Date Sent to Inmate: ________

RECEIVED
MAR 21 2019
DOC Facility Management Area

Finding of Fact:

Conclusions Made:

Action Taken:

________
Signature of Secretary of Corrections

**For D.O.C. Staff Use Only**

Type of Response (Item 6b: Code Ø1, Ø2, Ø8 or Ø9) __ __

DC Ø9Ø, Effective May 1, 1988

P-157a

(EXHIBIT-D-28) HCF/(7)

RE: GRIEVANCE APPEAL (7)

AND YES, I DID ACCEPT THIS RADIO, AND SO ILL BE STUCK WITH MAKING A MISTAKE OF STAFF MAKING A PROMISE TO ME, AND ME ACCEPTING STAFFS WORD. LET THE RECORD REFLECT SUCH FACTS AND THE S.O.C. SHOULD CAUSE ALL K.D.O.C. STAFF TO HONOR THEIR WORD AND BE HELD ACCOUNTABLE WHEN THEY DONT, AT ITS PART OF THE KDOC'S CODE OF ETHICS CONTRACT PER IMPP 02-118D ATTACHMENT A.

(EXHIBIT-D-29)

HCF/(7)

RE: UNIFORM PETITION

# Grievance-Response on Appeal

RADIO REPLACEMENT DENIED/USED TO/

FACILITY: Hutchinson Correctional Facility

INMATE: 0057800 BROWN, DAVI..

GRIEVANCE NO.: BA 00018254

DATE: March 21, 2019

RECEIVED

APR 1 2019

HCF Office Of The Warden

**FINDINGS OF FACT**

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

**CONCLUSIONS MADE**

The response rendered to the inmate by staff at the facility is appropriate.

**ACTION TAKEN**

None further.

**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc: Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on ___________.

HCF (56)

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT** (EXHIBIT-E-1)

Inmate's Name DAVID BROWN Number 57800

Facility H.C.F. Housing Unit A-2/227 Work Detail N/A

(PAGE-1-OF-4)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member) (ATTACHED FORM-9 DATED 9-12-2019) I INCORPORATE THE ATTACHED FORM-9 AS THOUGH IT WAS STATED FULLY HEREIN THIS GRIEVANCE. I HAVE STATED AND RESTATED THE COMPLAINTS IN THE ATTACHED FORM-9 AND INCORPORATE THEM HEREIN THIS GRIEVANCE. MY COMPLAINTS ARE AGAINST CSI SWENSON, U.T. PETTIJOHN, WARDEN SCHNURR, U.T. GRAFF AND HCF CORIZON MEDICAL FOR THEIR CONTINUED PRACTICE TO GIVE GUILTY STAFF IMMUNITY, FOR THEIR CONTINUED RETALIATION, FOR THEIR PRACTICES TO USE EXCESSIVE FORCE AGAINST PRISONERS WITHOUT CONSEQUENCE, FOR MEDICAL'S PRACTICE TO DOWN PLAY A PRISONERS INJURIES WHEN STAFF HAS CAUSED THEM NEXT PAGE →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 9-25-2019 (56)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

I'M NOT SATISFIED WITH THE U.T.S RESPONSE MOVING TO NEXT STAGE WHICH IS THE WARDENS OFFICE.

NOTE: U.T. GRAFF REFUSED TO SEND TO WARDEN AND RETURNED TO ME AGAIN. SENDING TO WARDEN VIA U.S. MAIL.
UT GRAFF SENT BACK 10-7-2019 AGAIN

NOTE: U.T. GRAFF REFUSED TO SIGN AND ATTACHED HIS RESPONSE REFUSING TO PROCESS MY GRIEVANCE.

Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). ____

[signature] 10-6-2019

Inmate Signature Date

(RE: RETURNED TO ME ON 10-4-2019/A-2/227/IRF)

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received 10-24-19 Date of Final Answer 10-28-19 Date Returned to Inmate 11-14-19

[signature] 11-14-19 U.T. GRAFF REFUSED TO SIGN 11-14-19

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

| | | |
|---|---|---|
| Grievance Serial Number | BA00018390 | |
| Type of Complaint (Item 4: Code 01-75) | 5 | 4 |
| Cause of Complaint (Item 5: Code 01-30) | 0 | 3 |
| Type of Response (Item 6a: Code 01,02,08 or 09) | 0 | 8 |

(EXHIBIT E-2)

RE: GRIEVANCE (5G) / PAGE-2-OF-4 ) HCF/(5G)

FOR GUARDS, UNIT TEAMS AND MEDICAL DESTROYING FORM 9'S AND/OR EVIDENCE THAT DETAILS THE FACTS e.g. WHO, WHAT, WHEN, WHERE, TIMES, DATES, ETC, IN ORDER TO ASSIST GUILTY STAFF GET AWAY WITH THEIR UNPROFESSIONAL/ILLEGAL ACTS AND BEHAVIORS, AND PRACTICES AGAINST PRISONERS/ME. FOR UNIT TEAM PETTIJOHN/DAWES DESTROYING THE FORM 9 I FIRST SUBMITTED ON THE ATTACK AGAINST ME BY CSI SWENSON, FOR UNIT TEAM GRAFFS REFUSAL TO PROCESS MY FORM 9 ALLEGEDLY BECAUSE I DIDN'T COMPLY WITH THE TIME LIMIT TO FILE A GRIEVANCE, WHICH IS FALSE, AND U.T. PETTIJOHN TOLD ME THE INCIDENT WAS UNDER INVESTIGATION AND THERES NO TIME LIMIT FOR AN INVESTIGATION TO BE COMPLETED AND I WOULD GET MY FORM-9 WHEN THEY HAVE COMPLETED THEIR PROCESS. FOR U.T. GRAFF CLAIMING THE ISSUES OF CSI SWENSON AND PETTIJOHN HAS BEEN ADDRESSED WHEN THEY HAVE NOT AS MY FORM 9 WAS NEVER ANSWER/RETURNED TO ME DATED 2-5-2019, I RECEIVED NO RELIEF FOR THE RETALIATION AGAINST ME BY UNIT TEAM PETTIJOHN, IM STILL BEING RETALIATED AGAINST BY U.T. GRAFF, AND MY INJURIES HAVE LONG LASTING EFFECTS AS I STILL SUFFER FOR THEM TODATE, ALSO, THE WARDEN FOR REFUSING TO TAKE CORRECTIVE ACTION AGAINST ALL H.C.F. STAFF FOR DESTROYING PRISONERS/MY LEGAL/OFFICIAL PAPERS, FOR HINDERING MY RIGHT TO PETITION THE GOVERNMENT FOR A REDRESS OF MY GRIEVANCES, FOR HINDERING/PROLONGING MY RIGHT TO ACCESS THE COURTS, FOR PLAYING GAMES WITH THE FORM-9S/GRIEVANCES SAYING THEY ARE OUT FOR WEEKS, FOR DOING THE SAME WITH PENS WHEN H.C.F HAS A PRINT SHOP AND MAKES FORMS, AND FOR U.T. GRAFF ATTEMPTING TO JUSTIFY THESE GAMES BY PUTTING BLAME ON ME: NO ONE ELSE HAS TO REQUEST

(NEXT PAGE → →

(EXHIBIT-E-3)

(RE: GRIEVANCE (SG) / PAGE-3-OF-4) HCF / (SG)

FORMS OR FEES FROM FROM THE UNIT TEAM, FOR U.T. GRAFF NOT ADDRESSING THE ACTUAL COMPLAINTS I AM MAKING IN MY FORM-9 AND GRIEVANCES, AS IN THE ATTACHED FORM 9 I MAKE CLEAR I MADE AN OFFICIAL REQUEST TO U.T. DAVIES AND THE WARDEN SCHNURR TO PRESERVE THE CAMERA FOOTAGE OF THE ATTACK AGAINST ME ON 9-13-2019 BY CSI SWENSEN AND THE USUAL PATTERN OF BEHAVIOR / USUAL PRACTICE OF STAFF DESTROYING MY FORM-9'S CONTINUES, AND IF THE CAMERA FOOTAGE WAS ALLEGEDLY DESTROYED IT OBSTRUCTS JUSTICE, DESTROYS EVIDENCE OF CRIMINAL ACTS AGAINST ME, IT'S A ISSUE OF SPOLIATION OF EVIDENCE, WHICH I BELIEVE THE WARDEN SCHNURR IS AWARE OF DUE TO HIS COMMENT OF WANTING TO SEE MY REQUEST TO HAVE THE CAMERA FOOTAGE SAVED AS BEFORE HE SAYS THE CAMERA FOOTAGE IS DESTROYED OR NOT HE WANTS TO MAKE SURE I DON'T HAVE A COPY OF MY REQUEST AS THE WARDEN REFUSED TO TELL ME IF THE CAMERA FOOTAGE WAS SAVED OR NOT, FOR H.C.F. GUARDS / UNIT TEAMS / WARDEN HARASSING / RETALIATING AGAINST ME FOR EXERCISING MY FIRST AMENDMENT RIGHTS, FOR THE WARDEN KNOWING U.T. PETTIJOHN LIED ABOUT MY INJURIES AND KNOWS U.T. PETTIJOHN DENIED MY CLAIM UPON ~~[illegible]~~ THAT REASON, BUT SUPPORTED HIS LIES, FOR THE WARDEN KNOW THE PROPERTY CLAIM, INJURY CLAIM AND GRIEVANCE PROCEDURE ARE ABUSED BY H.C.F. STAFF AND USED AS RETALIATORY TOOLS AGAINST PRISONERS / ME AND ALLOWS AND SUPPORTS SUCH PRACTICES AND REFUSES TO TAKE CORRECTIVE ACTION. THE GRIEVANCE SYSTEM IS INEFFECTIVE, BIASED, RETALIATORY, ABUSED BY STAFF, COMPOUNDS PROBLEMS, PROLONGS HARDSHIPS —

(NEXT PAGE ⟶ ⟶)

(EXHIBIT-E-4)

RE: GRIEVANCE (56) / (PAGE-4-of-4) / HCF / (56)

IS STRESSFUL AND EXHAUSTING, AND THE CONTINUED GAMES HARASSMENT AND/OR RETALIATION AGAINST ME FOR MY CONTINUED EFFORTS TO EXHAUST MY ADMINISTRATIVE REMEDIES CONTINUES IN SEVERAL FORMS. IT ALSO BEARS MENTION THAT U/T. GRAFF HAS ONCE AGAIN USED IN ONE OF HIS RESPONSES TO ONE OF MY COMPLAINTS, IN THAT HE CLAIMS BOTH PEOPLE I MENTION IN MY COMPLAINT HAVE BEEN ADDRESSED BY SUPERVISORS, AND THATS U/T. PETTIJOHN AND CSI SWENSON, BUT I HAVEN'T HAD A COMPLAINT AGAINST U/T. PETTIJOHN PROCESSED DUE TO THE FORM-9 I FIRST SUBMITTED BEING DESTROYED, NOT ANSWERED OR RETURNED, SO ITS A MYSTERY AS TO HOW MY COMPLAINTS AGAINST U/T. PETTIJOHN HAVE BEEN ADDRESSED BY SUPERVISORS, UNLESS THEY SAW THE FORM-9 COMPLAINT AND ARE WHY IT WASN'T ANSWERED/RETURNED TO ME, WHICH WOULD ALSO EXPLAIN WHY SO MANY HCF STAFF IGNORE AND/OR VIOLATED THE GRIEVANCE PROCEDURES WHEN THE HIGHEST RANKING OFFICIALS ARE DOING IT, I DON'T BELIEVE THAT U/T. PETTIJOHN WAS ADDRESSED, AND HELD ACCOUNTABLE FOR ANYTHING. I WANT MY COMPLAINTS PROCESSED AND THE STONEWALLING OF MY GRIEVANCES TO STOP AND UNIT TEAM GRAFF HELD ACCOUNTABLE FOR DOING IT OVER AND OVER AGAIN. THE WARDEN/SECRETARY NEED TO CAUSE ALL MY COMPLAINTS PROCESSED ~~[illegible]~~ NEED TO FIRE CSI SWENSON/U/T. PETTIJOHN/ U/T. GRAFF, WHICH WONT HAPPEN RETALIATION IN ALL FORMS STOPPED. I'M TOLD CSI SWENSON WAS FIRED FOR OTHER REASONS FOR THE RECORD, AND U/T. PETTIJOHN NEEDS TO BE DEMOTED! IF NOT FIRED AND ALL ISSUES STEMMING FROM THIS INCIDENT RESOLVED PASSED TO NEXT SENTENCE ALL OBJS CLEARED

(RE: RECEIPT ... NOT BEING ANSWERED/RETURNED, BATTERY, ASSAULT, ... AND CARRIED, FAILURE TO ... CAMERA FOOTAGE OF 9-13-18 ... PETTIJOHN VERBALLY, HE SAID IT WOULD BE SAVED TO TO INVESTIGATION FOR INJURY CLAIM, STAFF GET ... DESTROYED EVIDENCE ... WARDEN ALLOW ABUSIVE STAFF TO DO SO OVER & OVER RETALIATION GRIEVANCE ... FOR PETTIJOHN NOT ... BEHAVIOR)

OFFENDER REQUEST TO STAFF MEMBER

To: UNIT TEAM GRAFF OF A-2 Date: 9-12-2019 (56)

(Name and Title of Officer or Department)

Weber

Unit Team, Detail, or Cellhouse Officer's Signature

(EXHIBIT-E-5)

**To be retained by Offender**

---

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN (56)
Last Name Only

(NOTE: ALSO ATTACHED IS FORM 9 RECEIPT DATED 2-5-2019)

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE-1-OF-8)

#57800
**Number**

## OFFENDER REQUEST TO STAFF MEMBER

**To:** UNIT TEAM GRAFF OF A-2 **Date:** 9-12-2019 (56)

**(Name and Title of Officer or Department)**

**State completely but briefly the problem on which you desire assistance. (Be specific.)**

I SUBMITTED A OFFENDER REQUEST TO STAFF MEMBER/FORM-9 TO UNIT DAWES/WARDEN ON 2-5-2019 DUE TO MY COMPLAINTS BEING AGAINST UNIT TEAM PETTIJOHN IN PART, AND TO MAKE MY OFFICIAL REQUEST TO HAVE CAMERA FOOTAGE OF AN ATTACK AGAINST ME BY CSI SWENSON SAVED, AND ONCE AGAIN, THE FORM-9 WAS NOT ANSWERED OR RETURNED TO ME. THIS HAS BEEN A ON GOING →

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer:

Disposition:

To: Date: 9/20/19

(Name & Number)

Disposition: The incident with CSI Swenson and UTS Pettijohn has been previously addressed. You have been waiting what you claim to be multiple weeks for flex pers and paperwork prior to notifying me at which point they are addressed. Both individuals you are mentioning in your complaint have already been addressed by supervisors.

B. [signature]

Employee's Signature

**To be returned to offender.**

P-0009

(NOTE: ALSO ATTACHED IS FORM 9 RECEIPT DATED -2-5-2019)
(RE: ~~████████~~ FORM 9 DATED 9-18-2019 / PAGE 2 OF 3
BATTLE/PROBLEM WITH HCF STAFF AND IT CONTINUES TO (DATE 9-18-2019)

(EXHIBIT-E-6)

THIS IS VIOLATING MY FIRST AMENDMENT RIGHT TO PETITION THE
GOVERNMENT FOR A REDRESS OF MY GRIEVANCES, ITS ALSO VIOLATING
MY RIGHT TO ACCESS THE COURTS, AS ITS PROLONGING ~~MY~~ EFFORTS TO
EXHAUST ~~████~~ MY ADMINISTRATIVE REMEDIES, AND HINDERING
~~MY~~ ~~████████████~~ ACCESS ~~████~~ TO THE COURTS IS ILLEGAL. ITS NOT
A MISTAKE EITHER, ITS INTENTIONAL AND DONE WITH MOST OF MY
COMPLAINTS THAT EXPOSE AND ADDRESS STAFFS MORE SERIOUS
MISTREATMENT, ABUSES, ILLEGAL ACTS AND BEHAVIORS, AND IT
ALSO OBSTRUCTS JUSTICE. DESTROYING EVIDENCE AGAINST H.C.F.
OFFICIALS ~~████████~~ IS ALSO ILLEGAL. ITS ALSO DONE TO EXHAUST
ME IN MY EFFORTS TO SEEK LEGAL AND CIVIL RESOLUTIONS TO THE
MANY PROBLEMS IM FACED WITH. HCF HAS ALWAYS BEEN A
FACILITY WHERE UNIT TEAMS DESTROY MY FORM 9's AND
GRIEVANCES, WHICH IVE DOCUMENTED AGAIN AND AGAIN, AND
THE WARDENS/SECRETARY OF CORRECTION HAS YET TO CORRECT
THIS PROBLEM. BY LAW IM REQUIRED TO EXHAUST MY
ADMINISTRATIVE REMEDIES BEFORE FILING A CIVIL SUIT,
AND IM BEING PREVENTED FROM DOING THIS. IM TIRED OF IT!
SICK OF THE GAMES! BEING DENIED A FLEX PEN FOR DAYS, WEEKS, AT
A TIME, THEN DENIED FORM 9's OR GRIEVANCES OR GRIEVANCE
APPEAL FORMS FOR DAYS/WEEKS AT A TIME, AND I BELIEVE
THAT IS INTENTIONAL AND DONE TO HARASS ME, AND PROLONG
MY EFFORTS TO DO MY LEGAL WORK. HC.F. HAS A PRINT SHOP
SO I DON'T SEE HOW ANY CELLHOUSE CAN BE OUT OF FORMS FOR
WEEKS AT A TIME, BUT IT HAPPENS ALL THE TIME, GUARDS
TELLING ME,"ONLY FIVE DAY A WEEK GUARDS HAVE SEG FLEX

NEXT PAGE → . . → →

(NOTE: ALSO, ATTACHED IS FORM-9 RECEIPT DATED 2-5-2019)

RE: FORM-9 DATED 9-12-2019 / PAGE-3-OF-8 ) HCF/(56)

(EXHIBIT-E-7)

TO HAND OUT IS ANOTHER GAME. AND WHEN I MAKE A COMPLAINT TO THE WARDEN ABOUT THIS THE WARDEN IGNORES THE FACTS AND SUPPORTING EVIDENCE TO MY ALLEGATIONS AND SAYS YOUR FILING GRIEVANCES SO THERES NO PROBLEM, AND THATS ONLY BECAUSE THE WARDEN SUPPORTS THE GAMES H.C.F. STAFF PLAY. I SHOULD NOT HAVE TO FIGHT AND PUT SO MUCH EFFORT INTO GETTING A PEN, FORM-9, GRIEVANCE, APPEAL FORM, WHEN BY KDOC'S OWN REGULATIONS/POLICIES IM TO BE GIVEN FORMS "UPON REQUEST", BUT STAFF SAY WE ONLY PASS OUT FORMS ON THE 3-11 SHIFT, AND THE UNIT TEAM AND WARDEN TAKE THEM UP WHEN I FILE A COMPLAINT ABOUT THAT. I SHOULDNT HAVE TO ASK OTHER INMATES TO GET FORM-9'S AND GRIEVANCES AND GIVE THEM TO ME JUST TO FILE A COMPLAINT. I SHOULDNT HAVE TO ASK OTHER INMATES FOR A FLEX PEN. IVE GONE HUNGRY TO PAY SOMEONE FOR THEIR FLEX PEN, IVE HAD TO USE COLOR PENCILS ISSUED BY MENTAL HEALTH TO WRITE A COMPLAINT AND TO WRITE MY FAMILY. I SHOULDNT HAVE TO GO THROUGH ANY OF THESE HEADACHES. THEN I HAVE GUARDS AND MENTAL HEALTH LIKE SCHROEDER, AND C/O JONES AND MENTAL HEALTH POOL TELLING NUMEROUS PRISONERS IM A RAT BECAUSE I FILE FORM-9'S AND GRIEVANCES INSTEAD OF BATTERING STAFF, OR JUST ACCEPTING STAFFS ABUSE. I SHOULDNT HAVE TO WRITE THREE TIMES AS MUCH OF WHAT'S REQUIRED. THATS HARASSMENT AND RETALIATION AGAINST ME. THE COMPLAINT I MADE IN THE ORIGINAL FORM-9 TO THE ATTACHED FORM-9

NEXT PAGE → →

(NOTE: ALSO ATTACHED IS FORM-9 RECEIPT DATED-2-5-2019) HCF (56)
RE: FORM-9 DATED-9-12-2019 / PAGE-4-OF-8 )

(EXHIBIT-E-8)

RECEIPT ALSO WAS A REQUEST THAT THE CAMERA FOOTAGE OF THE 9-13-2018 ATTACK AGAINST ME BE SAVED FOR EVIDENCE IN THE LAW SUIT I WILL FILE. IVE MADE THAT REQUEST TO SEVERAL PEOPLE INCLUDING THE WARDEN A SECOND TIME, H.C.F.'S LEGAL COUNSEL, UNIT TEAM PETTIJOHN, AND NOONE HAS SAID ANYTHING HELPFUL. H.C.F. STAFF ARE NOT SAYING THEY HAVE SAVED IT OR WHO THE REQUEST IS SUPPOST TO BE MADE TO OR IF IT BEEN DESTROYED, AND I WANT TO KNOW THAT SO I CAN ADDRESS THAT. MY COMPLAINT WAS ALSO AGAINST UNIT TEAM PETTIJOHN BECAUSE HE JUST STOOD BY AND WATCHED CSI SWENSON ASSAULT, BATTER, ATTACK, AND HARM ME AND DID NOTHING TO STOP IT, AND UNIT TEAM PETTIJOHN KNEW CSI SWENSON WAS BREAKING THE LAW BY HIS UNNECESSARY EXCESSIVE USE OF FORCE AGAINST ME, HE ADMITTED THE FACT IN HIS STATEMENT IN THE INJURY CLAIM I FILED, AND HE LIED TO ME SAYING, "HE WASNT THE ONE INVESTIGATING THE CLAIM, AND IF HE WAS HE'D APPROVE IT FOR SURE!". I ALSO HAD TOLD U.T. PETTIJOHN THAT I WAS WRITING HIM UP FOR HIS FAILURE TO INTERVENE, AND UPON INFORMATION AND BELIEF THATS WHY UNIT TEAM PETTIJOHN RECOMMENDED THE INJURY CLAIM BE DENIED, AND ALSO WHY HE LIED IN HIS RESPONSE WHEN CLAIMING I WASNT BLEEDING. THIS IS NOT A COMPLAINT CONCERNING THE INJURY CLAIM SO WE CAN BE CLEAR ON THAT. MY COMPLAINT WAS THAT UNIT TEAM PETTIJOHN HAD A DUTY TO CORRECT A LOWER RANKING STAFF MEMBER AND DID NOT. MY

NEXT PAGE ⟶ ⟶

(NOTE: ALSO ATTACHED IS FORM-9 RECEIPT DATED 2-5-2019)
RE: FORM-9 DATED-9-12-2019 / PAGE-5-OF-8) HCF/(56)
(EXHIBIT-E-9)

COMPLAINT WAS THAT U.T. PETTIJOHN WAS ONLY A FEW CELLS AWAY AND HEARD ME CRYING OUT IN PAIN; HEARD ME SAYING, "PETTIJOHN PLEASE COME HERE, ITS AN EMERGENCY!" U.T. PETTIJOHN ALSO ADMITTED TO SEEING CX SWENSON REACH INTO THE FOOD PASS OPENING TRYING TO PULL MY ARM OUT AND THEN GRAB MY HEAD. UNIT TEAM PETTIJOHN HAS BEEN WORKING FOR K.D.O.C FOR YEARS, AND ITS THE NORMAL PATTERN OF BEHAVIOR FOR STAFF TO IGNORE A PRISONER BEING MISTREATED, ABUSED, BATTERED, ASSAULTED, ECT. BY OTHER STAFF MEMBERS AND THIS IS ANOTHER EXAMPLE OF THAT. H.C.F. STAFF/HAS A PATTERN OF BEHAVIOR OF DESTROYING MY PRISONERS FORM-9'S/GRIEVANCES TO ASSIST OTHER STAFF GET IMPUNITY AND ARE NOT HELD ACCOUNTABLE FOR THEIR ACTIONS. AND THESE REASON ARE WHY I'M STILL TRYING TO GET MY ADMINISTRATIVE REMEDIES EXHAUSTED FOR AN ATTACK AGAINST ME FROM 2018. I ATTEMPTED TO EXHAUST MY RETALIATION COMPLAINT AGAINST UNIT TEAM PETTIJOHN, BUT U.T. GRAFF AND THE WARDEN SCHNURR REFUSED TO PROCESS THAT COMPLAINT, AND TRIED TO JUSTIFY IT BY SAYING ITS NOT A GRIEVABLE MATTER SINCE IT CONCERNS A INJURY CLAIM, BUT IT'S NOT A INJURY CLAIM, AND I STATE THAT CLEAR AS DAY IN THAT GRIEVANCE, BUT DUE TO THE STAFF COVERING FOR STAFF, AND GIVING STAFF IMPUNITY, AND THE RUBBER STAMP RESPONSE SYSTEM MY COMPLAINT WAS GRIDLOCKED AND NOT PROCESSED, BUT THE FACT THAT UNIT TEAM PETTIJOHN

NEXT PAGE ⟶ ⟶

(NOTE: ALSO ATTACHED IS FORM-9 RECEIPT DATED 2-5-2019)

RE: FORM 9 DATED 9-12-2019 / PAGE-6-OF-8 ) HCF (56)

(EXHIBIT-E-10)

STOOD BY AND WATCHED ME GET ASSAULTED, BATTERED, HURT, CUSSED AT, FOR SEVERAL MINUTES, IS RETALIATION BY UNIT TEAM PETTIJOHN DUE TO ME WRITING HIM UP IN FORM 9'S AND GRIEVANCES. IF I WOULD OF GRABBED CSI SWENSON ARM AND PULLED IT IN MY CELL AND TRIED TO BREAK IT UNIT TEAM PETTIJOHN WOULD OF RAN TO MY CELL TO AID AND ASSIST CSI SWENSON UPON INFORMATION AND BELIEF. I ALSO TOLD UNIT TEAM PETTIJOHN BY WORD OF MOUTH THAT IM GOING TO FILE A LAW SUIT AND THAT HE NEEDS TO ENSURE THE VIDEO FOOTAGE FROM 9-13-2018 IN A-2 AT CELL #227 IS SAVED AS EVIDENCE AND UNIT TEAM PETTIJOHN [illegible] CHECK INTO IT, BUT THE FOOTAGE WOULD BE SAVED BECAUSE I FILED A INJURY CLAIM AND IT WILL BE INVESTIGATED AND SAVED. LET THE RECORD REFLECT SUCH FACTS AS HCF COUNSEL AND THE WARDEN ARE ACTING LIKE THEY DONT KNOW IF IT WAS SAVED OR NOT. MY COMPLAINT IN THE FORM-9 WAS ALSO A COMPLAINT ABOUT THE WARDEN NOT HOLDING STAFF ACCOUNTABLE FOR EXCESSIVE FORCE AGAINST PRISONERS AS THE SAME STAFF CAUSE NUMEROUS PROBLEMS. UPON INFORMATION AND BELIEF CSI SWENSON MOVOLECNA COUPLE INMATES IN GENERAL POPULATION AND THEY ATTACKED HIM. CSI SWENSON IS A KNOWN TROUBLE MAKER WITH A ANGER PROBLEM AND VERY DISRESPECTFUL TO I/M'S AND HIGH RANKING HCF OFFICIALS ALLOW ACCEPT AND SUPPORT SUCH BEHAVIORS OVER AND OVER RATHER THAN

NEXT PAGE → →

(NOTE: ALSO ATTACHMENTS FORM/RECEIPT DATED 2-5-2019)

HCF (56)

RE: FORM DATED 9-12-2019 / PAGE-7-OF-8 (EXHIBIT-E-11)

PUTTING SWENSON/THEM IN POST AWAY FROM I/M'S SO THEY CANT ABUSE THEIR AUTHORITY AND ABUSE PRISONERS, BUT ITS A KDOC FACILITY WIDE PROBLEM. CSI SWENSON SHOULD HAVE BEEN FIRED, AND THE FACTS PUT IN HIS WORK FILE (IVE HAD A EMPTY FLEX PEN IN MY WINDOW FOR ABOUT 4 DAYS AND STAFF DENYING ME A NEW ONE CONTINUES TO BE A PROBLEM. LET THE RECORD REFLECT SUCH FACTS.) U.T. PETTIJOHN LIED ABOUT MY INJURIES AND I PROVED IT AND HE SHOULD BE HELD ACCOUNTABLE FOR HIS RETALIATORY LIES AGAINST ME AND FOR IGNORING HIS DUTY TO PROTECT ME FROM CSI SWENSON. THE WARDEN NOT FIRING CSI SWENSON LONG AGO, KNOWING HE HAS ANGER ISSUES AND A HABIT OF MISTREATING AND/OR ABUSING PRISONERS IS WHY I WAS HARMED AND THATS THE WARDENS FAULT FOR HIS POLICY TO GIVE STAFF IMPUNITY. CSI SWENSON SHOULD HAVE BEEN FIRED, U.T. PETTIJOHN DEMOTED/FIRED, AND WHO DESTROYED MY FORMS SHOULD BE FIRED! (THE ONE DATED 2-5-2019)

ATTACHMENT NEXT PAGE → →

FORM-9 DATED 2-5-2019 / PAGE - 8 - OF - 8 ) HCF/(56)

( RE: FORM-9 RECEIPT DATED 2-5-2019 TO U.T. DAWES/WARDEN )

(EXHIBIT-E-12)

( RE: SWENSON/NETTLETON, EXCESSIVE USE OF FORCE/BATTERY, ASSAULT/FAILURE TO INTERVENE, RETALIATION, COMMIT WEIGHT INJURY CLAIM, WANT TO MAKE IT AN OFFICIAL REQUEST TO SAVE CAMERA FOOTAGE OF INCIDENT ON 9-13-2018, A-2/227 HCF FOR LAW SUIT DISCOVERY EVIDENCE, STAFF EMPLOYEES WARDEN'S FAULT? )

INMATE REQUEST TO STAFF MEMBER

To: U.T. DAWS / WARDEN

(Name and Title of Officer or Department)

Date: 2-5-2019

[signature]

Unit Team, Detail, or Cellhouse Officer's Signature

↑ C/O BAKER / A-2/HCF

To be retained by Inmate

(EXHIBIT-E-13) HCF/(56)

# MEMO

RECEIVED

OCT 14 2019

HCF Office Of The Warden

Department of Corrections
*Hutchinson Correctional Facility*

Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
(620) 662-2321
Fax: (620) 728-3473
Email: Dan.Schnurr@doc.ks.gov
www.doc.ks.gov

**DATE:** 10/04/2019
**TO:** Brown, David #57800 227
**FROM:** B. Graff, UTS
**RE:** Grievance (56) DATED 9-25-2019)

---

You have once again submitted a grievance which you are attempting to address outside the time frame allowed for filing a grievance. Per K.A.R. 44-15-101b: "Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance." You have already once attempted to address this complaint outside the allowed time frame. Simply adding a recent form-9 about the event does not change the fact that the event occurred well outside the time limit. This grievance is being returned to you due to being outside the time frame for filing a grievance and will not receive a response. If you are unsure how the grievance process works you can find it in KAR 44-15-101.

B. Graff, UTS

THE GRIEVANCE SYSTEM IS UNAVAILABLE TO ME DUE TO U.T. GRAFF, PETTIJOHN, U.T.M. BELL, NICKELS, EAI, PCM MORA, WARDEN SCHNURR AND GUMDS, CORIZON, C.C.F. I AM NOT OUTSIDE THE TIME FRAME FOR FILING MY COMPLAINT AS THE ISSUES HAVE NOT BEEN CORRECTED. MY FORM-9 HAS NOT BEEN ANSWERED OR RETURNED WHICH CONTINUES TO BE A ON GOING PROBLEM. I NOTICED / NOTE DISCOVERED THE FORM 9 DATED 2-5-2019 WASNT RETURNED OR ANSWERED AND FILED MY INFORMAL RESOLUTION/FORM 9 WITHIN (15) DAYS OF THAT DISCOVERY. U.T. GRAFF U.T.M. BELL CONTINUE TO REFUSE TO PROCESS MY GRIEVANCES BASED ON INCORRECT INFORMATION AND/OR LIES. DONE INTENTIONALLY TO GIVE GUILTY STAFF IMMUNITY AND TO CAUSE MY HARDSHIPS, PAIN, SUFFERING, CIVIL RIGHTS VIOLATIONS TO CONTINUE UNCHECKED AND TO OBSTRUCT JUSTICE AND DESTROY EVIDENCE. RESUBMITTING 10-6-2019 FOR WARDENS REPLY / U.T. GRAFF RETURNED TO ME, REFUSES TO SEND TO WARDENS OFFICE



HCF, (56)

AD ASTRA PER ASPERA
Kansas
(EXHIBIT E-14)

P.O. Box 1568
Hutchinson, KS 67504-1568

Department of Corrections
Hutchinson Correctional Facility

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Acting Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 10/28/2019

TO: Brown, David #57800
A2-227

SUBJECT: Grievance #BA00018390(56)

FROM: Dan Schnurr, Warden
HUTCHINSON CORRECTIONAL FACILITY

LTE. NOTHING TO DO WITH SEXUAL ASSAULT OR SEXUAL HARASSMENT

FINDING OF FACTS: In your grievance, you claim issues surrounding a PREA complaint you filed.

CONCLUSIONS MADE: The items you bring up in your grievance have previously been addressed through the grievance procedure or you are attempting to address outside the time frame allowed for filing a grievance per K.A.R. 44-15-101(b).

UTS Graff and UTM Bell are following the guidelines when addressing grievances that you have filed. I suggest that you review K.A.R. Article 15 – Grievance Procedure for Inmates and Parolees.

ACTION TAKEN: As above described. This is my final answer to you on this matter.

D. Schnurr

Dan Schnurr
HCF, Warden

DS/JB/TH
cc: HCF File

RETURNED TO ME BY U.T. GRAFF IN A2/227/HCF ON 11-14-2019

U.T. GRAFF AND WARDEN SCHNURR REFUSE TO ANSWER MY QUESTIONS, REFUSE TO COMMENT ON ADD MY ISSUES/COMPLAINTS, REFUSE TO PROPERLY PROCESS, REFUSING TO CORRECT STAFF FOR DESTROYING MY FORM-9S/LEGAL DOCUMENTS.

**APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS** HCF (56)

Inmate Name: DAVID BROWN Facility: HUTCHINSON CORR. FAC.

Inmate Number: 57800 Grievance Serial No.: BA00018390 (56)

(EXHIBIT-E-15)

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO: Kansas Department of Corrections
714 SW Jackson
Suite 300
Topeka, KS 66603

Date Mailed: 11-18-2019 (56)

(PAGE-1-OF-5)

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) I HAVE STATED AND RESTATE THE ISSUES, PROBLEMS, AND COMPLAINTS IN THE ATTACHED GRIEVANCE AND THOSE ATTACHED DOCUMENTS, HEREIN AS IF THEY WERE STATED FULLY HEREIN THIS GRIEVANCE APPEAL. THE PROBLEMS STAND TO DATE. HUTCHINSON CORR. FAC. STAFF ARE STILL DESTROYING MY FORMS AND/OR LEGAL PAPERS, WHICH IS WHY MY David Brown

Signature of Inmate NEXT PAGE →

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned with 20 days)

If applicable – Confidential File No. ________

Date Received in Office of Secretary of Corrections: ________________

Date of Final Answer: ________________ Date Sent to Inmate: ________________

Finding of Fact:

RECEIVED
NOV 21 2019
DOC Facility Management Area

Conclusions Made:

Action Taken:

________________
Signature of Secretary of Corrections

**For D.O.C. Staff Use Only**

Type of Response (Item 6b: Code 01, 02, 08 or 09) ____

DC 090, Effective May 21, 2014

(RE: GRIEVANCE APPEAL (56) / PAGE-2-OF-5 ) HCF/(56)

(EXHIBIT-E-16)

THE FORM-9 I SUBMITTED ON 2-5-2019 WAS NOT PROCESS ANSWERED/RETURNED, AND MY RIGHT TO EXHAUST MY ADMINISTRATIVE REMEDIES WAS DENIED/VIOLATED. IN SUPPORT SEE THE ATTACHED FORM-9 RECEIPT, PAGE 8, DATED 2-5-2019. IT WAS TURNED IN TO C/O BAKER J. IN A-2 CELLHOUSE, AND THE RECEIPT SIGNED BY C/O J. BAKER AND GIVEN TO ME. THEREFORE THERE'S NO QUESTION THAT MY FORM-9 WAS TURNED IN TO A K.D.O.C. H.C.F. STAFF/GUARD AND THIS HAS HAPPENED NUMEROUS TIMES! WHENEVER I MAKE A SERIOUS, TRUTHFUL COMPLAINT THAT VIOLATES MY LEGAL/CIVIL RIGHTS, WHICH I DETAIL THE EVENT, TIME, PLACE, WHAT, WHO ETC BECAUSE GUARDS, UNIT TEAMS, WARDENS, DON'T WANT A DOCUMENT TO EXIST AND DON'T WANT SUCH DOCUMENTS TO BE RESPONDED TO BY STAFF AND I EXPLAINED SUCH IN THE ATTACHED FORM-9 DATED 9-12-2019. ITS NOT MISPLACED OR A MISTAKE. ITS DONE INTENTIONALLY! IT CAUSES ME TO BE OVERWHELMED WITH MORE PAPER WORK. IT CAUSES FACTS/DETAILS TO BE LOST, ITS HARASSMENT, STRESSING, RETALIATION, DONE TO PROTECT GUILTY STAFF MEMBERS, DONE TO PROLONG MY SUFFERING/HARDSHIPS, AS YOU CAN SEE, MY COMPLAINTS ARE ABOUT CSI SWENSON ATTACKING ME, AND U.T. PETTIJOHNS FAILURE TO INTERVENE AND U.T. PETTIJOHN'S RETALIATION AGAINST ME, A REQUEST TO THE WARDEN TO SAVE THE CAMERA FOOTAGE OF THE ATTACK, BATTERY AND ASSAULT AGAINST ME BY CSI SWENSON, IN THE FORM-9 SUBMITTED 2-5-2019, BUT NONE OF THAT WAS RESPONDED TO BY THE UNIT TEAM OR WARDEN AS MY FORM-9 WAS DESTROYED OR AS STAFF LIKE TO CALL IT MISPLACED. THEN, I MADE A COMPLAINT ABOUT STAFF →

HCF/(56)

(RE. GRIEVANCE APPEAL (56) / PAGE-3-OF-5)

(EXHIBIT-E-17)

DESTROYING MY FORM-9, AND THAT IS WHAT I WROTE THE GRIEVANCE ON AS WELL THE ISSUES IN THE FORM-9 BUT THE UNIT TEAM AND WARDEN REFUSE TO COMMENT ABOUT MY FORM-9 BEING DESTROYED, NOT TO MENTION MY RIGHTS BEING DENIED. THE UNIT TEAM THEN TELLS ME I CANT FILE A GRIEVANCE BECAUSE ITS PAST THE 15 DAY TIME LIMIT, AND THAT NOT TRUE. I WAS TOLD THE INCIDENT WAS UNDER INVESTIGATION, AND THERES NO TIME LIMIT A INVESTIGATION MUST BE COMPLETED IN AND ILL GET MY FORM-9 WHEN ITS DONE. AND AFTER 8 MONTHS I REALIZED IM BEING LIED TO AND THAT ITS YET ANOTHER CASE OF STATE DESTROYING MY FORM-9S TO PROTECT GUILTY STAFF AND I HAD ENOUGH OF THE STONEWALLING GAMES, AND WHEN I CAME TO THAT CONCLUSION(S) AND MADE THOSE DISCOVERYS I FILLED MY FORM-9/GRIEVANCE. YET THE UNIT TEAM CLAIMS IM IN VIOLATION OF THE TIME LIMITS, AND NOT STAFF FOR DESTROYING MY FORM-9/LEGAL PAPERS, AND THE U.T. REFUSES TO PROCESS MY COMPLAINTS AND/OR GRIEVANCE. SO I DONT AGREE WITH THE U.T.'S REASON TO DENY TO PROCESS MY GRIEVANCE AND MOVE TO THE NEXT STAGE, WHICH IS THE WARDEN, BUT THE U.T. RETURNS THE GRIEVANCE BACK TO ME REFUSING TO ALLOW ME TO MOVE TO THE NEXT STAGE OF THE GRIEVANCE PROCESS, SO I USE THE U.S. MAIL SYSTEM TO SEND MY GRIEVANCE TO THE WARDEN, AND THE WARDEN KEEPS THE GRIEVANCE FOR WEEKS, AND THEN SAYS ITS ABOUT A PREA COMPLAINT, WHICH IT HAS NOTHING TO DO WITH. THE GRIEVANCE SYSTEM IS A JOKE, BIASED, COUNTERPRODUCTIVE, PROLONGS PROBLEMS, COMPOUNDS PROBLEMS, RETALIATORY, INEFFECTIVE, A RUBBER STAMPING SYSTEM, BUT MUST BE DONE PER THE LAW. AS YOU CAN SEE THE WARDEN HAS REFUSED TO →

(EXHIBIT-E-18)

(RE: GRIEVANCE APPEAL (56) / PAGE-4-OF-5) HCF/(56)

RESPOND TO ANY ISSUES/COMPLAINTS IN THE GRIEVANCE OR FORM 9'S AND ITS INTENTIONAL. THIS HAPPENS A LOT AND THE SECRETARY OF CORRECTIONS NEEDS TO HOLD UNIT TEAMS/WARDENS ACCOUNTABLE FOR SUPPORTING THIS PRACTICE. WHERE IS MY FORM 9? IT NEEDS TO BE RESPONDED TO IN FULL AND RETURNED TO ME. IT IS A LEGAL DOCUMENT DETAILING AN ILLEGAL ATTACK AGAINST ME BY CSI SWENSON ON 9-13-2018 WITH TIMES, WITNESSES, PLACE, DETAILS TO A CRIME COMMITTED AGAINST ME AND I WILL BE ASKING FOR PAYMENT FROM THE COURTS FOR KDOC/HCF STAFF KNOWINGLY/INTENTIONALLY DESTROYING EVIDENCE TO A CRIME AND TO A LAWSUIT WHICH I MADE CLEAR TO BE FILING SINCE IT HAPPENED. THE SECRETARY NEEDS TO HOLD GUARDS/UNIT TEAMS ACCOUNTABLE FOR THIS CONTINUED PRACTICE OF DESTROYING MY FORM 9'S/GRIEVANCES TO PROTECT AND COVER FOR GUILTY STAFF. THERE IS NO REASON THAT MY FORM 9S CONTINUE TO BE DESTROYED AND THE ISSUES IN THEM IGNORED OTHER THAN UNIT TEAMS AND WARDENS SUPPORTING THE PRACTICE AND REFUSE TO TAKE CORRECTIVE ACTION. I'VE PROVEN THE DOCUMENTS WERE SUBMITTED AND NOT RETURNED AND UNIT TEAMS TELLING ME TO GIVE MY FORMS TO ONE PERSON VIOLATES THE GRIEVANCE PROCEDURE, AND ALLOWS GUILTY STAFFS ILLEGAL ACTS TO GO UNCHECKED AND UNPUNISHED. THE SECRETARY NEEDS TO TAKE CORRECTIVE ACTION AND HOLD STAFF ACCOUNTABLE! ITS RETALIATION AGAINST ME, ITS HARASSMENT AND ITS PUNISHING ME FOR FILING FORM 9S ATTEMPTING TO INVOKE THE GRIEVANCE PROCESS. WHEN STAFF DESTROY MY FORM 9'S STAFF SHOULD BE PLACED IN A TOWER POSITION WHERE THEY HAVE NO CONTROL OR CONTACT WITH INMATES PAPERWORK, LEGAL PAPERS, PROPERTY... IF THE CAMERA FOOTAGE OF THE ATTACK AGAINST ME BY CSI SWENSON IS NOT PRESERVED →

(EXHIBIT-E-19)

ILL BE REQUESTING PAYMENT THROUGH THE COURT AS H.C.F. STAFF WILL HAVE INTENTIONALLY DESTROYED EVIDENCE OF A CRIME AGAINST ME, WHICH I INFORMED UNIT TEAM AND THE WARDEN ID BE FILING A §1983 CIVIL SUIT ON, AND IT WOULD HAVE BEEN DONE TO PROTECT STAFF. THE SECRETARY NEEDS TO CAUSE THE GRIEVANCE SYSTEM TO BE FOLLOWED AND TO HOLD STAFF ACCOUNTABLE FOR VIOLATING IT, AND FOR STAFF RETALIATING AGAINST ME/INMATES FOR INVOKING THE GRIEVANCE PROCEDURE/SYSTEM.

(RE: ATTACK AGAINST ME ON 9-13-2018)

HCF/(56)

# Grievance-Response on Appeal

**FACILITY:** **Hutchinson Correctional Facility** (EXHIBIT-E-20)

**INMATE:** **0057800 BROWN, DAVID**

**GRIEVANCE NO.:** **BA00018390**

**DATE:** **November 22, 2019**

**FINDINGS OF FACT**

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

**CONCLUSIONS MADE**

The response rendered to the inmate by staff at the facility is appropriate.

**ACTION TAKEN**

None further.

**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc: Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on ____________.

RE: U.T.M. BELL, VIDEO FOOTAGE, SPOLIATION OF EVIDENCE

HCF (62)

**KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM**

(EXHIBIT-F-1)

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number 457800

Facility H.C.F. Housing Unit A-2/227 Work Detail N/A

(PAGE-1-OF-2)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.: how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). (ATTACHED IS A FORM 9 DATED 9-28-2019) my complaint is that UTM Bell is retaliating against me for filing a Form 9 by harassing me, playing games, blocking my Form 9 as my Form 9 is clearly to the Warden Schnurr and concerns a matter which me and the Warden have discussed in our writings and I asked the Warden a question concerning a legal matter and U.T.M Bell has prevented me from asking the Warden a question, which U.T.M Bell has no knowledge of, and instead of calling the Warden, or sending my Form 9 to the Warden U.T.M. Bell says he doesn't know and sends my Form 9 back →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 10-14-2019 (62)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

See attached.

B. [signature] UTS — Unit Team Signature 10/24/19 Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

X I am (not) satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). 10/25/19

David Brown — Inmate Signature 10-24-2019 Date

Returned to me that night c/o Renner A-2/227/ MAF

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received ____ Date of Final Answer ____ Date Returned to Inmate ____

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number

Type of Complaint (Item 4: Code 01-75)

Cause of Complaint (Item 5: Code 01-30)

Type of Response (Item 6a: Code 01,02,08 or 09)

HCF/ (62)

(GRIEVANCE (62) / PAGE-2-OF-2 (EXHIBIT-F-2)

TO ME SAYING HE DOESN'T KNOW. WHICH IS WHY I ADDRESSED THE FORM-9 TO "WARDEN DAN SCHNURR OF HCF" THIS IS JUST MORE HARASSMENT, GAMES AND/OR RETALIATION HCF STAFF SUBJECT ME TO FOR FILING FORM-9'S, GRIEVANCES AND LAWSUITS. THE WARDEN NEEDS TO MAKE CLEAR TO EVERYONE THAT A PRISONER IS ALLOWED TO SEND A FORM-9 TO THE WARDEN AND THAT IF THE U.T.M. WANTS TO STOP ME FROM DOING THAT THEN HE NEEDS TO OBTAIN THE ANSWERS TO [illegible] MY QUESTIONS BEFORE SENDING A FORM-9 TO THE WARDEN BACK TO ME WITH A DUMB RESPONSE OF I DON'T KNOW. AND TELL STAFF TO STOP HARASSING ME AND PLAYING GAMES AND RETALIATING AGAINST ME.

I STILL NEED THE ANSWER TO MY QUESTION.

[illegible] IF CAMERA FOOTAGE [illegible] I ASKED YOU OF A-2 CELLHOUSE/227/ACF ATTACK BY CSI SWENSON ON 9-13-2018 (62)

OFFENDER REQUEST TO STAFF MEMBER

To: WARDEN DAN SCHNURR OF HCF Date: 9/30/19
(Name and Title of Officer or Department)

B. A[illegible] UTB
Unit Team, Detail, or Cellhouse Officer's Signature

(EXHIBIT-F-3)
To be retained by Offender

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

(A2-227)

HCF/ (62)
BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

#57800
**Number**

## OFFENDER REQUEST TO STAFF MEMBER

**To:** WARDEN DAN SCHNURR OF H.C.F. **Date:** 9-28-2019 (62)
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

I JUST NEED TO KNOW IF YOU SAVED THE CAMERA FOOTAGE FROM 9-13-2018 A-2 CELLHOUSE CELL #227 AND THE TWO WALK RUN IN A-2 CELLHOUSE OF THE ATTACK ON ME DAVID BROWN BY CSI TODD SWENSON, WHICH THERE WAS AN INVESTIGATION OF DUE TO THE INJURY CLAIM I FILED. YOU DIDNT TELL ME IF THE CAMERA FOOTAGE WAS SAVED OR NOT LAST TIME I ASKED.

Work Assignment: N/A Living Unit Assignment: A-2/227/ H.C.F.

Comment: Detail or C.H. Officer:

Disposition:

To: Brown #57800 Date: 10/11/2019
(Name & Number)

Disposition: I'm not aware if the camera footage was saved in September of 2018.

[signature]
Employee's Signature

**To be returned to offender.**

**P-0009**



:KF/(62)

(EXHIBIT-F4)

P O Box 1568
Hutchinson KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Acting Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: July 15, 2019

TO: Brown, David #57800
A2-227

FROM: Dan Schnurr, Warden

SUBJECT: Form 9 Response

In your form 9 dated 7/9/19 you raise two points.

You want to be sure I know you intend to sue Mr. Swenson, Mr. Pettijohn and someone involved with the clinic for damages you received on September 13, 2018 in an incident in A-2 cellhouse.

You also request the preservation of security video that would have captured the event.

In response, I note that you are threatening a lawsuit.

Regarding security video from ten months ago, it was either preserved in the course of an investigation or it wasn't preserved at all. So much video is created every day that if it isn't specifically saved it is effectively recorded over with newer video, which is then also recorded over as time passes. There is nothing to be done at this point until you file your lawsuit and I check to see if the video was preserved last September. If you made a timely request to preserve the video, I would like to see that request.

I trust this has responded to your questions.

D. Schnurr

Dan Schnurr, Warden
Hutchinson Correctional Facility

DS:eks



1-CF/(62)

Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7265
Fax: (620) 728-3476
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Acting Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

(EXHIBIT-FS)

Date: 10/24/2019

To: Brown, David #57800 (A2-227)

Subject: Grievance

From: B. Graff UTS
Hutchinson Correctional Facility

**FINDING OF FACTS:** You have submitted a grievance concerning UTM Bell responding to a form-9 you addressed to the Warden, and the response that was given by UTM Bell.

**CONCLUSIONS MADE:** I have reviewed your grievance and the attached form-9. I agree with UTM Bell both responding to this correspondence, and his response when doing so. Per the grievance procedure outlined in K.A.R. 44-15-102 offenders are to seek advice, help or information from their unit team or a member of the team first. UTM Bell was within his rights to address this form-9 and did not retaliate or impede your rights in doing so as you suggest. As for the content of the response, I also agree that it is unknown if any video was saved from September, 2018. As has previously been addressed by the Warden, the video was either preserved in the course of an investigation or was not preserved at all. As he stated at that time, there is nothing to be done until you have filed your lawsuit. This has not changed since the last correspondence on this matter.

**ACTION TAKEN:** None warranted. If you are unsatisfied by the Unit Team's response, you may forward this grievance to the Warden's office within three calendar days of your receipt of it.



(EXHIBIT-G-1)

# KANSAS DEPARTMENT OF CORRECTIONS

| Kansas Department of Corrections | INTERNAL MANAGEMENT POLICY AND PROCEDURE | SECTION NUMBER 02-118D | PAGE NUMBER 1 of 17 |
|---|---|---|---|
| | | SUBJECT: HUMAN RESOURCES: Employee and Volunteer Rules of Conduct and Undue Familiarity | |
| Approved By: Secretary of Corrections | | Original Date Issued: | 07-01-15 |
| | | Replaces Version Issued: | N/A |
| | | CURRENT VERSION EFFECTIVE: | 07-01-15 |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Every contact with offenders should be viewed as an opportunity to set a positive example and to emphasize positive behavior and individual accountability. All employees of the Kansas Department of Corrections shall adhere to the Department's Code of Ethics, as well as all other applicable statutes, regulations, performance, conduct, and/or physical and mental fitness expectations as established herein. (ACI 3-4067; 3-APPFS-3C-02) The Department is committed to providing a productive and efficient work environment free of behaviors that are violent, threatening, disruptive, harassing, dishonest, unethical, or that violate any of the provisions of this document. (3-APPFS-3C-02) Violation of any statute, regulation, rule of conduct, or condition of employment may subject the employee to criminal charges or disciplinary action, up to and including dismissal. (ACO 2-1C-04)

The Kansas Department of Corrections absolutely forbids acts of undue familiarity with offenders. The Department shall fully investigate, and take all necessary corrective and disciplinary action, per provisions in IMPP 02-120D, concerning any person who engages in undue familiarity.

## DEFINITIONS

Appointing Authority: The person designated pursuant to IMPP 02-109D for each respective division or facility of the department.

Contraband: Any item that has not been approved for introduction into a correctional facility by law, regulation, policy, or otherwise specifically authorized by the warden, per K.A.R. 44-2-103 or the superintendent, per K.A.R. 123-2-111.

Employee: Any person employed full time, part time, or on a temporary appointment to the Kansas Department of Corrections. For purposes of this IMPP, this definition shall include any person employed by a public or private entity under contract to provide services to the Kansas Department of Corrections; including supervision services for persons on parole, conditional release, and post-release supervision.

Facility: Includes KDOC adult and juvenile correctional facilities, parole offices, Central Office, and Correctional Industries offices or work sites.

Gross Negligence: Conduct indicating a reckless disregard and complete indifference for the possible consequences of the person's action.

Horseplay: Any rough, boisterous, or rowdy play; or light hearted recreational activity pursued for the purpose of diversion or amusement.

(EXHIBIT G-2)

Offender: For the purposes of this IMPP, this term refers to any individual in the custody of the Secretary of Corrections, whether incarcerated or on post-incarceration supervision; any individual who during the prior two (2) years has been in the custody of the Secretary of Corrections, whether incarcerated or on post-incarceration supervision; or any offender from another jurisdiction who is subject to a sanction for violation of criminal law, including those on supervised or non-supervised release status, whom the employee knows or should reasonably know to be in that status.

Restricted Access Areas: In a correctional facility, this would include areas that require passage through a security check point, within the secure perimeter and are in locked areas requiring a key, keycard, passcodes, or similar device to allow entry.

Smoking Paraphernalia: Items that would facilitate in the use of tobacco products to include, but not limited to lighters, matches, altered batteries, cigarette papers, rolling machine, and electronic cigarette related devices.

Tobacco Products: Includes cigarettes; pipes; pipe tobacco; loose-leaf tobacco; tobacco substitutes; chewing tobacco; smokeless tobacco; cigars; matches; cigarette lighters; smoking paraphernalia; electronic cigarettes (also known as e-cigarettes, personal vaporizers or PVs); and all items developed or processed for the primary purpose of facilitating the use or possession of tobacco or tobacco-based products. Tobacco products do not include pharmacological aids for smoking cessation approved by the Food and Drug Administration (FDA).

Tobacco Substitutes: Any substance ingested by smoking or herbal/leaf-based substitutes for chewing tobacco.

Undue Familiarity: Conversation, contact, personal or business dealing between an employee and offender or offender's family which is unnecessary, not a part of the employee's duties, and related to a personal relationship or purpose rather than a legitimate correctional purpose. Undue familiarity includes horseplay, betting, trading, dealing, socializing, family contact unrelated to the employee's duties, sharing or giving food, delivering or intending to deliver contraband, personal conversation, exchanging correspondence, including social networking via the intranet/internet or in any other manner developing a relationship with an offender which is anything other than an employee/offender relationship.

Valid Driver's License: A license to operate a motor vehicle, issued by the employee's state of residence, which is free of currently active revocations, suspensions, and/or restrictions that would prohibit the employee from operating a motor vehicle in a manner required of his or her position.

Volunteer: Any person, including interns, who provides, through his/her own volition, a service to a facility or field services office, and has completed an orientation and basic volunteer program.

Work Area: Any KDOC facility or satellite unit, parole office, Central Office division, or any location where offender work crews are assigned.

**PROCEDURES**

I. **Responsibility of Appointing Authority**

A. Each appointing authority shall make accessible to employees:

1. Kansas Statutes Annotated (K.S.A.).

2. Kansas Administrative Regulations (K.A.R.).

3. Internal Management Policies and Procedures (IMPP).

B. In addition to those items listed in Section I.A., each warden, superintendent, and regional parole director shall make field, general and post orders accessible to employees.

C. Each appointing authority shall be responsible for providing training to employees on the documents identified in Sections I.A. and B. and the time spent in this pursuit shall be documented in the employee's training file.

(EXHIBIT-G-3)

## II. Employee Responsibility

A. It is the responsibility of all employees to familiarize themselves with and to comply with requirements and conditions stated in the documents identified in Sections I. A. and B.

1. Each employee shall be given time on duty or in training to familiarize themselves with the documents.

2. During orientation, all new employees will be provided an overview of and shall sign a statement acknowledging access to and awareness of personnel policies and regulations.

3. All new employees, contract personnel, volunteers, and all promoted and/or transferred employees shall be required to acknowledge the Department's Code of Ethics in writing on Attachment A, Employee Acknowledgements in writing on Attachment B, and State of Kansas Social Media Understanding & Acceptance of Policy in writing on Attachment C. (ACI 3-3067; 3-APPFS-3C-02)

B. Violation of any rule of conduct may be grounds for disciplinary action up to and including dismissal. (ACO 2-1C-04)

C. Employees and volunteers are required to report known or suspected violations of this policy to a supervisor or manager in a timely manner.

## III. Use of Deadly Force by an Employee

A. The ability and willingness to utilize deadly force in situations where the application of this degree of force is authorized and appropriate is a condition of employment for all corrections officers and corrections specialists.

B. All corrections officers, corrections specialists, and special agents who are trained and qualified in the use of weapons and the application of deadly force pursuant to IMPP 03-106D and IMPP 12-111 are subject to assignment to any post or duty where the application of deadly force may be authorized or necessary.

1. Any employee who refuses such an assignment or refuses or fails to apply deadly force under circumstances warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal. (ACO 2-1C-04)

2. Any employee who applies deadly force under circumstances not warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal.

## IV. Rules of Conduct (ACO 2-1C-04)

A. Following Orders

1. Employees shall promptly obey lawful orders given them by proper authority.

2. In the event of conflicting orders, the last order shall be obeyed.

B. Conduct and Demeanor

1. While on duty, employees and volunteers shall at all times maintain a courteous, respectful and professional demeanor in their dealings with, and in the presence of, offenders, employees, visitors, and the public.

2. Employees or volunteers shall not use indecent, abusive or profane language while on duty, including racial or ethnic slurs or jokes, or sexually suggestive comments or jokes.

(EXHIBIT-G-4)

3. Employees or volunteers shall neither encourage nor participate in any behaviors that would create a hostile or fearful work environment, including but not limited to:

   a. Violent confrontations;

   b. Assaultive acts or threats of any kind;

   c. Any battering behavior, including any shoving, pushing, or any other rude application of force to the person of another;

   d. Any telephone harassment or abuse of other modes of communication; or,

   e. Any other behaviors that could create a hostile or fearful work environment.

4. Employees and volunteers shall, whether on duty or off duty, avoid conduct, which would be likely to bring criticism upon themselves or the Department.

C. Undue Familiarity

1. No employee or volunteer shall indulge in undue familiarity with any offender nor shall they permit undue familiarity on the part of any offender toward themselves.

2. No employee or volunteer shall engage in inappropriate conversations or discuss his or her personal affairs with any offender to include:

   a. Discussion of personal matters about himself/herself, or any other employee, volunteer or contract personnel, sexual matters, relationship issues, family matters, or other similar issues, unless specifically required in the performance of their duties.

3. No employee or volunteer shall engage in any unauthorized game, contest or sport with any offender in the custody of the Secretary of Corrections.

   a. No employee or volunteer shall engage in horseplay with any offender in the custody of the Secretary of Corrections.

4. No employee or volunteer shall establish a personal relationship with an offender or an offender's family or friends, including a friendship, a romantic relationship, a nurturing relationship, or a sexual relationship, unless the employee is related to the offender by blood or marriage and has reported the relationship to his or her immediate supervisor or appointing authority via "Notice of Offender Relationship", Attachment D.

5. No employee shall contact or correspond with any offender, member of an offender's family, or correspondent or visitor of an offender unless assigned duties require it or permission has been granted by the appointing authority.

   a. Should an employee be contacted by any person listed in Section IV.C.5., while off duty, he or she shall report this fact to the appointing authority as soon as possible and no later than the beginning of the employee's next scheduled shift.

6. No volunteer shall contact or correspond with any offender, member of an offender's family, or correspondent or visitor of an offender unless assigned duties require it.

   a. Should a volunteer be contacted by any offender, member of an offender's family, or correspondent or visitor of an offender while off duty, he or she shall report this fact to the appointing authority as soon as possible and no later than the beginning of the volunteer's next scheduled shift.

(EXHIBIT-G-5)

Attachment A, IMPP 02-118D
Effective 07-01-15

KANSAS DEPARTMENT OF CORRECTIONS

# CODE OF ETHICS

As an employee, contract personnel or volunteer of the Kansas Department of Corrections, I will value and maintain the highest ideals of professionalism and public service in carrying out my duties and responsibilities.

I will respect the dignity of individuals, the rights of all members of society and the potential for human growth, development and behavioral change. I accept that it is my fundamental duty to serve the public; to safeguard lives and property; and to maintain an environment free of deception, oppression or intimidation, violence or disorder. I will exercise power and authority prudently and within the limits of the law.

I will recognize the fact that I have power over the lives of offenders, and will not abuse that power in any way, including by attempting to establish any form of personal relationship with an offender, or take any other action toward or concerning an offender which advances a personal interest or cause of my own.

I will not sexually abuse, or engage in undue familiarity of an offender or an offender on post-incarceration supervision.

I will be constantly mindful of the welfare of others. To the best of my ability, I will remain calm in the face of danger and maintain self-restraint in the face of provocation.

I will treat all persons with respect and dignity, and will not mistreat any person based on that person's race, ethnicity, gender, nationality or religious beliefs. I will not engage in any conduct that results in hostility or offence on the basis of sex, nor in any way improperly introduce any sexual material or activity into the workplace.

I will be honest and truthful. I will be exemplary in obeying the law and following the rules and regulations of the Department. I will promote honesty and ethical behavior over loyalty to individuals. I will immediately report dishonest or unethical conduct or any violation or apparent violation of the Department's rules and regulations.

I will use public funds in a fiscally responsible manner. I acknowledge that I have been selected for a position of public trust. I will constantly strive to be worthy of that trust and to be true to the mission and values of the Department of Corrections.

Signature: ______________________________ Date: ________________

Printed Name: ______________________________

Witness: ______________________________

Attachment B, IMPP 02-118D
Effective 07-01-15

Employee: ______________________________ (EXHIBIT-G-6)

**KANSAS DEPARTMENT OF CORRECTIONS**
**Acknowledgements**

Initial

**I. Rules of Conduct (Employees, Contract Personnel and Volunteer)**

☐ **A.** I acknowledge that I have read IMPP 02-118D, Employee Rules of Conduct and Undue Familiarity. I understand that, with the exceptions noted in the following paragraphs, a violation of any rule of conduct shall be grounds for disciplinary action, up to and including dismissal. I have had the opportunity to ask questions regarding any portion of the IMPP.

☐ **B.** I acknowledge that I have read and understand K.S.A. 2014 Supp. 21-5914 and K.A.R. 44-2-103, Trafficking in Contraband. I understand that a violation of the Statute and/or Regulation shall be grounds for discipline, up to and including dismissal and may also result in prosecution for a severity level 5 non-person felony for state employees or a level 6 non-person felony for persons providing contracted services to offenders under the supervision of the Secretary of Corrections.

☐ **C.** I understand, as an employee of the Department of Corrections as defined in IMPP 02-118D, that violation of the Statute shall be grounds for dismissal and may also result in prosecution for a felony offense. I understand that violation of the Statute by an employee, contract employee, or volunteer of the Department of Corrections is a severity level 5 felony offense, and violation of the Statute by an employee or contract employee of a juvenile correctional facility is a severity level 4 felony offense.

☐ **D.** I acknowledge that I have read and understand IMPP 10-103D, Coordinated Response to Sexual Abuse and Harassment. I understand that a violation of IMPP 10-103D, including engaging in sexual abuse or sexual harassment of an offender, shall be grounds for disciplinary action, up to and including dismissal. I also understand that termination shall be the presumptive disciplinary sanction for employees who engage in sexual abuse of an offender. I have had the opportunity to ask questions regarding any portion of the IMPP.

______________________________ ______________
Signature Date

______________________________ ______________
Signature of Human Resources Witness Date

**II. Awarding of Compensatory Time (Employees ONLY)**

I understand that, in accordance with IMPP 02-113D, the Kansas Department of Corrections, in lieu of payment for overtime, reserves the right to compensate hourly employees by granting compensatory time off at the rate of one and one half hours for each hour worked in excess of the length set for my position by IMPP 02-113D. I have had the opportunity to discuss this with a Human Resources staff member.

______________________________ ______________
Signature Date

______________________________ ______________
Signature of Human Resources Witness Date

**III. Rights and Responsibilities Under the Family Medical Leave Act (FMLA) (Employees ONLY)**

I, undersigned hereby state that I have been notified of my rights and responsibilities as an employee of the Kansas Department of Corrections under the Family and Medical Leave Act, by being provided with the following items, which I have read, and by being provided with the opportunity to ask any questions I may have regarding the FMLA.

1. KDOC Policy Regarding FMLA (IMPP 02-114D)
2. Employee Rights and Responsibilities Under FMLA (Attachment B of IMPP 02-114D)

______________________________ ______________________________
Signature Date Position (Job Title)

______________________________
Signature of Witness Date

FOCUS™ Terms cite(44-15-201) Search Within Original Results (1 - 1) Go Advanced... View Tutorial

View: TOC | KWIC | Full | Custom

1 of 1
Book Browse
K.A.R. § 44-15-201 (Copy w/ Cite)
Pages: 1

(EXHIBIT-H-1)

K.A.R. § 44-15-201

KANSAS ADMINISTRATIVE REGULATIONS

*** THIS DOCUMENT IS CURRENT THROUGH KANSAS REGISTER VOLUME 30, ***
*** NUMBER 16 APRIL 21, 2011 ***

AGENCY 44 DEPARTMENT OF CORRECTIONS
ARTICLE 15. GRIEVANCE PROCEDURE FOR INMATES
SPECIAL PROCEDURES

K.A.R. §44-15-201 (2011)

44-15-201. Special kinds of problems.

(a) If an inmate wants to bring a problem to the attention of a higher authority without going through the grievance procedure, the inmate may address as official mail a sealed letter or grievance report form to the warden of the facility, the secretary of corrections, or the state pardon attorney. However, these letters or grievance report forms should be reserved for the most difficult and complex problems. Generally, any matter that can be internally handled under the inmate grievance procedure shall not be considered as appropriate for the use of the official mail correspondence privilege.

(b) Any department of corrections or facility official who receives a complaint letter may return it to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure.

This amendment shall be effective on and after February 15, 2002.

Authorized by and implementing K.S.A. 75-5251, K.S.A. 75-5210; effective May 1, 1980; amended Feb. 15, 2002.

View: TOC | KWIC | Full | Custom

1 of 1
Book Browse
K.A.R. § 44-15-201 (Copy w/ Cite)

About LexisNexis Privacy Policy Terms & Conditions Contact Us
Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

(EXHIBIT- H-2)

Book Browse

K.A.R. § 44-15-104 (Copy w/ Cite) Pages: 2

*K.A.R. § 44-15-104*

KANSAS ADMINISTRATIVE REGULATIONS

*** This document is current through Kansas Register Volume 35, ***
*** Number 13 March 31, 2016 ***

AGENCY 44. DEPARTMENT OF CORRECTIONS
ARTICLE 15. GRIEVANCE PROCEDURE FOR INMATES
PROCEDURES GENERALLY

K.A.R. § 44-15-104 (2016)

44-15-104. Reprisals prohibited.

(a) Inmates. No adverse action shall be taken against any inmate for use of the grievance procedure unless the inmate uses the grievance procedure for any of the following purposes:

(1) To communicate a threat to another person or to the security of the facility;

(2) to make a complaint knowing that it is false, malicious, or made in bad faith; or

(3) to commit any unlawful act.

(b) Employees. No adverse action shall be taken against any employee for good faith participation in the grievance procedure. Employees shall be entitled to grieve reprisals for participation in inmate grievance systems by use of the department of corrections' employee grievance system.

Authorized by and implementing K.S.A. 2005 Supp. 75-5210, K.S.A. 75-5251, effective May 1, 1984; amended June 1, 2007.

View

(EXHIBIT-H-3)

RE: KANSAS ADMINISTRATIVE REGULATION 44-12-304.

"K.A.R. 44-12-304. DISOBEYING ORDERS. (a) EACH INMATE SHALL PROMPTLY AND RESPECTFULLY OBEY ANY ORDER, DIRECTIVE, OR INSTRUCTION GIVEN TO THE INMATE BY ANY EMPLOYEE OF THE FACILITY, OR BY AN EMPLOYEE OF ANY OTHER AGENCY OR OF AN ORGANIZATION OR FIRM IN CHARGE OF THE INMATE. IN CASE OF CONFLICTING ORDERS, THE LAST ORDER SHALL BE OBEYED."

Book Browse | *Shepardize®*
**K.S.A. § 75-5252** (Copy w/ Cite) Pages: 5

*K.S.A. § 75-5252*

LexisNexis(R) Kansas Annotated Statutes
Copyright © 2015
All rights reserved.

**Practitioner's Toolbox**

**Case Notes**

**History**

*** This document is current through the 2015 Regular Session of the Kansas Legislature ***

Chapter 75. State Departments; Public Officers and Employees
Article 52. Department of Corrections
Correctional Institutions; **Wardens**; Officers; Inmate Activities

**GO TO KANSAS STATUTES ARCHIVE DIRECTORY**

K.S.A. § 75-5252 (2015)

**75-5252. Duties of wardens of institutions.**

Subject to the general supervision of the secretary of corrections and applicable rules and regulations adopted by the secretary, it shall be the duty of the **warden** of each correctional institution:

**(a)** To oversee the government and discipline of the correctional institution, and to superintend all business concerns thereof.

**(b)** To give necessary directions to the officers and employees and to examine whether they have been careful and vigilant in their respective duties.

**(c)** To examine into the state of the correctional institution and for the health, conduct and safekeeping of the inmates.

**(d)** To use every proper means to furnish employment to the inmates most beneficial to the public and best suited to their several capacities under the direction of the secretary.

**(e)** To take charge of all real and personal property belonging to the state in and about the correctional institution or appurtenant thereto.

**History:**

L. 1973, ch. 339, § 42; L. 1978, ch. 366, § 6; L. 1990, ch. 309, § 61; May 24.

**NOTES:**

**Source or prior law:**

76-2406.

**CASE ANNOTATIONS**

Book Browse | *Shepardize®*
**K.S.A. § 75-5251** (Copy w/ Cite)

Pages: **6**

*K.S.A. § 75-5251*

LexisNexis(R) Kansas Annotated Statutes
Copyright © 2015
All rights reserved.

Practitioner's Toolbox

Case Notes

History

*** This document is current through the 2015 Regular Session of the Kansas Legislature ***

Chapter 75. State Departments; Public Officers and Employees
Article 52. Department of Corrections
Correctional Institutions; Wardens; Officers; Inmate Activities

**GO TO KANSAS STATUTES ARCHIVE DIRECTORY**

K.S.A. § **75-5251** (2015)

**75-5251. Government and discipline of correctional institutions; release supervision services; duties of secretary; investigatory powers; rules and regulations.**

The secretary shall have power, and it shall be the secretary's duty from time to time, to examine and inquire into all matters connected with the government and discipline of the correctional institutions and release supervision services under the secretary's supervision and control; the punishment and employment of the inmates, and releasees under the secretary's supervision and the purchases and sales of the articles provided for such correctional institutions and parole offices or sold on account thereof; and the secretary may from time to time require reports from the warden, parole director or other officers of any such correctional institution or parole office in relation to any or all of such matters. It shall be the secretary's duty to inquire into any improper conduct which may be alleged to have been committed by the warden, parole director or any other officer of any such correctional institution or parole office; and for that purpose the secretary shall have power to issue subpoenas to compel the attendance of witnesses, and the production of papers and writings in the same manner and with like effect as in cases of arbitration. The secretary may administer oaths to any such witnesses before examination thereof.

The secretary shall have free access to the correctional institutions and parole offices at all times, and it shall be the duty of the warden, parole director and other officers of any such correctional institution or parole office, whenever requested, to exhibit to the secretary, on demand, all the books, papers, accounts and writings pertaining to the correctional institution or parole office, or to the business, government, discipline or management thereof, and to render to the secretary every other facility in their power to enable the secretary to discharge the secretary's duties under this act.

The secretary shall adopt rules and regulations or policies for the direction and government of such correctional institutions and the officers thereof, and may change the same from time to time.

**History:**

L. 1973, ch. 339, § 41; L. 1990, ch. 309, § 60; L. 2010, ch. 34, § 1; July 1.

**NOTES:**

(EXHIBIT-I-1)

RE: DECLARATION UNDER PENALTY OF PERJURY

I, CHRISTOPHER DAVID BROWN being competent to make this declaration and having personal knowledge of the matters herein declares pursuant to 28 U.S.C. §1746 AND 18 U.S.C. §1621:

1.) AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HEREIN PLAINTIFF CHRISTOPHER DAVID BROWN WAS INCARCERATED AT HUTCHINSON CORRECTIONAL FACILITY, HOUSED IN A-2 CELLHOUSE ASSIGNED TO CELL #227

2.) AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HEREIN DEFENDANT JEFFREY NEAL PETTIJOHN WAS ASSIGNED AS A-2 CELLHOUSES UNIT TEAM COUNSELOR

3) AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HEREIN DEFENDANT PETTIJOHN WAS IN FACT THE UNIT TEAM, BUT OVER THE YEARS HAS ALSO BEEN A CORRECTIONAL GUARD, BLACK SUIT, AND WELL TRINED IN SECURITY.

4.) AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HEREIN DEFENDANT TODD E. SWENSON WAS ASSIGNED TO A-2 CELLHOUSE ON THE 3-11 SHIFT WITH THE RANK OF MASTER SERGEANT/OIC/ISI ON SEPTEMBER 13TH, 2018

5.) DEFENDANTS PETTIJOHN AND SWENSON WERE BOTH ON DUTY AND WORKING IN A-2 CELLHOUSE ON SEPTEMBER 13TH, 2018.

6.) THIS SUIT ARISES FROM THE EVENTS THAT TOOK PLACE ON SEPTEMBER 13TH, 2018 IN A-2 CELLHOUSE, ON THE 3-11 SHIFT AND THEREAFTER.

7) ON SEPTEMBER 13TH, 2018 DEFENDANT SWENSON WAS CONDUCTING FORMAL COUNT IN A-2 CELLHOUSE, ON THE ODD SIDE, TWO WALK, WHERE PLAINTIFF BROWN WAS HOUSED, IN CELL #227.

8) WHEN DEFENDANT SWENSON LOOKED INTO PLAINTIFFS CELL, PLAINTIFF WAS STANDING AT THE CELLS DESK MAKING A CUP OF COFFEE, CLEARLY VISIBLE TO DEFENDANT SWENSON.

9.) DEFENDANT SWENSON MADE EYE CONTACT WITH PLAINTIFF AND CONTINUED ON COUNTING

10.) DEFENDANT SWENSON STOPPED AND CAME BACK TO PLAINTIFFS CELL AND AGGRESSIVELY SAID, "TAKE THAT SHIT DOWN"

11.) PLAINTIFF EXPLAINED THAT HE JUST WASHED THE SHEET AND IT'S

(EXHIBIT-I-2)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

HANGING UP TO DRY, AND THAT ITS NOT PREVENTING STAFF FROM SEEING PLAINTIFF IN THE CELL.

12.) DEFENDANT SWENSON SAID, "HE DIDN'T GIVE A FUCK, AND PLAINTIFF BETTER TAKE THE SHIT DOWN BEFORE DEFENDANT SWENSON COMES IN PLAINTIFF'S CELL AND TAKES IT DOWN HIMSELF, AND PROMISED THAT PLAINTIFF WOULDN'T LIKE THAT."

13.) PLAINTIFF SAID, "YOUR HARASSING ME, BEING UNPROFESSIONAL, CUSSING AT ME, BEING DISRESPECTFUL, AND THREATENING ME, YOU CAN TAKE IT DOWN YOURSELF TOUGH GUY."

14.) PLAINTIFF SAID, "YOUR CRYING ABOUT A RULE I'M NOT BREAKING BUT YOUR NOT WORRIED ABOUT THE RULES OF CONDUCT BECAUSE YOUR NOT SUPPOST TO BE CUSSING AT ME."

15.) DEFENDANT SWENSON WALKED AWAY.

16.) THE SHEET WAS NOT BLOCKING STAFFS VISIBILITY FROM SEEING PLAINTIFF IN THE CELL.

17.) SHORTLY AFTER DEFENDANT SWENSON LEFT, DEFENDANT PETTIJOHN WAS AT PLAINTIFFS CELL ASKING IF PLAINTIFF WOULD TAKE DOWN THE SHEET.

18) PLAINTIFF SAID YEAH AND TOOK DOWN THE SHEET

19) PLAINTIFF TOLD DEFENDANT PETTIJOHN HE SAW WHERE THE SHEET WAS AND SAW THAT IT WASN'T PREVENTING STAFF FROM SEEING PLAINTIFF IN THE CELL AND THAT DEFENDANT SWENSON WAS JUST HARASSING PLAINTIFF.

20) PLAINTIFF EXPLAINED TO DEFENDANT PETTIJOHN THAT THE LAUNDRY SOAP CAUSES PLAINTIFF TO HAVE AN ALLERGIC REACTION AND PLAINTIFF WASHES HIS CLOTHES AND HANGS THEM UP TO DRY AND ITS NEVER BEEN A PROBLEM IN THE PAST, BUT NOW ALL OF A SUDDEN, ITS A PROBLEM.

21) PLAINTIFF POINTED OUT THAT THERES NO TOWEL HOOKS IN THE CELLS.

22) PLAINTIFF INFORMED DEFENDANT PETTIJOHN THAT HE DIDN'T TAKE THE SHEET DOWN FOR DEFENDANT SWENSON BECAUSE DEFENDANT SWENSON WAS CUSSING AND THEN THREATENED PLAINTIFF

(EXHIBIT-I-3)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

23) DEFENDANT PETTIJOHN SAID OKAY AND TOLD PLAINTIFF TO DO HIS LAUNDRY ON ANOTHER SHIFT.

24.) DEFENDANT PETTIJOHN WALKED AWAY TO SPEAK TO OTHER INMATES A COUPLE CELLS AWAY AS HE CONTINUED CONDUCTING HIS UNIT TEAM ROUND.

25) MOMENTS AFTER DEFENDANT PETTIJOHN LEFT PLAINTIFFS CELL DEFENDANT SWENSON ARRIVED AT PLAINTIFFS CELL WITH THE DINNER DRINKS (TEA AND COFFEE) AND CART.

26.) DEFENDANT SWENSON OPENED PLAINTIFFS FOOD PASS DOOR AND SAID "I SEE YOU TOOK THAT SHIT DOWN." AND SMILED.

27.) PLAINTIFF PUT HIS DRINKING JAR ON THE FOOD PASS DOOR AND SAID I WANT TEA.

28.) DEFENDANT SWENSON TOOK THE JAR, AND PLAINTIFF SAID, YEAH ITS REAL FUNNY HOW YOU WANTED TO CUSS AND THREATEN TO COME IN MY CELL, BUT ALL YOU DID IS RUN TO THE UNIT TEAM CRYING.

29.) DEFENDANT SWENSON SAID I DIDNT CUSS. AND THE SHEETS NOT UP.

30.) PLAINTIFF SAID I TOOK IT DOWN FOR DEFENDANT PETTIJOHN NOT YOU, AND YOU DID CUSS AND YOU DID THREATEN ME, AND NOW YOUR TRYING TO PROVOKE ME, AND I ALREADY LET DEFENDANT PETTIJOHN KNOW AND IM GONNA WRITE YOU UP.

31) DEFENDANT PETTIJOHN WAS A COUPLE CELLS AWAY, BECAUSE PLAINTIFF COULD HEAR HIM TALKING CLEARLY TO ANOTHER INMATE.

32). DEFENDANT SWENSON SAID I DIDNT CUSS.

33) PLAINTIFF SAID, "YES YOU DID!" PLAINTIFF SAID, "YOU SAID TAKE THAT "SHIT" DOWN, AND YOU SAID YOU DONT GIVE A "FUCK" THOSE SOUND LIKE CUSS WORDS TO ME."

34.) PLAINTIFF SAID GIVE ME MY TEA AND STOP TRYING TO CAUSE FURTHER PROBLEMS, BECAUSE IM WRITING YOU UP FOR EVERYTHING.

35.) DEFENDANT SWENSON BECAME ENRAGED, TOOK PLAINTIFFS EMPTY DRINKING JAR REACHED INSIDE PLAINTIFFS CELL AND THREW IT ON

(EXHIBIT-I-4)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

THE CELL FLOOR AND TOLD PLAINTIFF TO "WRITE THAT UP!"

36) DEFENDANT SWENSON WAS REACHING FOR THE KEYS TO CLOSE AND LOCK PLAINTIFF'S FOODPASS DOOR REFUSING PLAINTIFF DINNER DRINKS.

37) PLAINTIFF QUICKLY PUT HIS HAND IN THE FOOD PASS OPENING PREVENTING DEFENDANT SWENSON FROM CLOSING THE FOOD PASS DOOR.

38) PLAINTIFF COULD CLEARLY HEAR DEFENDANT UNIT TEAM PETTIJOHN SPEAKING TO ANOTHER INMATE CLOSE BY.

39) PLAINTIFF ASKED DEFENDANT SWENSON, "WHAT HIS PROBLEM IS THROWING PLAINTIFF'S DRINKING CUP ON THE FLOOR DENYING PLAINTIFF PART OF HIS DINNER(DRINKS)?!?"

40) DEFENDANT SWENSON YELLED AT PLAINTIFF, "TO MOVE HIS FUCKEN ARM/HAND OR DEFENDANT SWENSON WAS GOING TO RIP PLAINTIFF'S FUCKEN ARM OFF."

41) PLAINTIFF YELLED TO DEFENDANT PETTIJOHN SAYING, "PLAINTIFF TOLD DEFENDANT SWENSON HE WAS WRITING HIM UP, AND DEFENDANT SWENSON GOT MAD AND THREW PLAINTIFF DRINKING CUP ON THE FLOOR, REFUSING TO GIVE PLAINTIFF DINNER/DRINKS.

42) DEFENDANT PETTIJOHN SAID, "PUT YOUR HAND IN BROWN."

43) PLAINTIFF YELLED, "UNIT TEAM PETTIJOHN, PLEASE COME HERE, ITS AN EMERGENCY, I'M BEING DENIED PART OF MY DINNER, IN RETALIATION FOR TELLING SWENSON I'M WRITING HIM UP, HE THREW MY CUP ON THE FLOOR MAN."

44) DEFENDANT PETTIJOHN DIDNT NOT RESPOND. BUT COULD STILL BE HEARD.

45) DEFENDANT SWENSON SAID, "NOW YOUR NOT GETTING DINNER."

46) PLAINTIFF YELLED, "PETTIJOHN, COME HERE, THIS DUDE IS SAYING I'M NOT GETTING DINNER NOW, IT'S AN EMERGENCY MAN, PLEASE COME HERE!"

47) DEFENDANT PETTIJOHN DID NOT RESPOND, BUT STOPPED TALKING TO LISTEN.

48) DEFENDANT SWENSON YELLED, "MOVE YOUR FUCKEN HAND OR I'M GONNA RIP YOUR FUCKEN ARM OFF!"

(EXHIBIT-I-5)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

49.) DEFENDANT SWENSON SAID, "HE'S NOT GONNA HELP YOU"

50.) PLAINTIFF SAID, "THEN GET THE LIEUTENANT OR CAPTAIN DOWN HERE!"

51) DEFENDANT SWENSON BEGAN HIS VICIOUS ATTACK AGAINST ME/PLAINTIFF.

52) DEFENDANT SWENSON TOOK HOLD OF THE FOOD PASS DOOR AND SLAMMED IT AGAINST PLAINTIFFS ARM.

53) PLAINTIFF SCREAMED OUT IN PAIN, "AHHMOTHER FUCKER!"

54) PLAINTIFF SCREAMED TO DEFENDANT PETTIJOHN, "PETTIJOHN THIS MOTHER FUCKER JUST SLAMMED THE FOOD PASS DOOR INTO MY ARM AND HAND, COME HERE, ITS AN EMERGENCY, I NEED MEDICAL!"

55) DEFENDANT PETTIJOHN REFUSED TO ANSWER AND/OR RESPOND TO ME OR THE SITUATION I JUST REPORTED TO HIM.

56) OTHER INMATES WERE YELLING FOR DEFENDANT PETTIJOHN TO GO TO BROWNS CELL BECAUSE THE GUARD JUST BATTERED HIM.

57.) DEFENDANT SWENSON SAID, "I TOLD YOU HE'S NOT GONNA HELP YOU."

58) DEFENDANT SWENSON SMASHED THE FOOD PASS DOOR ON PLAINTIFFS HAND AGAIN!!!

59) PLAINTIFF MOVED HIS ARM BUT PLAINTIFFS HAND WAS STRUCK.

60) DEFENDANT SWENSON SAID, "DONT MOVE YOUR ARM NOW BITCH!!"

61.) PLAINTIFF SCREAMED OUT IN PAIN AGAIN.

62) PLAINTIFF SCREAMED, "UNIT TEAM PETTIJOHN, THIS OFFICER HAS STRUCK ME WITH A PIECE OF FUCKEN METAL, PUSH THE ALARM MOTHER FUCKER!"

63.) DEFENDANT PETTIJOHN REFUSED TO WALK DOWN THE RUN TO MY CELL, AND ALSO REFUSED TO TELL DEFENDANT SWENSON NOT TO HARM ME WITH A CHUNK OF METAL.

64) DEFENDANT SWENSON SAID, "STOP CRYING YOU LITTLE BITCH, I WARNED YOU."

(EXHIBIT-I-6)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

65.) DEFENDANT PETTIJOHN WATCHED AND LISTENED TO DEFENDANT SWENSON ATTACK PLAINTIFF WITH A WEAPON, AS PLAINTIFF CRIED OUT IN PAIN, AND SCREAMED FOR DEFENDANT PETTIJOHN TO INTERVENE

66.) DEFENDANT SWENSON SAID, "I TOLD YOU"

67) PLAINTIFF YELLED FOR ANOTHER C.O. TO COME TO HIS CELL (P. JONES) WHO REFUSED.

68.) DEFENDANT SWENSON WAS CRUSHING PLAINTIFFS WRIST WITH THE FOOD PASS DOOR.

69.) PLAINTIFF CRIED OUT IN PAIN AGAIN.

70.) DEFENDANT SWENSON SAID, "STOP PUSHING ON THE DOOR TOUGH GUY"

71.) DEFENDANT APPLIED HIS BODY WEIGHT PRESSURE AGAINST THE FOOD PASS DOOR AGAINST PLAINTIFFS HAND AGAIN.

72.) PLAINTIFF CRIED OUT IN PAIN AGAIN, "AHHHH, HELP, MEDICAL, PETTIJOHN."

73.) PLAINTIFF SAID, ALRIGHT! ALRIGHT!

74.) DEFENDANT SWENSON SAID "NO, ITS NOT ALRIGHT."

75.) PLAINTIFF COULD ONLY TAKE THE PAIN FOR A MOMENT BEFORE PLAINTIFF HAD TO PUSH ON THE FOOD PASS DOOR TEMPORARILY relieving DEFENDANTS SWENSONS BODY WEIGHT PRESSURE ON THE FOOD PASS DOOR THAT WAS CRUSHING PLAINTIFFS HAND WRIST AND/OR FINGERS.

76.) PLAINTIFF SAID "LET GO OF MY SLEEVE!" WHICH DEFENDANT SWENSON HAD.

77.) DEFENDANT SWENSON HAD PLAINTIFF LONG JOHN SLEEVE.

78.) PLAINTIFF WAS NOT ATTEMPTING TO SPIT, HIT, GRAB, PUNCH, BATTER AND/OR HARM DEFENDANT SWENSON IN ANY WAY SHAPE OR FORM.

79.) PLAINTIFF WAS AND HAD BEEN FOLLOWING/COMPLYING WITH ALL ORDERS DEFENDANT SWENSON GAVE PLAINTIFF, [redacted] NOT TO MOVE [redacted] HIS HAND, AND/OR ARM.

80.) PLAINTIFF DID NOT ATTEMPT TO CRAWL OUT OF THE FOOD PASS HOLE.

(EXHIBIT-I-7)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

81.) DEFENDANT SWENSON OPENED AND SLAMMED THE FOOD PASS DOOR INTO THE TOP OF PLAINTIFF'S HAND AGAIN.

82.) PLAINTIFF CRIED OUT IN PAIN YET AGAIN.

83.) PLAINTIFF SCREAMED, "PETTIJOHN, YOU JUST GONNA STAND AROUND WHILE THIS DUDE KEEPS HURTING ME?!"

84.) SEVERAL INMATES WERE YELLING AT UNIT TEAM PETTIJOHN TO DO HIS FUCKEN JOB, TO PUSH THE PANIC BUTTON, TO INTERVENE.

85.) DEFENDANT SWENSON WAS CRUSHING MY HAND AGAIN BY USING HIS BODY WEIGHT AGAINST THE METAL FOOD PASS DOOR.

86.) PLAINTIFF YELL, "YEAH!, BREAK THE MOTHER FUCKER THEN AND GET IT OVER WITH!"

87.) DEFENDANT SWENSON YANKED OPEN THE FOOD PASS DOOR AND SAID, "COME HERE YOU LITTLE BITCH!"

88.) DEFENDANT SWENSON REACHED INSIDE PLAINTIFF CELL AND TRIED TO GOUGE OUT PLAINTIFF'S EYES.

89.) PLAINTIFF MOVED HIS HEAD BACK AND FORTH ~~AND SMACK THE WALL~~ TO AVOID DEFENDANT SWENSON (HEAD) FINGERS FROM GOING INTO PLAINTIFF EYE SOCKETS. (defendant swenson smacked plaintiff head into the concrete wall.

90.) DEFENDANT THEN GRABS PLAINTIFF ARM AND TRYS TO PULL PLAINTIFF'S WHOLE ARM OUT THE FOOD PASS DOOR, BENDING, AND TRYING TO BREAK IT.

91.) DEFENDANT SWENSON SAID, "I TOLD YOU I'D RIP YOUR FUCKEN ARM OFF!"

92.) DEFENDANT SWENSON AGAIN TOLD PLAINTIFF, "KEEP YOUR ARM THERE".

93.) DEFENDANT SWENSON CLIMBED ON THE TOP RAILING IN FRONT OF PLAINTIFF'S ASSIGNED CELL # 227, AND TOLD PLAINTIFF, "DON'T MOVE YOUR HAND."

94.) DEFENDANT SWENSON USED THIS HIGHER POSITIONING AS LEVERAGE TO KICK PLAINTIFF'S FOOD PASS DOOR, CAUSING GREATER DAMAGE/INJURY TO PLAINTIFF.

95.) DEFENDANT SWENSON THEN USED HIS POSITIONING/LEVERAGE TO...

(EXHIBIT-I-8)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

ARMY EXTREME PRESSURE WITH HIS COMBAT BOOT, LEG MUSCLES, AND BODY WEIGHT AGAINST THE FOOD PASSDOOR ON PLAINTIFF'S HAND.

96) PLAINTIFF SCREAMED OUT IN PAIN ONCE AGAIN, "AHHHHHH" "HELP"

97.) SEVERAL PRISONERS WERE YELLING AND SCREAMING FOR DEFENDANT TO STOP, AND TO COME TRY DOING THAT TO THEM, AND THAT SOMEONE WAS GONNA BEAT HIS ASS.

98) SEVERAL PRISONERS WERE YELLING FOR A OIC (OFFICER IN CHARGE) AND FOR UNIT TEAM PETTIJOHN TO COME HERE AND TO CALL A CODE (ALARM)

99.) PLAINTIFF WAS IN EXTREME PAIN AND BLEEDING AND CRYING.

100) DEFENDANT SWENSON GOT DOWN FROM THE TOP RAIL AND TOLD PLAINTIFF, "NOW MOVE YOUR FUCKEN ARM OUT THE WAY!"

101.) PLAINTIFF PULLED HIS HAND AND ARM ALL THE WAY INSIDE THE CELL

102.) DEFENDANT SWENSON CLOSED/LOCKED THE FOOD PASS DOOR.

103.) DEFENDANT SWENSON WAS REMOVED FROM A-2 CELLHOUSE DUE TO THE AMOUNT OF PRISONERS THAT WERE YELLING, SCREAMING, THREATING AND BANGING. AND THE HOSTILE WORK ENVIRONMENT DEFENDANT SWENSON CREATED.

104.) DEFENDANT SWENSON HAD A CAN OF MACE ON HIS PERSON HE COULD OF USED AS A LESSER DEGREE OF FORCE, ALTHOUGH NO FORCE WAS NEEDED.

105.) K.A.R. (KANSAS ADMINISTRATIVE REGULATIONS) 44-12-304 DISOBEYING ORDERS (a) STATES IN RELEVANT PART, "IN CASES OF CONFLICTING ORDERS THE LAST ORDER SHALL BE OBEYED.

106.) ALTHOUGH PLAINTIFF WAS TOLD TO MOVE HIS HAND BY DEFENDANT SWENSON AND DEFENDANT PETTIJOHN, DEFENDANT SWENSON ORDERED PLAINTIFF NOT TO MOVE HIS HAND OR ARM, SEVERAL TIMES, WHICH PLAINTIFF COMPLIED WITH AND WAS CONTINUOUSLY BATTERED FOR COMPLYING.

107.) PLAINTIFF WAS ESCORTED TO A-2 CELLHOUSE'S MULTI PURPOSE ADMINISTRATIVE SEGREGATION REVIEW ROOM/CLINICAL SICK CALL ROOM/ MEDICAL ROOM, AND RECEIVED EMERGENCY MEDICAL TREATMENT, DUE TO PLAINTIFF'S BLEEDING AND INJURIES AND TRAUMA, AND SUFFERING.

(EXHIBIT-I-9)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

108) PLAINTIFF WAS SEEN BY TWO NURSES

109) PLAINTIFF WAS BLEEDING AND ONE OF THE NURSES CLEANED PLAINTIFF'S GASH AND CUT, AND PUT A BANDAGE ON/OVER IT.

110) BECAUSE METAL CAUSED THE GASH, ONE OF THE NURSES CHECKED TO SEE HOW LONG IT HAD BEEN SINCE PLAINTIFF'S LAST TETANUS SHOT, AND AFTER CHECKING SAID PLAINTIFF WAS OKAY AND DIDN'T NEED ONE BECAUSE PLAINTIFF'S LAST SHOT WAS WITHIN THE LAST TEN YEARS.

111) ONE OF THE NURSES GAVE PLAINTIFF (3) SMALL PACKETS OF "BACITRACIN ANTIBIOTIC FIRST AID OINTMENT AND (3) BANDAGES.

112) THE SAME NURSE GAVE PLAINTIFF A ICE BAG TO PUT ICE IN AND HOLD ON PLAINTIFF'S HAND AND FINGERS BECAUSE OF THE SWELLING IN PLAINTIFF'S FINGERS AND HAND.

113) PLAINTIFF WAS GIVEN GENERIC IBUPROFEN; (I-PRIN) DUE TO PLAINTIFF'S COMPLAINTS ABOUT THE PAIN HE WAS IN.

114.) PLAINTIFF WAS TOLD TO MAKE SICK CALL FOR FOLLOW UP TREATMENT.

115) PLAINTIFF STATES FOR THE RECORD HE WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN DEFENDANT SWENSON SUBJECTED PLAINTIFF TO UNNECESSARY EXCESSIVE USE OF FORCE, ASSAULT, BATTERY AND AGGRAVATED BATTERY, MALICIOUSLY AND SADISTICALLY TO CAUSE PLAINTIFF HARM, VIOLATING U.S. SIMPLEMAN

116) DEFENDANT SWENSON DID NOT ATTEMPT TO TEMPER THE SITUATION, BUT INSTEAD MADE EFFORTS TO PROVOKE PLAINTIFF AND CAUSE THE SITUATION TO ESCALATE.

117) DEFENDANT SWENSON KNOWINGLY AND INTENTIONALLY ABUSED HIS AUTHORITY AND WAS TOTALLY UNPROFESSIONAL AND PROVOKED PLAINTIFF WHEN HE CUSSED AT PLAINTIFF, BY THREATENING PLAINTIFF, BY BEING CHILDISH IN COMING BACK TO PLAINTIFF'S CELL SAYING HE SEES PME SITTING DOWN, BY LYING, BY THROWING PLAINTIFF'S DRINKING CUP ON PLAINTIFF'S CELL FLOOR, BY DENYING PLAINTIFF PART OF HIS DINNER (TEA & COFFEE), BY YELLING AT PLAINTIFF, BY THREATENING PLAINTIFF, BY DENYING PLAINTIFF DINNER, BY REFUSING TO HAVE ANOTHER GUARD COME SPEAK TO PLAINTIFF, BY MISTREATING AND ABUSING PLAINTIFF.

118) PLAINTIFF ALSO STATES FOR THE RECORD THAT DEFENDANT SWENSON USED...

(EXHIBIT-I-10)

RE: DECLARATION UNDER PENALTY OF PERJURY)

UNAUTHORIZED ILLEGAL UNNECESSARY EXCESSIVE FORCE BY USING WEAPONS AGAINST PLAINTIFF. IE A CHUNK OF SOLID STEEL TO REPEATEDLY SMACK, HIT, CRUSH, PLAINTIFFS ARM, WRIST, HAND, AND FINGERS, AND WHEN DEFENDANT SWENSON USED HIS COMBAT WORK BOOTS TO KICK, STAND ON AND CRUSH THE CHUNK OF STEEL AGAINST PLAINTIFFS HAND WRIST AND FINGERS.

119.) UPON INFORMATION AND BELIEF DEFENDANT SWENSON HAS A HISTORY OF MISTREATING/ABUSING PRISONERS, AND/OR USING EXCESSIVE FORCE.

120.) THE ALLEGED NEED FOR FORCE EVEN IF TRUE, WAS COMPLETELY OUT OF PROPORTION, AND THERE WAS NO NEED FOR FORCE.

121.) USING A WEAPON AGAINST A PERSON IS AGGRAVATED BATTERY UNDER K.S.A. 21-5413 (b) (1) (B) AND UPON INFORMATION AND BELIEF DEFENDANT SWENSON WAS NOT CHARGED FOR BATTERY OR AGGRAVATED BATTERY AS IS THE NORMAL PATTERN FOR KDOC/IKF OFFICIALS TO GIVE GUILTY STAFF IMPUNITY.

122.) PLAINTIFF'S FIRST AMENDMENT RIGHT UNDER THE UNITED STATES CONSTITUTION TO PETITION THE GOVERNMENT FOR A REDRESS OF MY GRIEVANCES WAS ALSO VIOLATED WHEN DEFENDANT SWENSON RETALIATED AGAINST ME AFTER I TOLD HIM I'M WRITING HIM UP, WHEN HE THREW MY DRINKING CUP ON THE CELL FLOOR (SEE #'S 30-35 IN THIS AFFIDAVIT/DECLARATION), AND ATTACKED ME.

123.) SEVERAL STAFF TOLD ME DEFENDANT SWENSON WAS OUT OF CONTROL. UNIT TEAM MARKUS L. DAWES SAID HE KNOWS WHAT HAPPENED TO ME WAS WRONG, AND THAT WHEN HE WAS TALKING TO DEFENDANT PETTIJOHN HE TOLD HIM HE SHOULD APPROVE MY INJURY CLAIM BECAUSE I SHOULD BE GETTING A LOT MORE. DEFENDANT UNIT TEAM JEFFREY N. PETTIJOHN HAD TOLD ME IF HE WAS PROCESSING MY INJURY CLAIM HE'D APPROVE IT FOR SURE. C/O PHYLICIA JONES TOLD ME THAT SHE'S SORRY ABOUT WHAT HAPPENED TO ME, LOOKED AT AND TOUCHED THE LUMP ON THE TOP OF MY LEFT HAND AND ASKED ME IF IT HURTS REALLY BAD WHICH I SAID IT DID AND I COULDN'T PICK UP MY ICE CHEST OF FOOD TRAY WITH THAT HAND. C/O NICHOLAS J. NAVARRO SAID THAT MESSED UP THE WAY DEFENDANT SWENSON DID ME, AND THAT THIS FACILITY IS REALLY BAD ABOUT STAFF PUTTING THEIR HANDS ON PEOPLE AND THEY DON'T GET HELD ACCOUNTABLE FOR IT.

124.) DEFENDANT PETTIJOHN LIED TO ME SAYING HE WASN'T THE ONE PROCESSING MY INJURY CLAIM, BUT HE DID PROCESS IT, AND DEFENDANT PETTIJOHN ADMITS DEFENDANT SWENSON DID IN FACT USE EXCESSIVE FORCE AGAINST ME.

(EXHIBIT-I-11)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

125.) DEFENDANT PETTIJOHN BECAME ANGRY WITH ME FOR WRITING HIM UP FOR OTHER THINGS, AND AS RETALIATION DECIDED TO DENY MY INJURY CLAIM, UPON INFORMATION AND BELIEF.

126.) DEFENDANT PETTIJOHN WAS FEET AWAY, BEFORE AND DURING, DEFENDANT SWENSON'S ATTACK AGAINST ME, AND REFUSED TO INTERVENE AND STOP A LOWER RANK CO-WORKER FROM HARMING ME AND INSTEAD WALKED FARTHER AND FARTHER DOWN THE RUN AWAY FROM MY CELL, AND THE CRIMES I WAS SUBJECTED TO.

127) I, PLAINTIFF, YELLED AND BEGGED DEFENDANT PETTIJOHN TO HELP ME, TO COME TO MY CELL AND DEFENDANT PETTIJOHN REFUSED. I BEGGED HE PUSH THE ALARM TOO.

128). I HEARD SEVERAL PRISONERS YELLING AT DEFENDANT PETTIJOHN TO DO HIS JOB, TO GO TO PLAINTIFF'S CELL, TO STOP DEFENDANT SWENSON FROM ATTACKING PLAINTIFF, TO CALL A CODE, AND TO HELP PLAINTIFF.

129.) WHILE I WAS IN DEFENDANT PETTIJOHN'S OFFICE IN A-2 CELLHOUSE GOING OVER FORMAL COMPLAINTS I SUBMITTED, (PREA COMPLAINT)(PROPERTY CLAIMS), AND UNPROFESSIONAL STAFF) THE INCIDENT WITH DEFENDANT SWENSON CAME UP. THIS CONVERSATION WAS ON 9-19-2018. (6) DAYS AFTER MY ATTACK.

130.) DEFENDANT PETTIJOHN TOLD ME HE SAW DEFENDANT SWENSON REACH INTO MY CELL AND TRY TO PULL ME OUT OF THE FOOD PORT, THAT HE ALSO SAW DEFENDANT SWENSON SLAMMING THE FOOD PORT DOOR INTO MY HAND, AND THAT HE SAW DEFENDANT SWENSON CLIMB UP ON THE 3RD RAILING TO KICK THE FOOD PORT DOOR AGAINST MY HAND AND CRUSH IT.

131.) PLAINTIFF ASKED DEFENDANT PETTIJOHN WHY HE DIDN'T DO ANYTHING, AND DEFENDANT PETTIJOHN SAID ITS NOT WHOS RESPONSIBLE FOR DISCIPLINING THE OFFICERS AND THATS SECURITY FUNCTIONS. PLAINTIFF TOLD DEFENDANT PETTIJOHN BY LAW ITS ALL STAFF DUTY/JOB TO INTERVENE AND STOP ANOTHER STAFF FROM ABUSING HIS AUTHORITY. DEFENDANT PETTIJOHN TOLD PLAINTIFF TO FILE A INJURY CLAIM AND IT WILL BE TAKEN CARE OF, OR FILE A LAW SUIT.

132.) DEFENDANT JEFFREY NEAL PETTIJOHN HAD A DUTY TO INTERVENE AND STOP DEFENDANT SWENSON'S VIOLENT ATTACK AGAINST PLAINTIFF, BUT FAILED TO DO SO; BEING DELIBERATELY INDIFFERENT TO MY HEALTH AND SAFETY, SUBJECTING PLAINTIFF TO CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. HIS INACTION CAUSE ME TO SUFFER FAR MORE.

133) DEFENDANT PETTIJOHN HAD NUMEROUS OPPORTUNITIES TO INTERVENE BUT

(EXHIBIT-II-12)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

FAILED/REFUSED TO DO SO, BUT WITNESSED AND LISTEN TO DEFENDANT/PLAINTIFF.

134.) DEFENDANT PETTIJOHN COULD HAVE WALKED OVER TO PLAINTIFFS CELL.

135) DEFENDANT PETTIJOHN COULD OF TOLD DEFENDANT SWENSON TO STOP.

136) DEFENDANT PETTIJOHN COULD OF PUSHED THE PANIC BUTTON ON HIS RADIO.

137.) DEFENDANT PETTIJOHN COULD OF TOLD PLAINTIFF HE WOULD HAVE SOMEONE ELSE GIVE HIM TEA/COFFEE AND PUT HIS HAND IN FOR NOW.

138) DEFENDANT PETTIJOHN INSTEAD WATCHED AND LISTENED TO DEFENDANT SWENSON VIOLENTLY ATTACK PLAINTIFF, AND LISTEN TO PLAINTIFF CRY OUT FOR HELP AND IN EXTREME PAIN SEVERAL TIMES.

140) PLAINTIFF SUFFERED SEVERE AND EXCRUCIATING PAIN. PLAINTIFFS WRIST, HAND, AND FINGERS (2) FELT LIKE THEY WERE BROKE. PLAINTIFF HAD A GASH AND CUTS, PLAINTIFF WAS BLEEDING, PLAINTIFF WAS BRUISED IN SEVERAL PLACES. PLAINTIFFS INJURIES HURT, THROBBED, AND HURT TO THE TOUCH. PLAINTIFF COULD NOT PICK UP HIS DINNER TRAY WITHOUT CRYING OUT IN PAIN AND HIS HAND AND WRIST FEELING LIKE THEY WERE GOING TO BREAK.

141.) ANOTHER FACT IS THAT DURING PLAINTIFF DISCUSSION WITH DEFENDANT PETTIJOHN IN HIS OFFICE IN A-2 CELLHOUSE ON 9-17-2018 PLAINTIFF SAID THE VIDEO FOOTAGE NEEDED TO BE PRESERVED AND DEFENDANT PETTIJOHN TOLD PLAINTIFF BECAUSE HE'S FILING A INJURY CLAIM THE CAMERA FOOTAGE WILL BE SAVED AND REVIEWED, AND THAT BY LAW IT IS SUPPOSE TO BE SAVED FOR A YEAR OR TWO.

142.) UPON INFORMATION AND BELIEF THE CAMERA FOOTAGE ~~[illegible]~~ EXIST, BUT DEFENDANT SCHNURR IS PLAYING GAMES TO BE DIFFICULT AND HARASS ME AND TO SEE IF I'VE MADE A TIMELY REQUEST FOR THE VIDEO FOOTAGE TO BE PRESERVED OR NOT SO THAT HE CAN AVOID A ISSUE OF SPOLIATION OF EVIDENCE IF I DID, AND IF I DIDNT HE CAN DESTROY THE EVIDENCE WITHOUT CONSEQUENCE.

143.) ALL PLAINTIFF WANTED WAS HIS FOOD AND DRINKS AT DINNER LIKE EVERYONE ELSE GOT, BUT BECAUSE PLF. INFORMED DEF. SWENSON HE'S WRITING HIM UP, PLF WAS PUNISHED IN SEVERAL WAYS, TO DENY A PRISONER FOOD AND DRINKS FOR TELLING STAFF HE'S WRITING A GRIEVANCE AGAINST THEM IS WRONG, UNJUSTIFIED TO DENY PRISONERS DRINKS/FOOD, AND IS AGAINST THE LAW TO RETALIATE AGAINST PLAINTIFF FOR EXERCISING HIS FIRST AMENDMENT

(EXHIBIT-I-13)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

144) DEF. SCHNURR HAD SEVERAL CHANCES TO MAKE ALL OF PLF'S RIGHT, BUT DUE TO THE GIVE STAFF IMMUNITY POLICY/CUSTOM HE DIDN'T. PLF. SENT THE WARDEN THE FACTS, WHICH EXPOSE DEF.'S LIES, BUT THE WARDEN MADE A CHOICE TO IGNORE THEM. LOOK AT EXHIBITS B-23, C-13, D-1, D-16, D-18, D-26, E-14) ALL THESE DOCUMENTS ARE CHANCES THE DEF. SCHNURR HAD TO CORRECT OR CAUSE TO BE CORRECTED THE WRONGS AGAINST PLF., BUT DEF. SCHNURR REFUSED TO DO SO AND INSTEAD LIES AND COVERS FOR GUILTY STAFFS ILLEGAL ACTS/BEHAVIORS AGAINST PLF.

145) IT BEARS MENTION ITS NOT JUST DOCUMENTATION THAT SUPPORTS PLF.'S SIDE OF EVENTS. ITS WITNESSES. STAFF AND INMATE WITNESSES. TWO INMATES SWORN STATEMENTS, (SEE EX B-8, B-9, AND B-10) THEN DEF.(STAFF) UNIT TEAM PETTIJOHN, STAFF'S ALLEGED INVESTIGATION CONCLUDED PLF. WAS IN FACT SUBJECTED TO EXCESSIVE USE OF FORCE (SEE EX. B-7) UNIT TEAM MARKUS L. DAWES) DEF. PETTIJOHN SPOKE ABOUT THE INCIDENT AND HE TOO SAID PLF WAS SUBJECTED TO EXCESSIVE FORCE (SEE EX. I-10 AT 123.) PLF SPOKE TO U.T. DAWES AS WELL AND U.T. DAWES SAID DEF SWENSON WAS OUT OF CONTROL AND HE'S GONNA SUGGEST MY INJURY CLAIM IS APPROVED BECAUSE PLF SHOULD BE GETTING WAY MORE THAN IM ASKING FOR. (SEE EX. I-10 AT 123.)

146) UNIT TEAM MANAGER LLOYD JERSER ALSO STATED DEF USED EXCESSIVE FORCE AGAINST PLAINTIFF (SEE EX. B-1) WHO WAS THE INVESTIGATOR OF MY/PLF. INJURY CLAIM.

147) A STAFF WITNESS TO PLF'S ATTACK TOLD DEF. WARDEN SCHNURR THAT DEF. SWENSON DID IN FACT USE EXCESSIVE FORCE AGAINST PLF. BROWN. (SEE EX. B-7 IN SUPPORT)

148) NUMEROUS INMATES WERE WILLING TO SPEAK TO OFFICIALS ABOUT WHAT THEY HEARD AND/OR WITNESSED IN REGARDS TO PLF.'S ATTACK, BUT OF COURSE THEY WERE NOT QUESTIONED, BECAUSE STAFF/OFFICIALS KNEW PLF WAS ATTACKED, AND SUBJECTED TO ASSAULT, BATTERY, UNNECESSARY EXCESSIVE USE OF FORCE BY DEF. SWENSON.

149) DEF. SCHNURR HAD MORE THAN ENOUGH INFORMATION, DOCUMENTATION, INMATE WITNESSES AND STAFF WITNESSES TO DISCIPLINE DEF. STAFF, AND TO CAUSE PLF. TO HAVE WRONGS AGAINST HIM REMEDIED, BUT FAILED AND/OR REFUSED TO DO SO, AS IS A KDOC/HCF UNWRITTEN POLICY/CUSTOM TO LIE FOR STAFF, COVER FOR STAFF, PROTECT STAFF, AND GIVE GUILTY STAFF IMMUNITY. AND THAT IS WHY DEF. SCHNURR SHOULD BE HELD ACCOUNTABLE FOR HIS OWN INACTIONS, POLICY/CUSTOMS, CORRUPTNESS.

(EXHIBIT-I-14)

RE: DECLARATION UNDER PENALTY OF PERJURY)

150) THE VERY REASON PLF'S CLAIM WAS ALLEGEDLY DENIED IS SUPPOSED TO BE BECAUSE PLF WASN'T BLEEDING, HOWEVER, PLF PROVES HE WAS IN FACT BLEEDING, AS DOES THE PHOTOS TAKEN OF PLF'S HAND, AND INMATES AND STAFF MADE IT CLEAR THAT I WAS BLEEDING, MEDICAL LIED, AND PLF MAKES IT CLEAR IN A GRIEVANCE HE FILED AGAINST MEDICAL (SEE EX. C-1 - C-16) MEDICAL LIED ABOUT EVERYTHING. PLF DID NOT RECEIVE AN X-RAY THE NEXT DAY! PLF DID NOT RECEIVE A FOLLOW-UP APPOINTMENT! PLF DIDN'T GET AN X-RAY UNTIL 10-1-2018, AND ONLY THEN DUE TO PLF CONTINUED EFFORTS TO OBTAIN MEDICAL TREATMENT. (SEE EX. C-4) DEF BAYNHAM FABRICATED MY MEDICAL RECORDS IN AN ATTEMPT TO COVER FOR STAFF'S ILLEGAL ACTIONS AT THE COST OF DENYING ME MEDICAL TREATMENT I NEEDED.

151) THE MENTAL/EMOTION PAIN AND SUFFERING, AND THE ANGER I FEEL DUE TO MEDICAL LYING AND HURTING ME, AND DENYING ME MEDICAL TREATMENT TO PROTECT STAFFS ILLEGAL ACTS/BEHAVIORS AGAINST ME IS CRAZY! I'M THE VICTIM, BUT MEDICAL TREATED ME LIKE I'M THE BAD GUY. IT REALLY PISSES ME OFF THE WAY DEF BAYNHAM KEPT HURTING ME WHEN SHE FINALLY DID LOOK AT MY HAND, AND IF ID OF HAND BUTT DEF BAYNHAM ID OF BEEN LOCKED AT AS IF I'M THE BAD GUY. ITS CRAZY!

152) I CONTINUE TO BE SUBJECTED TO RETALIATION BY DEF BAYNHAM BY BEING DENIED MY NEEDED CHRONIC CARE FOR MY THYROID. MY PROBLEMS ARE COMPOUNDED TEN FOLD, WHICH IS INTENTIONAL RETALIATORY TACTICS TO PUNISH ME FOR EXERCISING MY FIRST AMENDMENT RIGHTS.

153) THE LIES MEDICAL TELL AND THEY DON'T EVEN SEE GOD ARE EVIL AND THEY SHOULD BE HELD ACCOUNTABLE! AND NEED TO BE!

154) D) (1) COUNT IV: DEFENDANT BAYNHAM VIOLATED PLAINTIFF'S RIGHT TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN SHE KNOWINGLY AND INTENTIONALLY DENIED PLAINTIFF ████████ MEDICAL TREATMENT IN AN ATTEMPT TO COVER FOR DEF. SUKNDN ILLEGAL ATTACK AGAINST ME IN RETALIATION FOR WRITING HER UP AND FOR HER POLICY

████████ 155) (2) SUPPORTING FACTS! PLAINTIFF HAS STATED ██████ THE FACTS AND TRUTH IN THE ATTACHED GRIEVANCE DATED 2-8-2019 (EX. C-1 - C-16) AND IN (EX. B-11) AND PLF RESTATES THE SAME HERETO AND INCORPORATES IT INTO THIS COUNT AND SUPPORTING FACTS, AS IF THE SAME WAS STATED FULLY HEREIN. DEF. BAYNHAM WASN'T EVEN

(RE: DECLARATION UNDER PENALTY OF PERJURY) (EXHIBIT-I-15)

LOOKING AT PLF'S INJURIES WHEN SHE ALLEGED PLF INJURIES LOOKED FINE AND TOLD AN OUTRIGHT LIE, AS IS THE UNWRITTEN CUSTOM/POLICY FOR MEDICAL TO LIE FOR STAFF AND FALSIFY MEDICAL RECORDS TO MAKE A INCORRECT MEDICAL RECORD THAT EXTENUATE PLF/PRISONERS INJURIES. MEDICAL HAVE DONE JUST THAT AND WORSE. DEF. HAD OUTRIGHT LIED SAYING PLF WASN'T BLEEDING WHEN PLF WAS, OR THAT PLF INJURIES WERE NOT SERIOUS, AND ALSO LIED ABOUT WHEN PLF DID RECEIVE HIS FIRST OVERDUE X-RAY, DEF. BAYNHAM INTENTIONALLY HARMED PLF WHEN SHE GRABS, POKES, AXIS AND ROUGHLY MOVES AROUND PLF'S INJURED BODY PARTS. DEF. BAYNHAM REFUSED TO LISTEN TO HOW PLF RECEIVED HIS INJURIES AS TO ATTEMPT TO PROTECT STAFFS ILLEGAL ACTS/BEHAVIOR AGAINST PLA. THE DEF SCHNURR COULD HAVE CHECKED VIDEO FOOTAGE OF WHEN PLF WENT TO THE CLINIC FOR X-RAY AND FOUND MEDICAL WAS LYING AND THEIR TIMELINES FOR THOSE X-RAYS WERE WRONG/LIES, BUT DIDN'T DO SO, INTENTIONALLY TO PREVENT A FACTUAL TRUE RECORD FROM BEING MADE OR A RECORD SAYING THAT MEDICAL DID LIE AND WERE WRONG. PLF RECEIVED TREATMENT DAYS/WEEKS LATER ONLY BECAUSE PLF CONTINUED TO FIGHT TO GET IT, BUT X-RAYS IS THE TREATMENT PLF. GOT WELL AFTER THE INJURY OCCURED. PLF WAS MADE TO SUFFER THE PAIN AND NO PAIN MEDS WERE GIVEN OTHER THAN FOR HEADACHES, PLF WAS ACTUALLY INTENTIONALLY HURT BY DEF BAYNHAM FOR FORCING HER TO DISCUSS AND LOOK AT HIS INJURIES, AS SHE WAS MAD AND WAS INTENTIONALLY HURTING PLF IN RETALIATION. AND IT SHOULD BE CLEAR DEF BAYNHAM SAID PLF X-RAYS LOOKED JUST FINE, WHEN AT THAT TIME NO X-RAYS HAD BEEN TAKEN, WHICH PLF POINTED OUT, AND ASKED WHY SHE'S LYING WHICH PISSED HER OFF BECAUSE PLF CAUGHT DEF BAYNHAM UP IN HER LIES, AND SHE KICKED PLF OUT OF THE SICK CALL ROOM, BUT DID ORDER X-RAYS BE TAKEN (FOR THE FIRST TIME) OF PLF INJURIES. [redacted] [redacted] DEF BAYNHAM LIED AGAIN TELLING PLF HIS BONE WAS SO BADLY BRUISED AND CAUSED IT TO INFUSE WITH OTHER BONE (SEE EX (-5) DEF. LIES ARE EXPOSED, BECAUSE IF NOTHING WAS WRONG WITH PLF THEN BONES WOULDN'T OF INFUSED WITH OTHER BONE, PLF DOES NOT BELIEF ANYTHING LYING MEDICAL SAID AND DEMANDS COPIES OF ALL X-RAYS TAKEN. PLF ALSO WAS GIVEN BANDAIDS AND BACITRACIN ANTIBIOTIC BECAUSE PLF

(EXHIBIT-I-16)

(RE: DECLARATION UNDER PENALTY OF PERJURY)

WAS IN FACT BLEEDING. THE MEDICAL RECORDS DEF'S AND MEDICAL HAVE ARE CONTRADICTING BECAUSE THEY ARE LYING AND HAVE GOTTEN CAUGHT UP IN THEIR LIES. THE DEF SCHNURR ALSO REFUSED TO INVESTIGAT DEF BONNIHAM AS PLF REQUESTED IN ORDER TO PROTECT HIM.

PURSUANT TO 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT EXECUTED ON APRIL 13TH 2021.

Christopher David Brown
CHRISTOPHER DAVID BROWN

*EMERGENCY GRIEVANCE* (EXHIBIT-J-1) HCF (COPY)

(FOOD) KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number #57800

Facility HCF-C Housing Unit A-2/147/HCF Work Detail N/A

(HANDWRITTEN COPY) (PAGE-1-of-4)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). ON 4-29-2018, IN A-2 CELLHOUSE, CELL #147 CORRECTIONAL GUARD ANGEL LINDOERFER STRUCK ME IN THE CHEST WITH A MILK AT BREAKFAST TIME, TRIED TO SHOVE THE BREAKFAST TRAY THROUGH THE FOOD PASS HARD AND FAST ENOUGH TO CAUSE IT TO END UP ON THE FLOOR IF I WOULDN'T OF CAUGHT IT, REFUSED TO FEED ME, TOOK MY COFFEE CUP AND BROKE IT, CALLED ME RAT BITCH, DICK SUCKER, PUNK, TAKE IT UP THE ASS, AND REFUSED ME THE PHONE TO MAKE A #50 PHONE CALL, FORM 9'S AND GRIEVANCES TO MAKE A WRITTEN SEXUAL HARASSMENT COMPLAINT, AS WELL OTHER COMPLAINTS OCCURING DURING → → →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 4-29-2018

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

THIS GRIEVANCE WAS RETURNED TO ME, UNANSWERED BY U.T.M. NICKELS, WHICH A MEMO FROM J. JACKSON DATED 5-4-2018 STATED U.T.M WOULD ANSWER. HOWEVER, PER K.A.R. 44-15-101(b) I'M MOVING TO THE NEXT STAGE AT THE WARDEN'S RESPONSE STAGE, AS THE U.T.M. HAS FAILED TO RESPOND IN A REASONABLE TIME.

Unit Team Signature ______ Date ______

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_______ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am not satisfied with the Unit Team ~~response~~, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). ______

Inmate Signature [signature] Date 5-24-2018

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received ______ Date of Final Answer ______ Date Returned to Inmate ______

Inmate's Signature ______ Date ______ Unit Team Signature ______ Date ______

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number ______

Type of Complaint (Item 4: Code 01-75) ______ ______

Cause of Complaint (Item 5: Code 01-30) ______ ______

Type of Response (Item 6a: Code 01,02,08 or 09) ______ ______

(RE: EMERGENCY GRIEVANCE DATED 4-27-2018) (HAND WRITTEN COPY)
(EXHIBIT-J-2)

THIS INCIDENT, REFUSED TO TELL THE LT. OR CAPT. I'M REQUESTING TO SPEAK TO THEM DUE TO EMERGENCY CIRCUMSTANCES, AND/OR THE OIC OF THE CELLHOUSE NOW LOOK, IF GUARDS WANT TO TALK SHIT I CAN TAKE IT AND DISH IT OUT, BUT WHEN STAFF PHYSICALLY TOUCH ME IN RETALIATION AND ANGER I'VE GOT A PROBLEM WITH IT. NOW I HAVEN'T BEEN A PRISONER THAT HAS A RECORD OF BEATING UP STAFF OR STABBING THEM, BUT IT'S NOT A GOOD IDEA FOR MALE OR FEMALE TO INTENTIONALLY PROVOKE ME AND TEST MY LIMITS OF CONTROL, BECAUSE I'LL TELL YOU I FEAR THE POINT AND TIME AT WHICH I SNAP AND SET OUT TO PHYSICALLY HARM STAFF. I HAVE NO PROBLEM WITH A MALE GUARD COMING IN THE CELL, OFF CAMERA, AND ONE ON ONE, FIGHT, BUT IT DOESN'T HAPPEN. MALE STAFF MAKE A PRISONER, ATTACK A PRISONER IN HAND CUFFS, SHOCK/TAZE A PRISONER, AND POISON NUMBERS, SO I'M NOT IMPRESSED, BUT EVEN SO STAFF SHOULD UNDERSTAND INTENTIONALLY PROVOKING A PRISONER, BEING UNPROFESSIONAL AND THINKING NOTHING WILL EVER HAPPEN IS PUTTING THEM AT RISK. AS WELL PUTTING ME AT RISK. NOW THIS WAS ON CAMERA AS THE CAMERA IS RIGHT ON MY CELL AND LINDOERFER NEEDS TO BE HELD ACCOUNTABLE FOR HER ACTIONS. MALE OR FEMALE I'M NOT GONNA ALLOW STAFF TO PHYSICALLY HARM ME TO MANY TIMES. THERE IS NO QUESTION THAT LINDOERFER IS OUT OF CONTROL. SHE TELLS NUMEROUS INMATES THEIR PUNKS, BITCHES, HAVE LITTLE DICKS, THEIR MOM'S SUCK DICK, AND MORE. I'VE SEEN INMATES GET STABBED FOR SAYING SUCH THINGS TO OTHERS. WHY WOULD

→ → →

DO NOT WRITE BELOW THIS LINE

(RE: EMERGENCY GRIEVANCE DATED 4-29-2018) (HAND WRITTEN COPY)

(EXHIBIT-J-3)

ANY STAFF MEMBER THINK THEY CAN TALK TO PRISONERS LIKE THIS WITHOUT CONSEQUENCES UNLESS THE HIGHER AUTHORITIES ARE SUPPORTING THEIR UNPROFESSIONAL/ILLEGAL ACTS/BEHAVIORS AND GIVING STAFF IMMUNITY! A K.DOC. WIDE PRACTICE/PROBLEM, HUTCHINSON IS NOT A PLACE FOR ME AND IM REQUESTING A EMERGENCY TRANSFER TO ANOTHER FACILITY AS I TRULY BELIEVE I WILL NOT FIND ANY POSITIVE RESOLUTIONS AT THIS FACILITY. I ONLY SEE FALURES FOR ME AT THIS FACILITY, SADLY. PRISONS BAD, BUT H.C.F. IS OUT OF CONTROL! I WAS DENIED FOOD AND DRINK AND TOILET PAPER. THESE ARE BASIC NECESSITIES AND VIOLATES THE 8TH AMENDMENT WHEN THEY ARE DENIED, ESPECIALLY WITH NO JUSTIFICATION AND/OR SECURITY REASONS. I SEE WHY THIS STAFF, LINDOERFER, HAS BEEN SPIT ON AND HAD URINE/FECES THROWN ON HER, AND H.C.F HIGHER RANKING OFFICIALS NEED TO REMOVE HER FROM SEGREGATION, WHERE SHES UNABLE TO MISTREAT PRISONERS. SHE SHOULD BE FIRED FOR INTENTIONALLY IGNORING AREA PROCEDURES/PROTOCOLS PER KDOC IMPP 10-103D. NOT TO MENTION BATTERING ME, INTENTIONALLY, BREAKING MY COFFEE CUP, LABELING ME A RAT/REG FOR FILING A AREA COMPLAINT AGAINST HER AND/OR A FORM-9/GRIEVANCE COMPLAINT AGAINST HER, WHICH IS ILLEGAL, AND VIOLATES KAR 44-15-104 REPRISALS PROHIBITED. THE WARDEN NEEDS TO CAUSE THIS GUARD, LINDOERFER, TO BE FIRED AND/OR DISCIPLINED, AND REMOVED FROM A PLACE OF AUTHORITY WHERE SHE HAS TOTAL CONTROL OF PRISONERS LIVES AND WELFARE. NO WAY I SHOULD OF HAD TO GONE HUNGRY! I DONT WANT TO DO SOMETHING THAT ADDS TIME

→ → →

(EXHIBIT J-3)

DO NOT WRITE BELOW THIS LINE

(RE: EMERGENCY GRIEVANCE DATED 4-29-2018) [illegible]

(EXHIBIT-J-4)

TO MY SENTENCE. I DONT WANT TO HURT ANYONE AND I DONT WANT TO BE HURT. CHECK THE CAMERA FOOTAGE, WHICH SHOULD BE PRESERVED FOR FUTURE LITIGATION, AND WILL SUPPORT MY CLAIMS. I HOPE THE ADMINISTRATION DOES THE RIGHT THING AND FIRES THIS LADY BECAUSE MISTREATING PRISONERS DOESNT HELP ANYONE NOW OR LATER AND LINDOERFER IS ABUSIVE!!

---

NOTE: THE WARDEN AND/OR J. JACKSON CLAIMING THIS ISNT AN EMERGENCY SITUATION SUPPORTS HOW CORRUPT KDOC/HCF OFFICIALS ARE, AND THAT THEY PROVIDE STAFF IMMUNITY AND DO NOT HOLD THEM ACCOUNTABLE FOR THEIR ACTIONS AND THAT KDOC/HCF OFFICIALS ALLOW/SUPPORT PRISONERS HARDSHIPS, ILLEGAL TREATMENTS TO EFFECT THE PRISONER FOR UNNECESSARY AMOUNTS OF TIME, AND THE GRIEVANCE PROCEDURE DOESNOT WORK, AND IS NOT FOLLOWED!! NO U.T. SIGNATURE IS ON THE U.T. RESPONSE, AS THE U.T. REFUSED TO ANSWER THE GRIEVANCE AND/OR PROCESS IT, AND THE TIME LIMIT FOR ANSWERING THE GRIEVANCE IS PAST DUE, AND I HOPE THE WARDEN WILL ADDRESS THIS GRIEVANCE AND FOLLOW THE GRIEVANCE PROCEDURES TIME LIMITS, AND RESPOND ACCORDINGLY.

(* SENT INHOUSE [redacted] OFFICIAL MAIL ON 5-24-2018)

(EXHIBIT-J-4)

DO NOT WRITE BELOW THIS LINE

# MEMO

(EMERGENCY GRIEVANCE)

(EXHIBIT-J-5)

Kansas
Department of Corrections
*Hutchinson Correctional Facility*

**Landon State Office Building**
**900 S.W. Jackson St., 4th Floor**
**Topeka, KS 66612-1284**
**(785) 296-3317**
**Fax: (785) 296-0014**
**Email: kdocpub@doc.ks.gov**
**www.doc.ks.gov**

**DATE:** May 1, 2018
**TO:** BROWN, David, #57800
A2-147
**FROM:** J. Jackson
Unit Team Manager
**CC:** M. Nickels UTM
**RE:** Grievance

---

Your grievance submitted on 4-29-18 regarding the treatment you have received from Officer Lindoerfer and denied requests by staff for resolution or assistnace while housed in the segregation unit of HCF-Central was reviewed and determined not to be an emergency situation. It has therefore been forwarded to Unit Team Manager for investigation and response.

J. Jackson UTM
J. Jackson, HCF UTM

(EXHIBIT-J-5)

RE: DENIED BREAKFAST ON 11-3-2018 THAT HAD DIFFERENT COLORED HAIR, NOT MINE ON AND INSIDE MIDDLE OF CINNAMON ROLL. SHOWED CO1 YODER, CS1 CLARK, CO1 FISHER, ALL DENIED ME BREAKFAST. CLARK TRIED TO GIVE ME A TRAY SHE PICKED UP FROM AN INMATE THAT DIDN'T COOK BECAUSE IT WAS TOUCHED BUT CAME OUT A I/M'S CELL, CO1 YODER SAID HE'D TELL SOMEONE, FISHER STATED HAD CARCINOMA

INMATE REQUEST TO STAFF MEMBER

To: U.T.M. NICKELS OF A CH. (page-1-of-3) Date: 12-1-2018

(Name and Title of Officer or Department)

(EXHIBIT-J-6)

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Inmate

(FOOD)

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

Last Name Only: BROWN D.

(PAGE-1-of-3)

KANSAS DEPARTMENT OF CORRECTIONS

Number: # 57800

(PAGE 2-of-3)

## INMATE REQUEST TO STAFF MEMBER

To: U.T.M. NICKELS OF A CH. Date: 11-27-2018

(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

THIS IS A COMPLAINT DUE TO BEING DENIED BREAKFAST ON 11-3-2018 IN A-2 CELLHOUSE CELL # 227 AT HUTCHINSON CORR. FAC. BY CO1 YODER, UPON INFORMATION AND BELIEF. THE CAMERA'S CAN BE REVIEWED TO VERIFY THAT WAS THE GUARDS NAME THAT SERVED THE BREAKFAST ON THE 2 WALK ON THE ODD SIDE. I HAD HAIR THAT IS A DIFFERENT COLOR THAN MY HAIR, SO IT WASN'T MINE. WHEN I NOTICED IT I STOPPED EATING, AND DIDN'T EAT THE MAIN COURSE, WHICH WAS A CINNAMON ROLL →

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer:

Disposition:

To: (Name & Number) Date:

Disposition:

Employee's Signature

To be returned to inmate.

(RE: PAGE-2-OF-3 TO FORM-9 DATED 11-27-2018)
(EXHIBIT-J-7)

AND WHERE THE HAIR WAS LOCATED. ON AND INSIDE THE MIDDLE OF THE CINNAMON ROLL. CO1 YODER SAID, "I HAD A HAIR NET ON" AND I SAID, "THATS GOOD, YOU SHOULD, BUT EVEN SO, I STILL HAVE A UNEATEN BREAKFAST TRAY, IM SHOWING YOU THAT, AND IM SHOWING YOU THE HAIR, THATS NOT MINE, AND I NEED ANOTHER TRAY." CO1 YODER SAID, "ILL SEE, ILL LET SODORE KNOW ABOUT IT," AND LEFT MY CELL. ANOTHER STAFF MEMBER PICKED UP BREAKFAST TRAYS, CS1 CLARK, AND WHEN I TOLD HER WHAT CO1 YODER SAID, CS1 CLARK SAID, "SHE DOESN'T KNOW ANYTHING ABOUT IT, AND SHE'S JUST HELPING OUT PICKING UP TRAYS." THEN CS1 CLARK ASKED IF I WANTED A TRAY SHE'D PICKED UP, AND I SAID, "WAS IT IN SOMEONE'S CELL?", AND CS1 CLARK SAID, "YES, BUT IT DOESN'T LOOK LIKE THEY TOUCHED ANYTHING." I SAID, "NO, I'D LIKE A TRAY THAT ANOTHER INMATE DIDNT TAKE AND HAVE IN HIS CELL" AND FOR THE RECORD, NOT ONLY THAT BUT THE TRAY WAS STACKED ON OTHER DIRTY TRAYS CS1 CLARK HAD PICKED UP FROM OTHER INMATES, AND ITS CRAZY CS1 CLARK WOULD EVEN OFFER ME THE SAME TRAY THAT ANOTHER INMATE HANDLED, AND HAD IN HIS CELL, AND THEN THE TRAY WAS STACKED BETWEEN SEVERAL OTHER DIRTY TRAYS. IT GOES TO SHOW HOW NASTY AND UNSANITARY THE SEGREGATION UNITS FOOD SERVICE IS. AND I NEVER GOT ANOTHER TRAY AND WAS DENIED MY BREAKFAST. ONCE THE NEXT SHIFT ARRIVED CO1 FISHER WAS WALKING BY AT APPROX: 7:00AM. I SHOWED HIM THE UNEATEN TRAY, AND THE HAIR, AND SINCE THIS IS A SEGREGATION UNIT, THE KITCHEN IS STILL SERVING BREAKFAST, AND I CAN GET ANOTHER TRAY. FOR THE RECORD, CS1 SODORE, CS1 CLARK AND CO1 YODER ARE ALL IN VIOLATION OF REFUSING TO FEED ME BREAKFAST ON 11-3-2018 THAT DOESN'T HAVE HAIR IN IT, ANOTHER MEAL IVE BEEN REFUSED FOR NO →

(RE: PAGE-3-OF-3 TO FORM-9 DATED 11-27-2018)
(EXHIBIT-J-8)

JUSTIFICATION. JUST BECAUSE I DONT WANT TO EAT SOMEONE ELSES HAIR. COI FISHER IS ALSO GUILTY OF DENYING ME BREAKFAST. WHEN I ASKED HIM WHY HE NEVER BROUGHT ME A BREAKFAST TRAY COI FISHER SAID, "I CALLED ARAMARK (FOOD SERVICE) AND THEY SAID NO" I SAID, "WHAT DO YOU MEAN THEY SAID NO, IVE GOT THE UNEATEN FOOD STILL ON THE TRAY WITH THE HAIR STILL ON THE FOOD, SO WHY DID THEY SAY NO?" COI FISHER SAID, "I DONT KNOW, YOU KNOW HOW ARAMARK IS", I ASKED COI FISHER WHO HE SPOKE TO AND HE SAID, "I DONT KNOW, SOME GUY A NEW GUY WITH A BEARD."

THE WHOLE SITUATION MAKES ME SICK. COI FISHER ACTS LIKE JUST BECAUSE ARAMARK SAYS NO HE COULDNT OF WALKED OVER TO THE KITCHEN AND GOT ME A BREAKFAST TRAY, THEN WHEN I ASKED FOR ANOTHER LUNCH SACK HE SAID NO, YET THERE WERE SEVERAL EXTRAS. WHY IS IT SUCH A BIG DEAL TO EAT FOOD THAT ANOTHER INMATE HASNT TOUCHED AND HAD IN HIS CELL? WHY IS IT SUCH A BIG DEAL TO EAT FOOD WITHOUT SOMEONES HAIR IN IT? WHY ISNT IT A BIG DEAL WHEN A PRISONER IS REFUSED TO EAT A MEAL? WHY DOESNT GUARDS SERVING THE FOOD/DRINKS HAVE SOME RESPECT FOR HYGIENE AND SANITATION WHEN SERVING PRISONERS IN SEGREGATION UNITS?

EVERYONE INVOLVED SHOULD BE ADDRESSED/CORRECTED AND ALL SEGREGATION UNIT STAFF SHOULD TAKE A COURSE OF FOOD/DRINK FOOD SERVICE SANITATION. AND I SHOULD NEVER BE DENIED TO EAT A MEAL BECAUSE I REFUSE TO EAT SOMEONE ~~[illegible]~~ ELSES HAIR!!

RE: SST G. JONES / COI JACKSON REFUSED ME VEGETABLES ON COMMON FARE TRAY ON 12-25-2018 FORGOT, NEXT ROUND SST G. JONES IS GONE, GEESE CHIEF NEXT TIME HE WORKS LEFT 3 TIMES LATER HE FORGETS (PAGE-1-OF-3) TO GIVE ME SOMETHING ANOTHER EXAMPLE OF STAFF IN SEG UNITS NOT GIVING FOOD

INMATE REQUEST TO STAFF MEMBER

To: U.T.M. NICKELS OF A-CH. Date: 12-31-2018

(Name and Title of Officer or Department)

YOUR SUPPOSED TO HAVE IT YOU DONT GET IT WHEN YOU GET YOUR TRAY AND THEY DENY YOU FOOD/MENU IN RETALIATION AS WELL (12-31-2018)

[signature] CO1

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Inmate

(FOOD)

(EXHIBIT-J-9)

**Form 9**
For Cellhouse Transfer
Work Assignment ______
Interview Requests

BROWN
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE-1-OF-3)

57800
**Number**

**INMATE REQUEST TO STAFF MEMBER**

**To:** U.T.M. NICKELS OF A-CH. **Date:** 12-31-2018

**(Name and Title of Officer or Department)**

**State completely but briefly the problem on which you desire assistance. (Be specific.)**

ON 12-25-2018 SST G. JONES AND COI JACKSON REFUSED TO FEED ME THE FOOD I WAS SUPPOST TO GET ON MY TRAY PER THE MENU. I INFORMED SST G. JONES IM MISSING THE VEGETABLE ON MY TRAY. SST G. JONES LOOKED AT THE OTHER COMMON FARE TRAYS AND SAID THEY ARE ALL LIKE THAT. I SAID, "THAT MEANS THEY ARE ALL MESSED UP AND ALL OF THEM ARE MISSING FOOD. SST G. JONES SAID HE'D CALL AND CHECK INTO IT. SST G. JONES PASSED OUT → ⇒

Work Assignment: N/A Living Unit Assignment: A-2/227/ HCF

Comment: ______ Detail or C.H. Officer: ______

Disposition:

GOT BACK 1-7-2019

To: ______ Date: ______

(Name & Number)

Disposition: We spoke with them about this

[signature]

Employee's Signature

**To be returned to inmate.**

**P-0009**

(12-31-2018)

(RE: FORM-9 DATED 12-30-2018)

(EXHIBIT-J-10)

THE FOOD TRAYS, BUT DID NOT COME BACK. I YELLED FOR A C.O. TO COME TO 227, BUT AS USUAL WAS IGNORED. A COUPLE INMATES DOWN STAIRS CLOSER TO THE OFFICE ALSO YELLED THAT 227 NEEDS TO SEE SOMEONE ABOUT THE FOOD HE DIDN'T GET, AND THEY WERE IGNORED AS WELL. AT TRAY PICK UP I ASKED COL JACKSON WHERE THE REST OF MY FOOD IS. COL JACKSON SAID HE DOESN'T KNOW ANYTHING ABOUT IT BUT WOULD TALK TO SST G. JONES AS SOON AS HE GOES DOWN STAIRS. LATER WHEN COL JACKSON WAS DOING A SECURITY CHECK I STOPPED HIM AND ASKED HIM WHERE MY FOODS AT, AND COL JACKSON SAID, "OH MAN I FORGOT, I'LL GO TALK TO HIM AS SOON AS I'M DONE WITH MY ROUND". COL JACKSON LEFT, AND LATER WHEN HE CAME BACK BY I ASKED HIM WHATS UP ON MY FOOD AND HE TELLS ME, "THE KITCHENS CLOSED, AND SST G. JONES WAS GONE AND HE COULDN'T TALK TO HIM". THIS IS YET ANOTHER EXAMPLE OF STAFF IN SEG UNITS BEING LAZY, AND OF A PRISONER NOT GETTING FOOD/DRINK THEIR SUPPOST TO AND STAFF PLAYING GAMES ABOUT IT. I EVEN TOLD COL JACKSON LOOK GIVE ME A EXTRA LUNCH SACK TOMORROW OR A BAG OF CHIPS, AND HE SAID HE WOULD, PROMISED HE WOULD WHEN HE'S WORKING, YET 3 DIFFERENT TIMES HE'S WORKED IN SEG UNIT A-2 AND "FORGETS" TO GIVE ME SOMETHING. THE FACT IS ONCE YOU GET SERVED A TRAY OR LUNCH SACK, IF YOU DON'T HAVE WHAT YOUR SUPPOST TO GET, EVEN IF YOU REPORT IT IMMEDIATELY, NINE TIMES OUT OF TEN YOU WON'T GET WHAT YOUR SUPPOST TO HAVE BEEN SERVED/FED IN THE FIRST PLACE PER THE AUTHORIZED K.D.O.C. MENU'S. ITS A SERIOUS PROBLEM, NOT ONLY DO →→

(12-31-2018)

(RE: FORM-9 DATED 12-30-2018)

(EXHIBIT-J-11)

SEG UNIT/LONG TERM HOUSING UNIT STAFF PLAY GAMES, LIE, ARE TO LAZY TO GET THE FOOD/DRINK A PRISONER IS SUPPOST TO HAVE, BUT THEY WILL INTENTIONALLY DENY YOU A FOOD TRAY OR LUNCH SACK IN RETALIATION TO CAUSE A PRISONER TO SUFFER, BECAUSE ONCE STAFF CLOSE THE FOOD PASS DOOR YOUR NOT GONNA GET ANYTHING UNLESS THEY DECIDE TO GET IT FOR YOU. THIS NEEDS TO CHANGE! IT HAPPENS ALL THE TIME! I COULDNT EVEN GET MY MEDICAL DIET FOOD/DRINK FROM LONG TERM SEG UNIT STAFF MEMBERS, WHICH IVE FILED SEVERAL FORM-9'S AND GRIEVANCES ABOUT BUT UNIT TEAM HURT DESTROYED MOST OF THOSE COMPLAINTS TO PROTECT STAFF UNPROFESSIONAL ILLEGAL ACTS/BEHAVIOR AS IS THE USUAL PRACTICES FOR KDOC STAFF. LET THE RECORD REFLECT ONCE AGAIN SGT G. JONE AND CO1 JACKSON REFUSED ME MY DINNER MEAL. STAFF ARE NOT SUPPOSE TO USE FOOD TO HARASS PRISONERS OR PUNISH PRISONERS AND THEY NEED TO BE MADE TO ENSURE PRISONERS GET THEIR FOOD/DRINK OR NOT FEED THEM AT ALL AND HAVE ARAMARK KITCHEN WORKERS COME TO LONG TERM SEG UNITS TO FEED PRISONERS JUST LIKE IN POPULATION. IT ALL NEEDS TO BE ADDRESSED! NOTE: ON 2-7-2019 WENDY SAID SHE NEVER GOT THE KOP REFILL REQUEST FORMS. SUPPORTING MY CLAIMS! JAZMIN SHOULD BE HELD ACCOUNTABLE!!

(PAGE-3-OF-3)

(FOOD)

(EXHIBIT-J-12)

HCF (71)

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number 57800

Facility HUTCHINSON CORR. FAC. Housing Unit A-2/227 Work Detail N/A

(PAGE-1-OF-3)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member) (ATTACHED IS A FORM 9 DATED 2-29-2020)

I'VE STATED MY COMPLAINTS IN THE ATTACHED FORM 9 AND I RESTATE THEM AS IF THEY WERE STATED FULLY HEREIN THIS GRIEVANCE. CLEARLY I'M NOT GOING TO GET A RESOLUTION TO THIS INCIDENT OR OTHERS LIKE IT, AS UNIT TEAM STAFF CONTINUES TO LIE FOR GUILTY GUARDS AND GIVE GUILTY GUARDS IMMUNITY, AND BY MAKING FALSE STATEMENTS IN HIS RESPONSE TO MY FORM 9 LIKE CLAIMING I WAS REFUSING TO ALLOW THE FOOD PASS DOOR TO BE CLOSED, WHEN IN FACT I WAS FORCED TO PUSH THE FOOD PASS DOOR OPEN TO KEEP C/O BACON FROM INTENTIONALLY SLAMMING THE FOOD PASS DOOR AGAINST MY HAND AND MY FINGERS. C/O BACON NEVER GAVE ANY WARNING THAT SHE WAS GOING TO SLAM THE FOOD PASS DOOR CLOSED. C/O BACON DIDN'T SIMPLY TRY TO CLOSE THE FOOD PASS DOOR, BUT →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 3-10-2020 (71)

RE: C/O BACON

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

As stated, this has been addressed with Staff on a supervisory level as well as being addressed by RHU Lt. St[illegible]. Any result or corrective action to come from these interactions will not be disclosed to offenders.

B. [signature] UTS 3/18/2020

Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). ____

[signature] 3-18-2020

Inmate Signature Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received 3-30-20 Date of Final Answer 3-31-20 Date Returned to Inmate 4-3-2020

[signature] 4-3-2020 U.T. STAFF REFUSED TO SIGN A-2/227/HCF 4-3-2020

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number BA00018482

Type of Complaint (Item 4: Code 01-75) 5 4

Cause of Complaint (Item 5: Code 01-30) 0 1

(EXHIBIT-J-13)

RE: GRIEVANCE (71) / PAGE-2-OF-3 ) (REF/(71))

INSTEAD SLAM THE METAL FOOD PASS DOOR AGAINST MY HAND, WHICH C/O BACON DID OUT OF ANGER DUE TO THE FACT THAT I BROUGHT TO HER ATTENTION THAT SHE DUMPED FOOD FROM A OPEN LUNCH SACK ON MY FLOOR, NOT ARAMARK, SO HER SAYING ARAMARK SENT THAT SACK LUNCH THAT WAS OPEN IS IRRELEVANT, WHICH REALLY UPSET C/O BACON, AS STAFF LIE ON A REGULAR AND SAY THINGS TO TRY AND JUSTIFY THEIR DISRESPECT AND MISTREATMENT THAT MAKE NO SENSE WHATSOEVER AND WHEN I SAY AS MUCH STAFF GET VERY UPSET. EVEN SO, LET THE RECORD REFLECT UNIT TEAM GRAFF'S MISDIRECTION ATTEMPT. IF UNIT TEAM GRAFF FEELS THAT I SHOULD OF ALLOWED C/O BACON TO SLAM THE FOOD PASS DOOR ON MY HAND TO KEEP THE SITUATION FROM ESCALATING IT WOULDN'T SURPRISE ME, BUT I DIDNT ESCALATE ANYTHING. IF UNIT TEAM GRAFF WOULD MAKE AN EFFORT TO CAUSE THE WARDEN TO MAKE CORRECTIVE ACTIONS C/O BACON WOULD OF BEEN WEARING A HAIR NET AND GLOVES WHEN SHE CAME BACK WITH ANOTHER LUNCH SACK, BUT BECAUSE STAFF ARE NOT HELD ACCOUNTABLE FOR VIOLATING FOOD SANITATION PRACTICES AND/OR POLICIES, C/O BACON REFUSED TO FEED ME WHICH WAS DONE IN RETALIATION BECAUSE I SAID I'M WRITING YOU UP, THATS WHY SHE REFUSED TO FEED ME. BUT AS FAR AS U.T. GRAFF'S RESPONSE TO MY FORM 9 I'M NOT THE ONE THAT ESCALATED THE SITUATION, AND THATS SUPPORTED DUE TO THE FACT THAT I DIDN'T CUSS C/O BACON OUT, DIDNT YELL AND SCREAM, EVEN THOUGH, AND THE SITUATION NEVER SHOULD HAVE OCCURED AT ALL IN THE FIRST PLACE! NO STAFF/GUARD SHOULD GIVE ANY PRISONER A OPEN LUNCH SACK AND THEN DUMP IT ON MY CELL FLOOR! AND U.T. GRAFF CLAIMS THE SITUATION WASN'T RESOLVED DUE TO MY ADDED CONFLICT. THATS SAD. I GUESS I'M JUST SUPPOSE TO PICK UP ALL THE FOOD OFF THE CONCRETE FLOOR AND EAT LIKE AN ANIMAL, AND I JUST SHOULD OF LET ANOTHER ABUSIVE GUARD TO SLAM MY HAND IN THE FOOD PASS, AND I SHOULDN'T MENTION ANYTHING ABOUT STAFF NOT WEARING GLOVES OR HAIR NET WHEN HANDLING MY FOOD AND DRINKS, AND I SHOULDNT SAY ANYTHING TO STAFF WHEN THEY CALL ME AN A** HOLE SEVERAL TIMES. YEAH, I CAN →

NEXT PAGE → →

(EXHIBIT-J-14)

RE: GRIEVANCE (71) / (PAGE-3-OF-3) HCF/(71)

CAN SEE HOW I CAUSED THE PROBLEM (NOT) BUT THATS HOW U.T. GRAFF AND OTHER UNIT TEAMS RESPOND TO FORM 9'S/GRIEVANCES AND BECAUSE ITS A RUBBER STAMP REPLY SYSTEM THE WARDEN AND SECRETARY WILL NOT RESPOND TO ANYTHING DIFFERENT FROM WHAT THE UNIT TEAM SAYS. NO MATTER, LET THE RECORD REFLECT THE FACTS. ANOTHER GUARD DENIED TO FEED ME WITHOUT ANY JUSTIFICATION BUT INSTEAD DONE IN RETALIATION. AND SUPERVISORS ADDRESSING ANOTHER DOESNT CORRECT OR RESOLVE ANYTHING, WHICH U.T. GRAFF KNOWS. THE WARDEN NEEDS TO FIRE ANY SICKO GUARD THAT PUNISHES A PRISONER FOR SAYING THEIR GOING TO WRITE THEM UP, OR FOR FOR HAVING FOOD SANITATION CONCERNS. THE WARDEN SHOULD ENSURE A UNIT TEAM RESPONDS HONESTLY AND NOT TO ATTEMPT TO COVER FOR STAFF AND CAUSE A SMOKE SCREEN AND MISDIRECT THE FACTS IN THE COMPLAINT. AND THE WARDEN SHOULD CAUSE A COMPLAINT TO BE RESOLVED DUE TO CORRECTIVE ACTION BEING TAKEN AND NOT JUST CALLING WRITING DOWN IT WAS ADDRESSED ON A SUPERVISORY LEVEL, BECAUSE THAT IS NOT CAUSED STAFF TO ACT OR DO ANYTHING DIFFERENT FROM WHAT THEY DID TO CAUSE THE COMPLAINT TO BE NECESSARY.

(( V V/(EXHIBIT-J-15) HCF(71)

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

KANSAS DEPARTMENT OF CORRECTIONS

(PAGE-1-OF-4)

57800
Number

OFFENDER REQUEST TO STAFF MEMBER

To: UNIT TEAM GRAFF Date: 2-29-2020 (71)
(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

THIS AFTERNOON C/O BACON CAME TO MY ASSIGNED CELL WITH THE LUNCH SACKS, PUT AN OPENED LUNCH SACK ON MY FOOD PASS DOOR AND PUSHED IT TOWARDS ME CAUSING THE FOOD INSIDE THE BAG TO DUMP OUT ON MY CELL FLOOR. I SAID "HEY, WHAT THE HELLS YOUR PROBLEM?!" I PICKED UP ALL THE FOOD AND PUT IT BACK ON THE FOOD PASS DOOR AND C/O BACON SAID, "THAT'S HOW ARAMARK SENT IT IT'S →

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer:

Disposition:

To: Date: 3/10/2020
(Name & Number)

Disposition: This has been addressed with staff on a supervisory level. By your own record of events your immediate response verbally and refusal to allow the food port to close escalated the situation prior to allowing the situation to be corrected or attempting to resolve the issue calmly without the added conflict.

[signature] UTC
Employee's Signature

To be returned to offender.

P-0009

(EXHIBIT-J-16)

(RE: FORM-9 DATED 2-29-2020 / PAGE-2-OF-4) HCF/(71.)

NOT MY FAULT" I SAID, "IT IS YOUR FAULT BECAUSE YOU SAW THE BAG WAS OPEN AND DUMPED THE FOOD ON MY CELL FLOOR SO ARAMARK DONT HAVE NOTHING TO DO WITH ANYTHING." C/O BACON TRIED TO CLOSE THE FOOD PASS DOOR ON MY HAND AND I SAID, "HOLD ON, AND PUSHED IT OPEN, AND SAID GIVE ME MY JUICE AND A LUNCH SACK." C/O BACON YELLED AT ME SAYING, "DONT DO THAT AGAIN!" AND SLAMS THE FOOD PASS DOOR CLOSED, I SAID, "WHERES MY LUNCH?!" C/O BACON SAID, "I DONT HAVE ANOTHER LUNCH ILL BE BACK." I SAID, "THEN SAY THAT AND LET ME KNOW WHATS GOING ON INSTEAD OF TRYING TO SLAM [redacted] THE FOOD PASS DOOR ON MY HAND, DON'T YOU DO THAT AGAIN." C/O BACON SAID YOU DONT EVER DO THAT AGAIN," I SAID "DO WHAT?!" PICK UP THE FOOD ON THE FLOOR AND GIVE IT BACK TO YOU!, PUSH THE FOOD PASS DOOR OPEN TO KEEP YOU FROM BATTERING ME? OR BECAUSE [redacted] I NEEDED MY DRINK AND LUNCH?" C/O BACON LEFT. C/O BACON CAME BACK TO MY CELL KNOCKED ON THE CELLDOOR AND I GOT UP WALKED UP TO THE CELL DOOR TO GET MY LUNCH AND C/O BACON WALKS AWAY WITH MY LUNCH IN HER HANDS. C/O BACON WALKS WAY DOWN THE RUN PLAYING GAMES LIKE SHE DIDNT KNOW WHERE I WAS, BUT SHE CAME TO MY CELL DOOR AND KNOCKED ON IT, CLEARLY C/O BACON KNEW WHERE I WAS. I STARTED BANGING MY CUP ON THE DOOR HOPING THE O.I.C. (OFFICER IN CHARGE) WOULD COME TO INVESTIGATE, BUT INSTEAD C/O BACON SHOWS UP IN FRONT OF MY CELL #227 AND SAYS, "ARE YOU DONE BEING AN A** HOLE?" I SAID IM WRITING

NEXT PAGE → → →

(EXHIBIT- J-17)

(RE: FORM-9 DATED 2-29-2020 / PAGE-3-OF-4 ) KEF (71)

YOU UP, YOU WANNA COME KNOCK ON MY DOOR AND I COME TO THE DOOR AND YOU WALK AWAY PLAYING GAMES, WHATS YOUR PROBLEM?!" C/O BACON SAYS I COULDNT SEE YOU" I SAID, "YEAH RIGHT, ALL OF A SUDDEN, YOU CANT SEE, THEN WHY DIDNT YOU SAY ANYTHING?" C/O BACON SAID, "ARE YOU DONE BEING AN A** HOLE" I NOTICED C/O BACON NO LONGER HAD GLOVES ON AND I SAID, "HOW COME YOU DONT HAVE GLOVES ON?" I ALSO NOTICED C/O BACON DIDNT HAVE MY DRINK AND I SAID, "WHERES MY DRINK?" C/O BACON SAID, "IM DONE DEALING WITH YOU!" AND WALKED AWAY WITHOUT GIVING ME MY LUNCH FOOD OR DRINK. C/O BACON IS IN VIOLATION OF FOOD SANITATION BY NOT HAVING GLOVES ON, BY ATTEMPTING TO GIVE ME AN OPEN LUNCH SACK, BY ATTEMPTING TO DUMP MY FOOD ON THE FOOD AND FORCE ME TO ACCEPT AND EAT THAT FOOD BY QUICKLY TRYING TO CLOSE MY FOOD PASS DOOR. C/O BACON IS IN VIOLATION OF IMPP 02-118D III RULES OF CONDUCT BY CALLING ME AN A** HOLE, BY ATTEMPTING TO BATTER ME WITH THE FOOD PASS DOOR, BY CREATING A HOSTILE WORK ENVIRONMENT, BY REFUSING TO FEED ME BECAUSE I SAID HOW COMES SHES NOT WEARING GLOVES, AND BY HER DISRESPECT AND INTENTIONALLY ATTEMPTING TO PROVOKE ME, BY KNOWINGLY ATTEMPTING TO GIVE ME AN OPEN LUNCH SACK, BY DUMPING FOOD ON MY CELL FLOOR INTENTIONALLY AND NOT SAYING

NEXT PAGE → →

(EXHIBIT-J-18)

FORM-9 DATED 2-29-2020 / PAGE-4-OF-4 ) HCF (71)
SORRY OR MY BAD OR OPPS EVEN, BY PLAYING CHILDISH GAMES KNOCKING ON MY CELLDOOR AND ONCE I GOT UP AND STOOD IN FRONT OF THE DOOR C/O BACON SAID NOTHING BUT INSTEAD SMILES AND WALKS AWAY, AND FOR ALL OF THE ABOVE REASON I'M SUBMITTING THESE COMPLAINTS. AND IT BEARS MENTION, C/O BACON AND I HAVEN'T HAD ISSUES IN THE PAST, BUT WORKING WITH C/O BEARDSLEY I BELIEVE WOULD EXPLAIN HER INTENTIONAL ACTS TO CAUSE ISSUES WITH ME. EVEN SO, HER ACTIONS ARE ILLEGAL, UNSANITARY, AND VERY UNPROFESSIONAL AND SHE SHOULD BE HELD ACCOUNTABLE FOR SUCH.

(EXHIBIT-J-19)

(COPY) HCF/(71)

Kansas
Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson KS 67504-1568

Phone (620) 625-7238
Fax (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 3/31/2020

TO: Brown, David #57800
A2-227

SUBJECT: Grievance #BA00018482

FROM: Dan Schnurr, Warden
HUTCHINSON CORRECTIONAL FACILITY

FINDING OF FACTS: In your grievance, you claim that staff put an opened lunch sack on the food pass door, resulting in the food to fall on the floor.

CONCLUSIONS MADE: I have reviewed your grievance and UTS Graff's response. I agree with his response.

The issue that you have brought to our attention in this particular grievance has been addressed with staff on a supervisory level. Facility staff is addressing this and other concerns you have brought to our attention appropriately. Since the incident that you have addressed in your grievance, cell house staff have not been informed that the issues are continuing.

Continue to work with UTS Graff and/or UTM Bell to address your issues within the cell house, as they are more than capable in addressing your concerns.

ACTION TAKEN: None warranted. This is my final answer to you on this matter. Any subsequent grievances received from you concerning this subject shall be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

D. Schnurr

Dan Schnurr
HCF, Warden

DS/JB
cc: Unit Team Manager

(EXHIBIT-J-20)

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

EF/ (71)

Inmate Name: DAVID BROWN Facility: HUTCHINSON CORR. FAC.

Inmate Number: 57800 Grievance Serial No. DA00018482 (71)

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO: Secretary of Corrections
Landon State Office Building
900 Jackson, 4th Floor
Topeka, Kansas 66612

Date Mailed: 4-5-2020 (71)

(PAGE-1-OF-2)

RECEIVED
APR - 9 2020
DOC Facility Management Area

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) IVE STATED MY COMPLAINTS IN THE ATTACHED FORM-9 AND GRIEVANCE AND I RESTATE THOSE FACT/COMPLAINTS NOW HEREIN THIS GRIEVANCE APPEAL AS IF THEY WERE STATED FULLY HEREIN. THE SECRETARY NEEDS TO CAUSE STAFF TO BE HELD ACCOUNTABLE AND STAFF SHOULD WEAR HAIRNETS AND GLOVES WHEN HANDLING PRISONERS FOOD AND DRINKS. AND STAFF HELD ACCOUNTABLE FOR DENYING ME A MEAL IN RETALIATION, AND SUBJECTING ME TO A FORM OF TORTURE. ITS A PATTERN OF BEHAVIOR BY KDOC/HCF

David Brown
Signature of Inmate

NEXT PAGE →

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)
If applicable - Confidential File No. ________

Date Received in Office of Secretary of Corrections: ________________

Date of Final Answer: ________________ Date Sent to Inmate: ________________

Finding of Fact:

Conclusions Made:

Action Taken:

________________________
Signature of Secretary of Corrections

**For D.O.C. Staff Use Only**

Type of Response (Item 6b: Code Ø1, Ø2, Ø8 or Ø9) ___

DC Ø9Ø, Effective May 1, 1988

P-157a

(EXHIBIT-J-21)

(RE: GRIEVANCE APPEAL (71) / PAGE-2-OF-2) HCF / (71)

STAFF TO DENY PRISONERS/ME FOOD/MEALS TO PUNISH ME, FOR INVOKING THE GRIEVANCE PROCEDURE, AND THE SECRETARY NEEDS TO CAUSE THIS TO STOP IMMEDIATELY. I DIDN'T REFUSE MY FOOD AND THERE WAS NO SECURITY JUSTIFICATIONS TO REFUSE ME ME LUNCH MEAL, BUT THIS GUARD DID SO BECAUSE I MENTIONED SHE WAS NOT WEARING A HAIR NET OR GLOVES, AND I STILL DIDN'T REFUSE MY MEAL, I JUST COMMENTED ON THE FACT AND STATED I WAS WRITING HER UP AND I WAS RETALIATED AGAINST AND PUNISHED AND DENIED MY MEAL. THIS IS CRUEL AND UNUSUAL PUNISHMENT AND ILLEGAL AND THE SECRETARY NEEDS TO MAKE SERIOUS CORRECTIVE ACTIONS SO IT DOESN'T HAPPEN AGAIN AND AGAIN, WHICH IT IS AND [illegible].

(EXHIBIT-J-22) HCF / (71)

# Grievance-Response on Appeal

**FACILITY:** **Hutchinson Correctional Facility**

**INMATE:** **0057800 BROWN, DAVID** A2227

**GRIEVANCE NO.:** **BA00018482**

**DATE:** **April 9, 2020**

**FINDINGS OF FACT**

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

**CONCLUSIONS MADE**

The response rendered to the inmate by staff at the facility is appropriate.

**ACTION TAKEN**

None further.

**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc: Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on ___________.

RE: DENY ME MEALS KUHNS/PETTSEX/BEMOSLEY/WALKER/LINDORFER/RETENTION/ HCF (FOOD) (72)

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

(EXHIBIT-J-23)

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number 57800

Facility HUTCHINSON CORR. FAC. Housing Unit A-2 Work Detail N/A/O.S.R.

(PAGE-1-OF-2)

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). (ATTACHED IS A FORM-9 DATED 3-5-2020) I'VE STATED MY COMPLAINTS, AND I RESTATE THEM FULLY HERE IN THIS GRIEVANCE, AS IF STATED FULLY HERE. H.C.F. STAFF NEED TO BE HELD ACCOUNTABLE FOR RETALIATING AGAINST ME/PRISONERS, FOR EXERCISING MY/THEIR FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR A REDRESS OF MY GRIEVANCES eg. FILING FORM-9'S/GRIEVANCES. BY DENYING ME/PRISONERS THEIR MEALS, BREAKFAST, LUNCH, OR DINNER. THAT IS NOT ONLY A FORM OF ILLEGAL RETALIATION, BUT ALSO A FORM OF TORTURE - SO MANY TIMES KDOC/H.C.F. STAFF HAVE DENIED ME [redacted] BREAKFAST LUNCH AND DINNER MEALS TO PUNISH ME FOR WRITING STAFF UP OR SAYING I'M GOING TO WRITE STAFF UP. AS IT WAS DONE RECENTLY BY → →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 3-18-2020 (72)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

As stated, these concerns have been previously addressed and the staff involved have been addressed on a supervisory level. The outcome of this will not be disclosed to offenders.

B. A[signature] UTS 3/26/2020

Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

___ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am (not) satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). 3/27/2020

David Brown [signature] 3-26-2020

Inmate Signature Date

RETURNED TO UTC ON 3/26/2020 UNIT FWD ON 3/27/HCF

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received 3-31-20 Date of Final Answer 4-2-20 Date Returned to Inmate 4-6-2020

R

David Brown [signature] U.T. C. GRAFF REFUSED TO SIGN 4-6-2020

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number BA00018488

Type of Complaint (Item 4: Code 01-75) 5 4

Cause of Complaint (Item 5: Code 01-30) 0 1

Type of Response (Item 6a: Code 01,02,08 or 09) 0 8

(EXHIBIT-J-24)

(RE: GRIEVANCE (72) / PAGE-2-OF-2) KG/(72)

CSI KMINS AND C/O PETTSEN. IT ALSO HAPPENED WITH C/O BEARDSLEY, C/O WALKER, C/O LINNEFER, C/O BACON, CSI PETERSON, AND OTHERS. ITS IMPORTANT TO UNDERSTAND EACH TIME I DID NOT REFUSE TO EAT, DID NOT REFUSE MY LUNCH SACK OR FOOD TRAY. HOWEVER, EACH TIME IVE BEEN DENIED A MEAL, I TOLD STAFF IM GOING TO WRITE THEM UP FOR CUSSING ME OUT, BAITING ME, CALLING ME NAMES, LABELING ME A RAT/SNITCH, AND SEXUALLY HARASSING/ABUSING ME, AND IN RESPONSE STAFF DENIED ME THE MEAL. I NEVER DID ANYTHING TO JUSTIFY STAFF REFUSING TO FEED ME. NO SECURITY JUSTIFICATIONS HAVE BEEN CAUSE TO DENY ME A MEAL. NO THREATS FROM ME TO PHYSICALLY HARM STAFF HAVE BEEN THE CAUSE TO DENY ME A MEAL. THE REASONS STAFF HAVE AND CONTINUE TO SUBJECT ME TO THIS FORM OF TORTURE, TO DENY ME LIFE[illegible] MOST BASIC NECESSITY, IS BECAUSE STAFF WANT TO GET BACK AT ME, TO PUNISH ME, BECAUSE I WONT ACCEPT STAFFS MISTREATMENT, UNPROFESSIONALISM, AND ABUSE AND I WRITE THEM UP BY USING THE GRIEVANCE PROCEDURE. AND THE WARDEN NEEDS TO CAUSE EVIL STAFF TO BE REMOVED FROM A KDOC EMPLOYEE. NO STAFF SHOULD EVEN CONSIDER THIS FORM OF TORTURE TO BE JUSTIFIED FOR A PRISONER/ME WRITING THEM UP FOR THEIR MISTREATMENT/ABUSE INSTEAD OF PHYSICALLY HARMING THEM. I SHOULD BE REWARDED FOR THAT CHOICE NOT PUNISHED. AND THE WARDEN SHOULD CAUSE THAT TO HAPPEN.

RE: 40 [illegible] KUHN'S REFUSED ME BREAKFAST IN RETALIATION FOR WRITING THEM UP - DENIED BREAKFAST ON 1-29-2020 A-2/227/HCF (72)

Page 1 of 1, Attachment A, HCF GO 01-104
Effective 06-19-18

OFFENDER REQUEST TO STAFF MEMBER

(5 PAGES) (ALSO REFER TO 68)

(EXHIBIT - J-25)

To: UNIT TEAM GRAFE Date: 3-9-2020

(Name and Title of Officer or Department)

Received

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by Offender (67)

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

BROWN
Last Name Only

NOTE! (REFER TO (67) TOO)

**KANSAS DEPARTMENT OF CORRECTIONS**

(PAGE-1-OF-5)

#57800
**Number**

**OFFENDER REQUEST TO STAFF MEMBER**

To: UNIT TEAM GRAFE **Date:** 3-5-2020 (72)

**(Name and Title of Officer or Department)**

**State completely but briefly the problem on which you desire assistance. (Be specific.)**

(NOTE: THIS IS NOT ABOUT A INCORRECT DIET. ITS ABOUT RETALIATION/TORTURE) ALTHOUG UNIT TEAM GRAFE, UNIT TEAM MANAGER BELL, H.C.F. WARDEN SCHNURR, AND SECRETARY OF CORRECTIONS DESIGNEE BURRIS CLAIM THIS ISN'T AN EMERGENCY GRIEVANCE MATTER, AND FOR THE RECORD, "THIS" IS A PATTERN OF BEHAVIOR BY K.D.O.C./H.C.F. STAFF TO DENY PRISONERS THEIR BREAKFAST MEAL, LUNCH MEAL OR DINNER MEAL, AS A FORM OF RETALIATION, TO GET BACK AT THE PRISONER FOR WRITING STAFF UP IN FORM 9'S/GRIEVANCES, AND CAUSE A PRISONER

Work Assignment: N/A Living Unit Assignment: A-2/227/HCF

Comment: Detail or C.H. Officer:

Disposition:

To: Date: 3/13/2020

(Name & Number)

Disposition: This has all been previously addressed. You claim this is not about a diet, but proceed to describe an issue that arose due to the diet.

Employee's Signature

**To be returned to offender.**

RE: FORM-9 DATED 3-5-2020 / PAGE-2-OF-5 ) HCF (72)
(EXHIBIT-26)

TO SUFFER THE HUNGER PAINS THAT COME FROM BEING DENIED FOOD. THIS IS CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION. DENYING ME FOOD WHEN I DID NOT REFUSE FOOD, AND DID NOT GIVE STAFF ANY OFFICIAL OR SECURITY JUSTIFICATIONS IS ILLEGAL, IS A FORM OF TORTURE, AND ITS ALSO ILLEGAL BECAUSE STAFF, eg- C/O PITTSER AND CSI KUHNS DID IN FACT REFUSE TO FEED ME BECAUSE THEY ARE UPSET I WROTE THEM UP ON FORM-9'S/GRIEVANCES AND ARE GETTING BACK AT ME. BOTH THESE STAFF TOLD ME TO WRITE A GRIEVANCE ABOUT IT WHEN I WAS SPEAKING TO THEM WITHOUT CUSSING OR YELLING TRYING TO GET THE PROBLEM RESOLVED. AND BOTH STAFF KNOW A PRISONER MUST FIRST WRITE A FORM-9 BEFORE A GRIEVANCE IS WROTE AND ALTHOUGH IT TOOK A MONTH OF ME FILING NUMEROUS FORM-9'S AND GRIEVANCES IT WAS FINALLY ESTABLISHED THAT I WAS CORRECT AND I AM COMMON FAITH DIET, AND STAFF KNEW THIS BUT WERE PLAYING THEIR RETALIATORY GAMES. THIS FORM OF ILLEGAL RETALIATION HAS TAKEN PLACE NUMEROUS TIMES. STAFF HAS SUBJECTED ME TO THIS FORM OF TORTURE SO MANY TIMES AND CONTINUE TO DO SO BECAUSE THE UNIT TEAMS, WARDENS, SECRETARY OF CORRECTIONS, CAPTAINS AND/OR OTHER HIGH RANKING KDOC/HCF EMPLOYEES THAT COULD PUT A STOP TO IT AT ONCE REFUSE TO DO SO, BUT INSTEAD SUPPORT STAFF ILLEGAL RETALIATORY TORTURE. STAFF GIVE GUILTY STAFF IMMUNITY AND THE GRIEVANCE SYSTEM PROVIDES NO RESOLUTIONS OR JUSTICE BUT INSTEAD COMPOUNDS PROBLEMS, AND PROLONGS THE MISTREATMENT. ITS A BIASED CORRUPT PROCEDURE AND HAS BEEN FOR (20) YEARS. I AM A KOSHER DIET / RELIGIOUS DIET. KDOC LABELS ALL RELIGIOUS DIETS AS "COMMON FAIR" WHICH I HAVE BEEN

NEXT PAGE → → →

(EXHIBIT-J-27)

RE: FORM-9 DATED 3-5-2020 / PAGE-3-OF-5 ) HRE / (F2)

SINCE 12-20-2018. BUT OUT OF THE BLUE MY DIET WAS CHANGED TO HIGH FIBER / HIGH CALORIE WHICH IS A MEDICAL DIET, AND I DID NOT SEE ANY MEDICAL STAFF ABOUT A DIET CHANGE, OR ABOUT MY DIET. IT WAS CORRECTED, AND THEN IT WAS CHANGED AGAIN BY J. PATALANO WHO WORKS IN FOOD SERVICE, AND WHO I WROTE UP IN FORM-9'S AND GRIEVANCES, BECAUSE SHE WAS RETALIATING AGAINST ME BECAUSE I WAS MAKING COMPLAINTS ABOUT COMMON FAIR DIET PRACTICES. THE UNIT TEAM (GRAFF) RESPONDED TO A COUPLE OF MY FORM-9'S STATING IT ISSUE WAS ADDRESSED AND SHOULD BE CORRECTED, AND ALL OTHER STAFF WERE GIVING ME COMMON FAIR DIET MEALS DUE TO THE FORM-9'S AND DIET FORM FROM THE CHAPLAINS OFFICE ONCE I SHOWED STAFF MY OFFICIAL DOCUMENTS AND SPOKE TO THEM ABOUT IT. HOWEVER, ONCE I WROTE C/O PITTSER FOR REFUSING TO WEAR HAIR NETS AND GLOVES AND TELLING ME I'M THE ONLY ONE B****ING ABOUT IT, [redacted] CSI KUHNS AND C/O PITTSER STARTED HARASSING ME. [redacted] REFUSING TO SIGN DATE AND RETURN MY FORM-9'S AND GRIEVANCES, REFUSING TO GIVE ME TOILET PAPER WHEN I HAD NONE, THEN ON I BELIEVE IT WAS 1-29-2020 C/O PITTSER PASSED OUT TRAYS AND WAS GOING TO GIVE ME A HIGH FIBER/HIGH CALORIE DIET TRAY, WHICH WAS NOT MY CORRECT DIET, AND I SAID HOLD ON LOOK AT MY DIET FORM AND FORM-9 AND SHOWED HER AND C/O PITTSER SAID ITS WHATS DOWN ON HER LIST AND SHE DIDNT MAKE OUT THE LIST AND I SAID WHO DID AND C/O PITTSER SAID KUHNS SO I

NEXT PAGE → → →

(EXHIBIT - J-28)

RE: FORM 9 DATED 3-5-2020 / (PAGE-4-OF-5) 142 / (92)

SAID I NEED TO SPEAK TO HIM, AND C/O PITTSER SAID OKAY I'LL HAVE HIM COME SPEAK TO YOU, CLOSED MY FOOD PASS DOOR AND LEFT. I DIDN'T REFUSE TO EAT OR TO TAKE A TRAY: I JUST SHOWED HIM WHAT DIET I'M ON AND ASKED TO SPEAK TO THE OIC (OFFICER IN CHARGE). WHEN OIC/CSI KUHNS CAME TO MY CELL HE WAS GIVING ME A DIRTY LOOK AND WAS YELLING AT ME, WHICH I TOLD HIM I CAN HEAR HIM JUST FINE AND I SHOWED HIM MY DIET FORM WHICH STATED WHAT DIET I'M ON, AND A RECENT FORM 9 FROM MY UNIT TEAM (U.T GRAFF) RESPONDING TO MY FORM 9 ABOUT MY DIET SAYING I AM COMMON FARE. BUT CSI KUHNS SAID HE CALLED THE CLINIC AND MY DIET IS HIGH FIBER / HIGH CALORIC DIET WHICH IS A MEDICAL DIET, AND HE SHOULDN'T BE ABLE TO ACCESS ANY OF MY MEDICAL INFORMATION, EVEN SO I SAID FINE GIVE ME THE TRAY YOUR GONNA GIVE ME AND I'LL JUST WRITE A FEW FORM 9'S AND GRIEVANCE. CSI KUHNS GAVE ME A NASTY LOOK, BREATHING ALL HARD IN AN ATTEMPT TO LOOK TOUGH I GUESS, AND SAYS, "NO, YOU HAD AN OPPORTUNITY TO EAT AND YOU REFUSED." I SAID, "I DIDN'T REFUSE NOTHING, I SHOWED PITTSER MY CORRECT DIET AS I SHOWED YOU AND SAID I WANTED TO SPEAK TO THE OIC, AND CSI KUHNS SAYS, "YOUR NOT EATING WRITE A GRIEVANCE." AS CSI KUHNS DIDN'T HAVE ANYTHING TO IDENTIFY HIM (NAME) I ASKED HIM WHAT HIS NAME WAS AND HE SAID, "FIGURE IT OUT," I ALSO SAID, "BRING ME SOME GRIEVANCES", AND HE SAID, "WE DON'T PASS THEM

NEXT PAGE → → →

(EXHIBIT-J-29)

FORM 9 DATED 3-5-2020 / PAGE 5-OF-5 } [illegible] / (72)

OUT ON THIS SHIFT SMILED AND WALKED AWAY. NUMEROUS TIMES WHEN A PRISONERS DIET IS WRONG OR A TRAY IS MISSING SOMETHING WHEN A PRISONER SPEAKS TO STAFF OR THE OIC IT IS USUALLY CORRECTED. BUT NOT WITH CS/OIC RYANS AS HE'S AN ABUSIVE, LYING, EVIL, CORRUPT GUARD, AND STAFF GIVE STAFF IMMUNITY SO STAFFS ILLEGAL/ABUSIVE ACTS/BEHAVIORS GO UNCHECKED. I DIDN'T REFUSE TO TAKE A TRAY AT ANY POINT AND TIME, AND EVEN WHEN I COULDNT GET STAFFS "MISTAKE" CORRECTED, I SAID I'D TAKE THE HIGH FIBER/HIGH CALORIE TRAY, BUT I WAS REFUSED ALL BREAKFAST BECAUSE ANOTHER EVIL UNCHECKED GUARD WANTED TO GET BACK AT ME FOR WRITING A COMPLAINT AGAINST THEM. OIC/CSI RYANS SHOULD BE FIRED FOR HIS INTENTIONAL RETALIATORY TORTURE. FOR CAUSING ME STOMACH PAINS ALL MORNING/DAY, FOR THE MENTAL AND EMOTIONAL STRESS, PAIN AND SUFFERING HE SUBJECTED ME TO. MY RESTRICTION SHOULD BE SUSPENDED ALTOGETHER, MY FINES SUSPENDED, AS ITS STAFF ACTS LIKE THIS WHY I HAVE SO MANY D.R. RESTRICTION AND FINES. STAFF THAT REFUSE TO HOLD GUILTY STAFF ACCOUNTABLE SHOULD BE FIRED. CSI/OIC RYANS SHOULD NOT HAVE AUTHORITY OVER A CELLHOUSE FOR SURE. BUT STAFF CONTINUE TO PUSH ME AND PUNISH ME, CONTINUE TO RETALIATE AGAINST ME AND THEY SHOULD BE FIRED FOR IT AS ITS AN ILLEGAL ACT.

HCF (72)

(EXHIBIT-J-30)

Kansas
Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE: 4-2-2020

TO: Brown, David #57800
A2-227

SUBJECT: Grievance #BA00018488

FROM: Dan Schnurr, Warden
HUTCHINSON CORRECTIONAL FACILITY

FINDING OF FACTS: In your grievance, you claim that officers are retaliating against you by refusing you meals.

CONCLUSIONS MADE: I have reviewed your grievance and UTS Graff's response. I agree with his response.

SEE SEE PAGES 3 AND 4 OF FORM-9 ATTACHED

You have failed to provide any specifics (dates/times) on when you claim that you have been denied meals that are delivered to you while in Restrictive Housing. Without knowing specifics, it is extremely difficult to verify your claims of being refused meals and being retaliated against.

If there are issues that need to be addressed with facility staff at Hutchinson Correctional Facility, the Facility will make sure it is handled if applicable.

Continue to work with UTS Graff and/or UTM Bell to address your issues within the cell house, as they are more than capable in addressing your concerns.

ACTION TAKEN: None warranted. This is my final answer to you on this matter. Any subsequent grievances received from you concerning this subject shall be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

D. Schnurr

Dan Schnurr
HCF, Warden

FOR DATES/TIMES AND NAMES OF ANOTHER TIME STAFF REFUSED ME FOOD [redacted]

SEE GRIEVANCE (71) # BA000 [redacted] 18482)

DS/JB
cc: Unit Team Manager

HCF/(72)

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: DAVID BROWN  Facility: HUTCHINSON CORR. FAC.

Inmate Number: 57800  Grievance Serial No. BA00018488 (72)

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.) ✓

(EXHIBIT-J-31)

MAIL TO: Secretary of Corrections
Landon State Office Building
900 Jackson, 4th Floor
Topeka, Kansas 66612

Date Mailed: 4-7-2020 (72)

RECEIVED

(PAGE-1-OF-2)

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) I'VE STATED MY COMPLAINTS AND FACTS IN THE ATTACHED FORM 9 AND GRIEVANCE AND I INCORPORATE THEM HEREIN THIS GRIEVANCE APPEAL AS IF THEY WERE STATED FULLY HEREIN. THE WARDEN IS A LIAR BY SAYING I DON'T GIVE DATES/TIMES OF STAFF DENYING ME MEALS. SEE THE ATTACHED FORM-9 DATED 3-5-2020 PAGE (3), SEVEN LINES UP FROM THE BOTTOM I WROTE "IT WAS 1-29-2020..." THAT'S WHEN CSI KUHNS AND CO PETTSCH DENIED ME MY BREAKFAST TRAY. I'VE HIGHLIGHTED IT FOR YOU → NEXT PAGE

Signature of Inmate [signature] → →

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)

If applicable - Confidential File No. ________

Date Received in Office of Secretary of Corrections: ____________________

Date of Final Answer: ____________________  Date Sent to Inmate: ________________

Finding of Fact:

Conclusions Made:

Action Taken:

______________________________
Signature of Secretary of Corrections

**For D.O.C. Staff Use Only**

Type of Response (Item 6b: Code Ø1, Ø2, Ø8 or Ø9) ___

DC Ø9Ø, Effective May 1, 1988

P-157a

(RE: GRIEVANCE APPEAL (72) / PAGE-2-OF-2) / IRF / (72)
(EXHIBIT J-32)

ANOTHER EXAMPLE OF HIGHER RANKING K.D.O.C. OFFICIALS GIVING GUILTY STAFF IMPUNITY. NOW THAT I'VE MADE CLEAR TO THE S.O.C. THE DATES, TIMES, PLACES, ETC. HE SHOULD HOLD STAFF ACCOUNTABLE FOR CRUEL AND UNUSUAL PUNISHMENT, TORTURE, AND RETALIATION AGAINST ME FOR STAFF DENYING ME A WHOLE MEAL TO PUNISH ME FOR WRITING THEM UP. ALSO I'LL STATE I SUBMITTED FORM-9'S GRIEVANCES AND GRIEVANCE APPEALS WITH DATE AND TIMES OF WHEN OTHER STAFF HAVE DENIED ME MY FOOD TO PUNISH ME FOR WRITING STAFF UP AND THE UNIT TEAMS, WARDEN, AND SECRETARY OF CORRECTIONS GIVE STAFF IMPUNITY, AND DON'T MAKE CORRECTIVE ACTIONS TO ENSURE IT STOPS AND NO K.D.O.C. STAFF ABUSE THEIR AUTHORITY THIS WAY IN RETALIATION AGAINST PRISONERS FOR WRITING THEM UP, AS WILL BE THE CASE HERE TOO, BUT LET THE RECORD REFLECT SUCH FACTS AND THE WORTHLESSNESS OF KDOC'S GRIEVANCE PROCEDURE/SYSTEM. THE S.O.C. NEEDS TO SUSPEND C/ [illegible] AND C/O [illegible] WITHOUT PAY FOR 2 WEEKS AND DEMOTE THEM.

HCF/(72)

# Grievance-Response on Appeal

**FACILITY:** **Hutchinson Correctional Facility**

**INMATE:** **0057800 BROWN, DAVID** A2-227

**GRIEVANCE NO.:** **BA00018488** (EXHIBIT-J-33)

**DATE:** **May 6, 2020**

**FINDINGS OF FACT**

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

**CONCLUSIONS MADE**

The response rendered to the inmate by staff at the facility is appropriate.

**ACTION TAKEN**

None further.

______________________________
**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc: Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on ____________.

* EMERGENCY GRIEVANCE * HCF (67) EG

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

(EXHIBIT-J-34)

**INMATE COMPLAINT**

Inmate's Name DAVID BROWN Number #57800

Facility HUTCHINSON CORR FAC Housing Unit A-2/227/HCF Work Detail N/A

PAGE-1-OF-3

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.: how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). I WAS REFUSED MY BREAKFAST THIS MORNING BY C/O PITTSER AND CSI KUHNS V. I DID NOT REFUSE TO EAT. C/O PITTSER SAID I'M HI FIBER/HI CALORIE DIET, WHICH I'M NOT, AND SAID SHE WOULD HAVE THE CSI COME SPEAK TO ME. WHEN THE CSI CAME TO SPEAK TO ME HE SAID I HAD PAPER WORK COME THAT SAYS I'M HI FIBER/HI CALORIE, WHICH I'M NOT. I SHOWED HIM A FORM-9 AND MY DIET CHANGE TO KOSHER DIET, WHICH HE WOULD NOT HONOR, AND I SHIFTED TO YOUR REFUSING TO FEED ME, AND HE SAYS YOU HAD A OPPORTUNITY TO EAT AND YOU REFUSED, AND THAT IS ALSO A LIE, I DIDN'T REFUSE TO EAT. I WAS TOLD THE CSI WAS GOING TO →

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 1-29-2020 (67)

MAILED 1-29-2020 (INHOUSE OFFICIAL MAIL.)

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

* UNIT TEAM REFUSED TO PROCESS.

* WARDEN'S OFFICE REFUSED TO PROCESS.

(NOTE - WEEKS LATER IT WAS DETERMINED MISTAKES WERE MADE AND THAT I WASN'T ON HIGH FIBER/HIGH CALORIE DIET. BUT I WASN'T TOLD SORRY AND WENT HUNGRY SEVERAL TIMES. MAGGOTS!)

Unit Team Signature Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

✓ I am ~~not~~ satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). ______

David Brown

Inmate Signature Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received ______ Date of Final Answer ______ Date Returned to Inmate ______

Inmate's Signature Date Unit Team Signature Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number ______

Type of Complaint (Item 4: Code 01-75) ______

Cause of Complaint (Item 5: Code 01-30) ______

Type of Response (Item 6a: Code 01,02,08 or 09) ______

(RE: CONTINUANCE SYSTEM, CORRUPTION, SYSTEMATIC)

(EXHIBIT-J-35) HCF/(E.G.) (67)

(RE: EMERGENCY GRIEVANCE/PAGE-2-OF-3)

COME SPEAK TO ME, AND I SHOULD OF BEEN FED. BUT BECAUSE A LYING, ABUSIVE GUARD IS RUNNING THE CELLHOUSE IM LEFT TO SUFFER AND FEEL HUNGER PAINS AND HAVE TO ACCEPT BEING PUNISHED FOR NO REASON OTHER THAN MORE PRISON STAFF ABUSING THEIR AUTHORITY AND GETTING BACK AT ME FOR WRITING THEM UP. RETALIATION IS ILLEGAL ITS MY LEGAL RIGHT TO WRITE STAFF UP WHEN ITS CALLED FOR, AND GETTING MAD AT ME, LYING SAYING I REFUSED TO EAT AND THEN REFUSING TO TELL ME HIS NAME SO I COULD NAME HIM IN MY GRIEVANCE, AND THEN REFUSING TO GIVE ME GRIEVANCES IS NOT BEHAVIOR THAT SHOULD BE ACCEPTED FROM GUARDS THAT ARE RUNNING A CELLHOUSE. IM NOT ON HI FIBER/ HI CALORIE DIET, AND ILL ADDRESS THAT COMPLAINT BUT THE GRIEVANCE SYSTEM IS WORTHLESS AND IM NOT GONNA GET ANYTHING RESOLVED, BUT ILL CONTINUE TO DOCUMENT STAFFS MISTREATMENT, ABUSE, EXCESSIVE USE OF FORCE, TORTURE, ECT. AND IM SURE ILL BE TOLD BEING DENIED FOOD WITHOUT JUST CAUSE ISNT AN EMERGENCY ALTHOUGH ITS A BASIC NECESSITY AND DONE FOR REASONS OTHER THAN SECURITY, AND THE GUARDS LYING, IT WELL JUST FURTHER SUPPORT THE WORTHLESSNESS OF PRISON AUTHORITIES INVOLVEMENT IN THE PRISON GRIEVANCE SYSTEM, BEING THE COMPLAINTS ARE AGAINST PRISON STAFF, AND PRISON STAFF ARE WHO PROCESS COMPLAINTS. THATS WHY ITS A USELESS PROCESS. EVEN SO, LET THE RECORD REFLECT SUCH FACTS. THE WARDEN SHOULD →

(EXHIBIT-J-36) (67) (E.G)

(RE: EMERGENCY GRIEVANCE/ PAGE-3-OF-3)

HOLD CSI KUHNS ACCOUNTABLE FOR REFUSING TO FEED ME BECAUSE I NEVER SAID I'M NOT EATING OR I DON'T WANT TO EAT. I SAID I'M COMMON FAITH/KOSHER DIET AND C/O RITTSER SAID SHE'D HAVE THE CSI COME SPEAK TO ME, AND I DIDN'T TELL HIM I DIDN'T WANT TO EAT OR REFUSE TO EAT. I SAID I'M NOT HI-FIBER/HI-CALORIE OR REGULAR DIET, AND I THEN SHOWED HIM DOCUMENTATION TO SUPPORT IT, AND HE REFUSED TO FEED ME ALTOGETHER, SAYING I HAD A OPPORTUNITY TO EAT EARLIER. I DIDN'T TAKE A HI-FIBER/HI-CALORIE OR REGULAR TRAY, AS I CAN BE TAKEN OFF MY COMMON FAITH DIET FOR EATING ANOTHER DIET, AND BECAUSE C/O RISTER SAID SHE'D HAVE THE CSI COME SPEAK TO ME ABOUT MY DIET BECAUSE SHE DIDN'T WANT TO TALK ABOUT IT AT ALL, AS SHE IS UPSET BECAUSE I WROTE HER UP FOR NOT WEARING GLOVES AND A HAIR NET. THE WARDEN SHOULD DEMOTE CSI KUHNS AS HE DENIED ME A BASIC HUMAN NECESSITY, WITHOUT JUST CAUSE, AND THEN REFUSED TO TELL ME HIS NAME AS IT WASN'T ON HIS SHIRT, AND THEN REFUSE ME FORM-9'S/GRIEVANCES. A ABUSIVE GUARD SHOULD NOT HOLD RANK OVER A WHOLE CELLHOUSE. ALSO, NOTE U.T. GRAFF ALREADY CONTACTED THE CLINIC AND ARAMARK AND VERIFIED I AM COMMON FAITH/KOSHER DIET. AND I ALSO SHOWED THAT FORM-9 AND U.T. GRAFF'S RESPONSE.

(EXHIBIT-J-STAFF) (C.G.)

**MEMO** (EMERGENCY GRIEVANCE)

Kansas
Department of Corrections
*Hutchinson Correctional Facility*

(67)

**DATE:** January 31, 2020
**TO:** BROWN, David # 57800 (A2-227)
**FROM:** J. Jackson, Unit Team Manager
**CC:** J. Bell, UTM-A
**RE:** Grievance

---

Your grievance submitted on 1-29-2020 regarding being refused a breakfast meal the morning of 1-29-2020 in the HCF Restrictive Housing Unit and the following confusion over what type of meal you are supposed to receive was reviewed and determined not to be an emergency situation. It has therefore been forwarded to Unit Team Manager for investigation and response.

J. Jackson, UTM.
J. Jackson, HCF UTM

I WAS DENIED (2) MORE MEALS. NEVER FOR A SECURITY REASON NEVER THREATEND STAFF DIDN'T TAKE MY FOOD PASS, DIDN'T DESTROY PROPERTY. ONLY EXPLAINED WHAT DIET I'M SUPPOSE TO BE AND SHOWED DOCUMENTATION TO SUPPORT IT.

I'M STILL NOT ON THE PROPER DIET, AND REGARDLESS OF WHAT DIET I'M ON I DID NOT REFUSE ANY MEAL, BUT WAS DENIED MY MEAL IN RETALIATION FOR WRITING STAFF UP AND FOR NOT ACCEPTING THE DIET I WAS GIVEN "BECAUSE I'M LUCKY I GET FED AT ALL"

(EMERGENCY GRIEVANCE) (EXHIBIT J-38) HCF (E.G. (67))

# MEMO

RECEIVED

FEB 20 2020

DOC Facility Management Area

Kansas
Department of Corrections
*Hutchinson Correctional Facility*

**Hutchinson Correctional Facility**
**P.O. Box 1568**
**Hutchinson, KS 67504-1568**
**(620) 728-3338**
**Fax: (620) 728-3473**
**Email: Dan.Schnurr@doc.ks.gov**
**www.doc.ks.gov**

**DATE:** 02/06/2020
**TO:** Brown, David #57800
**FROM:** B. Graff, UTS
**RE:** Grievance

---

You have again submitted a grievance without first attempting to resolve the issue via written response. This grievance is being returned to you due to a lack of informal resolution. This grievance was determined not to be an emergency situation and is to be processed via the normal grievance procedure. You need to use a written request as informal resolution and then need to include those form-9 requests that bave been responded to with grievances as to have written documentation consistent with tbe grievance procedure. If you are unsure how the process works you can find it in KAR 44-15-101.

* UNIT TEAM WONT PROCESS
* WARDENS OFFICE WONT PROCESS

B. Graff, UTS

I DID NOT REFUSE MY MEAL AT ANY POINT. IS IT NOT AN EMERGENCY WHEN GUARDS ARE REFUSING TO FED ME WHEN SECURITY DOES NOT REQUIRE IT, AND ONLY TO RETALIATE AGAINST ME FOR WRITING STAFF UP. CSI [illegible] TOLD ME TO FILE A GRIEVANCE AND LAUGHED BECAUSE HE KNOWS IT DOES NO GOOD TO FILE A GRIEVANCE. I WAS DENIED A WHOLE ME TWICE MORE SINCE THIS GRIEVANCE. IS IT NOT AN EMERGENCY??!!



E6 HCF/(68) 161

(EXHIBIT-J-39)
AD ASTRA PER ASPERA
Kansas
Department of Corrections

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

**DATE: 03/04/2020**

**TO:** Brown, David #57800 - A2-227

**FROM:** J. Bell, UTM

**SUBJECT:** Grievance (67) EMERGENCY GRIEVANCE DENIED

**FINDING OF FACT:**
**Pursuant to 44-15-101(b) an inmate in a facility or parole setting shall contact the unit team members for an attempt at informal resolution.**

**CONCLUSIONS MADE:**
**You have failed to comply as stated and need to submit a F-9 requesting an interview to discuss your complaint.**

**ACTION TAKEN:** No further action warranted at this time.

J. Bell, UTM
HCF A CH

(EXHIBIT-J-40)
E6. HCF/(67)

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary

Laura Kelly, Governor

February 20, 2020

A2-227

TO: 0057800 BROWN, DAVID

Hutchinson Correctional Facility

RE: Emergency Grievance (67) EMERGENCY GRIEVANCE DENIED

We received your inmate grievance report form with written arguments. You directed this grievance to the Secretary as an emergency grievance pursuant to KAR 44-15-106. It is the conclusion of this office that the matters raised in your grievance form do not constitute an emergency. Disposition of your grievance according to the regular time limits and procedures will not subject you to a substantial risk of personal injury, or cause you other serious and irreparable harm. Thus, we have concluded that you should not be permitted to bypass efforts to resolve this grievance at the facility level.

Your grievance is being forwarded to the Warden of the facility where you are now housed for review and response in accordance with KAR's 44-15-106, 44-15-101(d)(1) and 44-15-102(b). We have asked that the facility process your grievance as a regular grievance.

If you have questions or require assistance about the status of your grievance, please contact your unit team. Otherwise you can expect to hear from the Warden in reply to your grievance in the near future.

Sincerely,

Douglas W. Burris
Corrections Manager, Facility Management

cc: Warden Schnurr
w/attachments
Image: SOCRESP
w/attachments