**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CHRISTOPHER DAVID BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case. No. 21-CV-3105-SAC** |
| | ) | |
| **DANIEL L. SCHNURR,** *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In accordance with D. Kan. Rules 7.1(a) and 7.6, Defendants Jeffrey Pettijohn and Todd Swenson, by and through Assistant Attorney General, Michael J. Duenes, submit this Memorandum in Support of their Motion to Dismiss, or in the Alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) or Fed. R. Civ. P. 56. Defendants respectfully request that this motion be granted and this action be dismissed, or in the alternative, summary judgment be granted in Defendants' favor. Defendants state the following in support.

### NATURE OF THE CASE

Plaintiff Christopher David Brown alleges that on September 13, 2018—while incarcerated under the Kansas Department of Corrections (KDOC) at Hutchinson Correctional Facility (HCF)—Officer Swenson violated his Eighth Amendment rights by injuring him with a food pass door, and Officer Pettijohn displayed deliberate indifference by failing to intervene. (Doc. 1 at 4, 9; Doc. 1-1 at 3-4). Specifically, Brown claims Swenson spoke to him disrespectfully, crushed his hand and fingers repeatedly in the food pass door of his cell, and then climbed up on the prison cell rail in order to use his combat boots to continue smashing Brown's hand. (Doc. 1 at 7-8; Doc. 1-1 at 3-4).

1

Further, Brown says that prior to this incident he informed Pettijohn of Swenson's disrespectful behavior toward him. (Doc. 1 at 7). According to Brown, as Swenson was carrying out his alleged attack, Pettijohn saw and heard it but did nothing to stop it. (Doc. 1 at 7-8; Doc. 1-1 at 4). In his complaint, Brown also alleges that HCF Warden Dan Schnurr showed deliberate indifference to his suffering, in violation of the Eighth Amendment. (Doc. 1 at 4). Additionally, Brown named Carmen Baynham, a medical nurse at HCF, as a defendant. (Doc. 1 at 3).

Brown brings his lawsuit under 42 U.S.C. § 1983 and asks for "a declaratory judgment stating that the unnecessary, excessive use of force against [him] by Def. Swenson violated [his] right to be free of cruel and unusual punishment … and constituted assault and battery under Kansas state law and Constitution." (Doc. 1 at 1, 12). He also asks that Defendants be liable jointly and severally for nominal, compensatory, and punitive damages; reasonable attorney fees and costs; $10,000 for spoliation of evidence; and "other just and equitable relief this court deems necessary." (Doc. 1 at 12).

On January 3, 2022, this Court dismissed Brown's claims against Schnurr and Baynham, but permitted his claims against Swenson and Pettijohn to continue. (Doc. 16 at 5).

Here, Brown has failed to timely allege any state law claims, so they should be dismissed. The Court should grant summary judgment for Defendants on Brown's § 1983 claim because he failed to exhaust his administrative remedies.

### STATEMENT OF MATERIAL FACTS AS TO WHICH
### NO GENUINE ISSUE EXISTS

1.      The incident alleged by Brown occurred on September 13, 2018. (Doc. 1-1 at 3).

2.      On September 21, 2018, Brown submitted a Personal Injury Claim Form related to his September 13, 2018 interaction with Swenson, asking for $500. (Doc. 1-1 at 1).

3.      Regarding Pettijohn, Brown's personal injury claim noted only that Pettijohn "saw"

Swenson's actions. (Doc. 1-1 at 4).

4.      On September 24, 2018, Pettijohn signed that he had received Brown's Personal Injury Claim Form. (Doc. 1-1 at 1).

5.      The warden received Brown's personal injury claim on October 1, 2018. (Doc. 1-1 at 1). Personal injury claims are governed by Chapter 44, Article 16 of the KDOC's administrative regulations.

6.      On November 26, 2018, Pettijohn sent a Memo to the warden, notifying him of Brown's personal injury claim and advising against payment of the $500 claim. (Doc. 1-1 at 7).

7.      On March 14, 2019, the warden disapproved Brown's personal injury claim. (Doc. 1-1 at 2).

8.      On March 25, 2019, the Secretary of Corrections disapproved Brown's personal injury claim. (Doc. 1-1 at 2).

9.      On April 25, 2019, Brown filed a grievance form, attempting to grieve the denial of his personal injury claim. (Doc. 1-1 at 40). Grievances are governed by Chapter 44, Article 15 of the KDOC's administrative regulations.

10.     On the April 25, 2019 grievance form, under "Unit Team Response," it states, "Per KAR 44-15-101 the grievance procedure is not to be used as a substitute for or part of the injury claims procedure. You cannot grieve the property claim response." (Doc. 1-1 at 40).

11.     On May 3, 2019, the warden informed Brown that his injury claim had gone "through the entire process and was disapproved by Central office[,]" and that he had "received a copy of [his] injury claim from unit team staff." (Doc. 1-1 at 23).

12.     On June 17, 2019, the warden responded to Brown's attempt to grieve the denial of his personal injury claim, informing Brown that he "did not follow the proper grievance procedure

according to K.A.R. 44-15-102" and "the issue you brought up concerning your injury claim is a non-grievable issue according to … KAR 44-15-101a[.]" (Doc. 1-1 at 57).

13.    Not until September 25, 2019, did Brown file a grievance against Swenson and Pettijohn related to their interaction with him on September 13, 2018. (Doc. 1-1 at 69).

14.    On October 4, 2019, Unit Team Supervisor (UTS) Graff sent Brown a Memo, stating that Brown had "once again submitted a grievance which you are attempting to address outside the time frame allowed for filing a grievance" under K.A.R. § 44-15-101b. (Doc. 1-1 at 81). Graff told Brown that the grievance "is being returned to you due to being outside the time frame for filing a grievance and will not receive a response." (Doc. 1-1 at 81).

15.    On October 28, 2019, the warden sent Brown a letter notifying him that "[t]he items you bring up in your grievance have previously been addressed through the grievance procedure or you are attempting to address outside the time frame allowed for filing a grievance per K.A.R. 44-15-101(b)." (Doc. 1-1 at 82).

16.    On November 18, 2019, Brown submitted an appeal to the Secretary of Corrections. (Doc. 1-1 at 83).

17.    On November 22, 2019, the Secretary responded to Brown's appeal, stating that the finding by HCF staff (*i.e.*, that Brown's grievance was untimely) was appropriate. (Doc. 1-1 at 88).

## QUESTIONS PRESENTED

I.      Are Defendants entitled to dismissal of Brown's state assault and battery claims?

II.     As a matter of law, does the Eleventh Amendment bar Brown's § 1983 claims against

        Defendants in their official capacities?

III.    Are Defendants entitled to summary judgment because Brown failed to exhaust his

        administrative remedies pursuant to the Prison Litigation Reform Act (PLRA)?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss*

A complaint must contain enough facts to state a claim for relief that is plausible on its

face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this

"does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal

claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly,

courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or

searching the record for potentially viable theories. *Garrett v. Selby Conor Maddux & Janer*, 425

F.3d 836, 840 (10th Cir. 2005).

### *Summary Judgment Standard*

Summary judgment is required when pleadings, affidavits, and any discovery "show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine issue exists, courts will

view evidence in the light most favorable to the nonmoving party and will accept only reasonable

inferences. *See Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997).

However, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). When there is no genuine dispute of material fact on an essential element of the nonmovant's claim, then summary judgment must issue in the moving party's favor. *See Sports Unlimited, Inc. v. Lankford Enterprises, Inc*., 275 F.3d 996, 999 (10th Cir. 2002).

I.     **Defendants are entitled to dismissal of Brown's state assault and battery claims.**

        ***Brown's state law claims are untimely.***

In the request for relief portion of Brown's complaint, he asks for "[a] declaratory judgment stating that the unnecessary, excessive use of force against [him] by Def. Swenson … constituted assault and battery under Kansas state law and constitution[.]" (Doc. 1 at 12). Brown filed his complaint on April 15, 2021, but he alleges state law claims based on an incident from September 13, 2018. So Brown's complaint was filed well beyond the one-year statute of limitations for intentional torts. *See* K.S.A. § 60-514 (one year statute of limitations for assault and battery); *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (holding that the statute of limitations applicable to § 1983 actions is borrowed from the appropriate state statute of limitations and tolling principles). Moreover, Brown's September 2019 deadline for filing his state law claims ran before any COVID-19 tolling requirements were implemented in Kansas. *See Tran v. County of Douglas*, No. 21-2310-KHV, 2021 WL 5505455, at *5 (D. Kan. Nov. 24, 2021) (noting that statutes of limitations in Kansas did not begin to be suspended until March 19, 2020). Brown has not stated

a basis for tolling the statute of limitations, so his state claims are time-barred and should be dismissed.

**II.     As a matter of law, the Eleventh Amendment bars Brown's § 1983 claims against Defendants in their official capacities.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* As employees of KDOC, Defendants share the state's immunity from suits against them in their official capacity for money damages. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

A narrow exception to sovereign immunity allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). But the Eleventh Amendment bars claims for "retrospective declaratory relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212 (quotation cleaned up).

Here, Brown asserts that Swenson and Pettijohn—in their roles as KDOC employees— were "acting under the color of state law" at "the time the claim(s) alleged in this complaint arose." (Doc. 1 at 2-3). Yet he asks this Court for a declaratory judgment stating that Swenson violated his constitutional rights, which is a claim only for retrospective relief. (Doc. 1 at 12). He does not ask for prospective injunctive relief. Hence, his requested relief is barred by the Eleventh Amendment. His claims against Defendants in their official capacities must be dismissed.

7

### III.     Defendants are entitled to summary judgment because Brown failed to exhaust his administrative remedies pursuant to the PLRA.

Brown alleges that his "injury claim was exhausted on 4-17-2019[,]" yet he states only that he "filed K.D.O.C.'s personal injury claim on 9-21-2018." (Doc. 1 at 12). Brown did not file a grievance against Swenson and Pettijohn for their actions on September 13, 2018, until September 25, 2019. (Doc. 1-1 at 69).

#### A.     *Brown failed to exhaust his administrative remedies because he filed a time-barred grievance.*

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 Fed. Appx. 682, 684 (10th Cir. 2011).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Brown's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15 101 *et seq*., and applies "to a broad range of matters that directly affect the inmate, including … [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and … actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d). Brown's § 1983 claim falls under this regulation because his complaint stems from the actions of HCF employees. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

K.A.R. § 44-15-101b prescribes time limits for filing grievances. Inmates have "15 days from the date of discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays[,]" in which to file a grievance. *Id*. However, "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." *Id*. "Any grievance filed later than these deadlines may be returned to the inmate without investigation." *Id*.

Here, Brown did not file a grievance against Swenson and Pettijohn concerning their interaction with him on September 13, 2018, until over a year later, on September 25, 2019. (Doc. 1-1 at 69). UTS Graff informed Brown that Brown was attempting to bring his grievance outside the permissible timeframe. (Doc. 1-1 at 81). The warden likewise told Brown he was seeking to address items outside the timeframe allowed for filing a grievance under K.A.R. § 44-15-101b. (Doc. 1-1 at 82). The Secretary of Corrections concurred with the response provided by the UTS and the warden. (Doc. 1-1 at 88). Consequently, Brown did not timely file his grievance, and it was returned to him without investigation. *See* K.A.R. § 44-15-101b. Filing an untimely grievance does not satisfy the PLRA exhaustion requirement. *Ross v. Cty. Of Bernalillo*, 365 F.3d 1181, 1185-86 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Even if this Court were to find that Brown's April 25, 2019 attempt to grieve the denial of

his personal injury claim somehow constituted a proper grievance against Pettijohn and Swenson for their interaction with him on September 13, 2018, it too would be untimely. (Doc. 1-1 at 40); K.A.R. § 44-15-101b (inmate must file grievance within 15 days of discovering the event giving rise to the grievance, excluding Saturdays, Sundays and holidays).

**B.      Brown has no excuse for the untimely filing of his grievance.**

Brown has not offered any excuse for his failure to file his grievance on time. So no tolling of the regulatory deadlines is warranted. Moreover, the Declaration from KDOC Corrections Manager Darcie Holthaus, attached hereto as Exhibit 1, demonstrates that Brown—based on long experience—well understood the process for filing grievances with prison staff. During his incarceration, he has filed 293 grievance appeals to the Secretary of Corrections. (Decl. of Holthaus at ¶ 4 and Exh. A). In fact, Brown filed other grievances just months prior to the September 2018 incident complained of here. (Doc. 1-1 at 125; Decl. of Holthaus at ¶ 6 and Exh. B). Thus, Brown cannot plead excuse or ignorance as a rationale for his failure to file a timely grievance in this case.

**C.      Brown's personal injury claim does not satisfy the exhaustion requirement for § 1983 claims under the PLRA.**

Brown filed a personal injury claim against Swenson on September 21, 2018, roughly a week after the incident giving rise to his § 1983 lawsuit here. (Doc. 1-1 at 1). But in so doing, he did not properly exhaust his available administrative remedies.

There are two distinct processes for administrative exhaustion under Kansas law. The first, applicable here, is found in Article 15, Chapter 44 of the Kansas Administrative Regulations. *Lewis v. Carrell*, No. 12-CV-3112-DC-JPO, 2015 WL 413640, at *2-3 (D. Kan. Jan. 30, 2015). The second process falls under Article 16, Chapter 44 of those same regulations. *Id.* at *3. The Kansas Court of Appeals has explained that the two sets of regulations in Articles 15 and 16 are "separate

and distinct" from one another. *Id*. (relying on *Redford v. Kan. ex rel. Dep't of Corr*., 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013) (unpublished table decision)).

This Court has held that a plaintiff's filing of a personal injury claim for the incident undergirding his § 1983 lawsuit "does not render his claims exhausted." *Rigney*, 2021 WL 5833932 at *4. Where a plaintiff's § 1983 claim constitutes a complaint about the conditions of his imprisonment and the actions of employees—as it does here—he must exhaust his remedies under K.A.R. § 44-15-101. *Id. See Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015). Brown did not do so.

In addition, the warden at HCF informed Brown in June 2019 that his personal injury claim was returned to his unit team "since you did not follow the proper grievance procedure according to K.A.R. 44-15-102." (Doc. 1-1 at 57). The warden emphasized that the denial of a personal injury claim "is a non-grievable issue according to … KAR 44-15-101a[.]" (Doc. 1-1 at 57).

Based on the undisputed evidence, Brown failed to exhaust his administrative remedies regarding the allegations in his lawsuit. This Court should grant summary judgment to Defendants.

## CONCLUSION

Brown's state law claims should be dismissed as untimely, and his § 1983 claims against Defendants in their official capacities should be dismissed pursuant to the Eleventh Amendment. Finally, Defendants are entitled to summary judgment because Brown failed to exhaust his administrative remedies.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Michael J. Duenes
Michael J. Duenes, KS No. 26431
Assistant Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Email: michael.duenes@ag.ks.gov
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
Attorney for Kansas Department of Corrections, Interested Party

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Christopher David Brown, #57800
El Dorado Correctional Facility
P.O. Box 311
El Dorado, Kansas 67042
Plaintiff, pro se

/s/ Michael J. Duenes
Michael J. Duenes
Assistant Attorney General