IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTOPHER DAVID BROWN, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> DANIEL L. SCHNURR, *et al*. ) <br> ) <br> Defendants. ) <br> ) | Case. No. 21-CV-3105-JAR-GEB |

**REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Jeffrey Pettijohn and Todd Swenson ("Defendants"), by and through Assistant Attorney General, Michael J. Duenes, respectfully submit this Reply in further support of their Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. 25). Defendants assert that Brown's response fails to controvert the material facts set forth by Defendants, as required by D. Kan. 56.1, and does not overcome the legal arguments that Defendants advance in support of their Motion (Doc. 26 – Memorandum in Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment). Accordingly, Defendants' Motion should be granted in its entirety.

**I. Brown fails to controvert Defendants' Statement of Material Facts, so they are admitted.**

As required by D. Kan. Rule 56.1(f), Defendants served upon Brown the Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 27). Yet Brown fails to provide a response to the facts set forth in ¶¶ 6-8 and 16 of Defendants' Statement of Material Facts, as required by D. Kan. Rule 56.1(b)(1) or Fed. R. Civ. P. 56, and therefore, those paragraphs should be deemed admitted. (Doc. 26 at 2-4); D. Kan. Rule 56.1(a); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In

1

accordance with D. Kan. Rule 56.1(b)(1), Brown has responded to the facts set forth in ¶¶ 1-5, 9-15 and 17 of Defendants' Statement of Material Facts. Therefore, Defendants reply to those responses ("DSOF") as follows:

**DSOF-1:** Brown fails to controvert DSOF-1 as stated. He simply prefers that Defendants not use the word "incident" to describe what he alleges occurred on September 13, 2018. (Doc. 30 at 7, ¶ 12).

**DSOF-2:** Brown fails to controvert DSOF-2 as stated. Again, he simply quibbles with Defendants' use of the phrase "related to" in this paragraph. (Doc. 30 at 7-8, ¶ 13).

**DSOF-3:** Brown fails to controvert DSOF-3 as stated. He does not refute the fact that his September 21, 2018 personal injury claim said nothing more about Officer Pettijohn than that he "saw" Officer Swenson's actions. (Doc. 30 at 8, ¶ 14). Instead, based on no evidence from that personal injury claim, Brown argues that it is "implie[d] [that] Def. Pettijohn heard Def. Swenson and Plf. Brown." (Doc. 30 at 8, ¶ 14).

**DSOF-4:** Brown fails to controvert DSOF-4 as stated. Brown offers no evidence that "Smith" handed Pettijohn Brown's personal injury claim on September 21, 2018, but instead asserts that Pettijohn "lied." (Doc. 30 at 8, ¶ 15). However, Pettijohn notarized his signature showing that he received Brown's personal injury claim on September 24, 2018. (Doc. 1-1 at 1).

**DSOF-5:** Brown fails to controvert DSOF-5 as stated. Brown's assertion that he "does not know when Def. Schnurr received [his] injury claim[,]" (Doc. 30 at 8, ¶ 16), does not refute the notation on Brown's injury claim form indicating warden Schnurr's reception of it on October 1, 2018. (Doc. 1-1 at 1).

**DSOF-9:** Brown fails to controvert DSOF-9 as stated. Brown does not dispute that he filed a grievance form on April 25, 2019. (Doc. 30 at 8, ¶ 17). He argues that he was not attempting

to grieve the denial of his personal injury claim, but instead was filing a "special kinds of problems" claim. (Doc. 30 at 8-9, ¶ 17). However, his grievance form specifically notes that Brown "attached … a copy of a[n] injury claim # 7940 that was finally returned to me on 4-17-2019 by Unit Team Graff[.]" (Doc. 1-1 at 40). Injury claim #7940 is the personal injury claim Brown submitted on September 13, 2018, which says nothing about "special kinds of problems." (Doc. 1-1 at 1-5).

**DSOF-10:** Brown fails to controvert DSOF-10 as stated. Again, Brown does not refute the fact that the "Unit Team Response" to his grievance form states that "the grievance procedure is not to be used as a substitute for or part of the injury claims procedure." He simply reiterates that he filed a "special kinds of problems" complaint. (Doc. 30 at 9, ¶ 18).

**DSOF-11:** Brown fails to controvert DSOF-11 as stated. Again, Brown does not refute any facts in Defendant's paragraph, but again asserts that he made a "special kinds of problems" complaint. (Doc. 30 at 9-10, ¶ 19). But it is clear that the warden's May 3, 2019 letter to Brown was referring solely to Brown's September 21, 2018 personal injury claim, which does not mention "special kinds of problems." (Doc. 1-1 at 23).

**DSOF-12:** Brown fails to controvert DSOF-12 as stated. Brown's response here suffers from the same problem as his previous three responses, namely, that he does not refute any fact in Defendant's paragraph, but simply reasserts that he submitted a "special kinds of problems" complaint. (Doc. 30 at 10, ¶ 20). But again, the warden's June 17, 2019 letter clearly refers solely to Brown's injury claim # 7940, which is not a "special kinds of problems" complaint. (Doc. 1-1 at 57).

**DSOF-13:** Brown fails to controvert DSOF-13 as stated. In his Response, Brown misstates Defendant's paragraph. Defendants did not allege that Brown never filed a grievance

3

against Swenson and Pettijohn regarding the incident on September 13, 2018. (Doc. 30 at 10, ¶ 21). Rather, Defendants stated that Brown filed no such grievance "until September 25, 2019[.]" (Doc. 26 at 4, ¶ 13). Brown cites his Exhibit B-52, attached to his Response, as evidence that KDOC officials are in the habit of destroying his legal papers, but that Exhibit shows no such thing. (Doc. 30 at 11, ¶ 21; Doc. 30-2 at 53). Brown also claims he filed a Form-9 on February 5, 2019 (Doc. 30 at 11, ¶ 21) but his Exhibit E-12, attached to his Complaint, is not a Form-9, and it simply makes a request to retain camera footage. (Doc. 1-1 at 80). It cannot be considered a grievance.

**DSOF-14:** Brown fails to controvert DSOF-14 as stated. Brown does not dispute the fact that Unit Team Supervisor (UTS) Graf sent him a Memo on October 4, 2019, nor does he dispute the contents of the Memo. (Doc. 30 at 11-12, ¶ 22). Brown again reverts to the unsubstantiated claim that KDOC officials have destroyed Form-9 forms he has filed. (Doc. 30 at 11, ¶ 22).

**DSOF-15:** Brown fails to controvert DSOF-15 as stated. Brown again quibbles about the semantics of how to characterize warden Schnurr's response to him. (Doc. 30 at 12, ¶ 23). But he offers no refutation of any fact stated in Defendants' paragraph.

**DSOF-17:** Brown fails to controvert DSOF-17 as stated. His baseless assertion that KDOC's grievance procedures are "a rubber stamp reply system" is irrelevant, as is the fact that the Secretary of Correction's designee signed the response and not the Secretary himself. (Doc. 30 at 12, ¶ 24).

**II.   Arguments and Authorities**

Rather than reiterating every previous argument, Defendants incorporate herein, as if set forth in full, the arguments and authorities in Defendants' Memorandum in Support. (Doc. 26). Defendants' Motion (Doc. 25) should be granted for the reasons previously stated.

4

### A. Dismissal of Brown's state assault and battery claims

First, Brown argues that Defendants have misstated his assault and battery claim. (Doc. 30 at 12, ¶ 26). However, his point in making this argument is unclear since Brown has unmistakably asked this Court to issue a "declaratory judgment stating" that Swenson's actions "constituted assault and battery under Kansas state law." Thus, he has made a state-law claim.

Next, Brown questions the dates Defendants use to calculate the limitations period. (Doc. 30 at 12-13, ¶ 26). He appears to argue that the limitations period does not begin until the day he exhausted his administrative remedies. (Doc. 30 at 13, ¶ 26). Specifically, he asserts that "Kansas tolling principles suspend the running of the limitations period for the time during which the [plaintiff] is exhausting any administrative remedies he's required to use before bringing suit." (Doc. 30 at 13, ¶ 26). For support he cites *Bloom v. McPherson*, 346 Fed. Appx. 368, 371 (10th Cir. 2009). (Doc. 30 at 13, ¶ 26). However, *Bloom* does not support Brown's contention because there the Court was applying Kansas common law, which both parties agreed was applicable in that case. 346 Fed. Appx. at 371. By contrast, Brown has not asserted that Kansas common law controls his state-law assault and battery claims here, and Defendants do not agree that it does. Thus, Brown has provided no authority for his claim that the limitations period for his state-law claims was tolled during the exhaustion period.

Further, federal law governs when a claim accrues, and "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). The facts that support Brown's cause of action were apparent to him on the day they occurred, *i.e.*, September 13, 2018. (Doc. 1-1 at 1). Thus, Brown had a year from that date—September 13, 2019—in which to file his § 1983 Complaint asserting state law claims. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989) (statute of limitations applicable to § 1983 actions is borrowed from appropriate state statutes of limitations and tolling principles); K.S.A. § 60-

5

514(b) (one year statute of limitations for "[a]n action for assault [or] battery").

Brown also attempts to introduce a new claim in his Response, arguing that the statute of limitations should be tolled because "staff took all of [his] property, without justification, and refused to return [his] allowable property[.]" (Doc. 30 at 13, ¶ 26). Because Brown never raised this issue in his Complaint, nor did he obtain Defendants' written consent or the Court's leave to amend his Complaint, he cannot raise it now in his Response. *See* Fed. R. Civ. P. Rule 15(a)(2) (a party may not amend pleading unless opposing party gives written consent or court grants leave to amend); *Starnes v. Gillespie*, No. Civ. A. 01-3430-CM, 2004 WL 1003358, at *3 n. 2 (D. Kan. Mar. 29, 2004) (holding that "[t]he court will not consider claims which plaintiff did not include in his complaint and presents for the first time in a response brief").[1]

Brown's assault and battery claims are untimely and should be dismissed.

### B.  Brown's claims against Defendants in their individual capacities

In his Response, Brown vigorously protests that he is by no means suing Swenson or Pettijohn in their official capacities. (Doc. 30 at 14, ¶ 27). He states: "Clearly [plaintiff] has not sued any defendants in any other capacity other than what [plaintiff] wrote in the above exhibits, which is [plaintiff] sued defendants in their 'individual capacities.'" (Doc. 30 at 14, ¶ 27). Given these assertions, Brown cannot obtain the declaratory relief he seeks (Doc. 1 at 12), since "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages[.]" *Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)). Even if this Court were to construe Brown's request for declaratory relief as a request for

---

[1] Brown's statement that KDOC officials and staff "did prevent, thwart and hinder [plaintiff's] efforts to exhaust his administrative remedies. From denying [plaintiff] flex pen, Form-9's, grievances, law library, to retaliating against [plaintiff] by denying [plaintiff] food/meals, toilet paper, to writing false disciplinary reports, telling other inmates [plaintiff] is a rat/snitch, harassing [plaintiff] and so much more[,]" (Doc. 30 at 25, ¶ 34), is likewise raised for the first time in his Response, and for the same reasons, is noncognizable.

6

injunctive relief, such a request is barred. *See Rowe v. Church*, No. 19-3024-SAC, 2021 WL 3186809, at *4 (D. Kan. July 28, 2021) (holding that because plaintiff "is suing the Defendants in their individual capacities only[,]" he "may not seek injunctive relief against Defendants").

### C. Brown's failure to exhaust his administrative remedies under the PLRA

#### i. *Destruction of legal filings*

At the outset, much of Brown's response relies on general and unsubstantiated assertions that his legal filings have been "destroyed" by KDOC officials. (Doc. 30 at 16-18, 20-22, 28-30, 32, ¶¶ 30, 32, 33, 34, 39, 40, 42). For example, in his Complaint he states that "[Hutchinson Correctional Facility] has always been a facility where Unit Teams destroy my Form-9's and grievances[.]" (Doc. 1-1 at 74). He asserts that "[Hutchinson Correctional Facility] staff has a pattern of behavior of destroying my/prisoners Form-9's/grievances to assist other staff [to] get impunity[.]" (Doc. 1-1 at 77). In his Response, Brown claims that he "attempted to exhaust his administrative remedies, and KDOC/HCF staff destroyed [plaintiff's] Form-9's[,] preventing [plaintiff's] attempts to invoke the grievance procedure over and over again." (Doc. 30 at 16, ¶ 30).

These are "mere allegations," which do not satisfy Brown's burden to present specific facts regarding exhaustion. *See McKeighan v. Corrections Corp. of America*, No. 08-3173-SAC, 2010 WL 3913277, at *1 (D. Kan. Sept. 30, 2010). Brown's conclusory allegations that prison officials destroyed his Form-9's does not excuse his failure to exhaust his administrative remedies. *Id*. at *8 (citing *Bell v. Ward*, 189 Fed. Appx. 802, 804 (10th Cir. July 26, 2006)); *see Wolters v Connor*, No. 03-3251-KHV, 2004 WL 723585, at *3 (D. Kan. Apr. 1, 2004) (prisoner cannot claim grievance process is futile "based on allegations that prison officials destroyed some grievances").

### ii. *No grievance filed within 15 days of September 13, 2018 incident*

As Defendants note in their Memorandum in Support, K.A.R. § 44-15-101b—which applies to grievances—allows inmates "15 days from the date of discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays[,]" in which to file a grievance. (Doc. 26 at 9). If this deadline is not met, the inmate's grievance "may be returned to [him] without investigation." K.A.R. § 44-15-101b.

Brown claims that he "mentions a grievance filed on [April 25, 2019], one filed on [February 8, 2019], and another grievance filed on [September 25, 2019][.]" (Doc. 30 at 15, ¶ 30). But even if these were filed and constituted relevant grievances, they are unavailing for Brown, since none of these filings were made within 15 days of the September 13, 2018 incident, as required by Kansas' grievance procedure. Untimely grievances do not satisfy the PLRA exhaustion requirement. *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1185-86 (10th Cir. 2004).

Brown also acknowledges a distinction between the ostensible grievances he filed and his "injury claim" that he filed on September 21, 2018. (Doc. 30 at 15, ¶ 30). This injury claim is the only claim he filed within the 15-day deadline for filing grievances, and the injury claim cannot be considered a grievance. *See Lewis v. Carroll*, No. 12-3112-DC-JPO, 2015 WL 413640, at *2-3 (D. Kan. Jan. 30, 2015) (exhausting the personal injury complaint procedure under Article 16 of chapter 44 of the Kansas Administrative Regulations does not constitute exhaustion of the grievance procedure under Article 15 of chapter 44 of those same regulations).

Brown refers to an Offender Request to Staff Member he allegedly filed on February 5, 2019. (Doc. 30 at 16, ¶ 30). There is no such request in the record. The only document dated February 5, 2019, is an untitled page on which Brown asks that camera footage be preserved. (Doc. 1-1 at 80). But even if this page could be construed as an Offender Request or a Form-9, it too

would be untimely, since it was not filed until four months after the incident at issue. As mentioned above, Brown's proffered reason for not filing a grievance within 15 days of the incident is his unfounded assertion that any grievances he may have timely filed were destroyed. (Doc. 30 at 16, 18, ¶¶ 30, 32). In seeking to be excused from the PLRA's exhaustion requirement, Brown "must do more than make unsupported conclusory allegations of misconduct by prison officials." *Bell*, 189 Fed. Appx. at 803-04. Thus, Defendants are entitled to summary judgment in their favor.

### iii. No "special kinds of problems" claims

Brown attempts to create a triable issue by arguing that he "submitted a special kinds of problems complaint on a grievance form per K.A.R. 44-15-201[.]" (Doc. 30 at 8, ¶ 17). But again, this does not overcome his failure to exhaust. While Brown claims he put his "special kinds of problems grievance form in [an] envelope, sealing it, writing official/legal mail on the outside, and address[ed] to H.C.F.'s warden Dan Schnurr[,]" he provides no evidence that he did so. (Doc. 30 at 8, ¶ 17). But even if taken as true, "special kinds of problems" filings "should be reserved for the most difficult and complex problems" and are not appropriate for "any matter that can be internally handled under the inmate grievance procedure[.]" K.A.R. § 44-15-201(a). Brown's own allegations in this matter make clear that his problem does qualify as a special kind of problem under this regulation. Thus, he was required to go through the normal grievance procedure (and claims he did) pursuant to K.A.R. § 44-15-101 *et seq*.

### iv. Pettijohn's comments about personal injury form irrelevant

At various points, Brown appears to argue that his failure to properly exhaust his administrative remedies is excused because Pettijohn allegedly told him to file a personal injury claim form. (Doc. 30 at 20-21, 30, ¶¶ 32-34, 40). However, Brown offers no evidence that Pettijohn ever told him that filing a personal injury claim form would constitute a proper grievance and

9

exhaustion of the specific incident at issue. *See McMiller v. Corrections Corporation of America*, 695 Fed. Appx. 344, 346 (10th Cir. 2017) ("[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings[,]" and the nonmoving party "must go beyond the pleadings[.]"); *Sherman v. Klenke*, 653 Fed. Appx. 580, 585-86 (10th Cir. 2016). (conclusory and self-serving sworn statements are not sufficient). Indeed, Pettijohn's November 26, 2018 letter to warden Schnurr recommending denial of Brown's injury claim is strong evidence against Brown's argument here.

Moreover, as Defendants point out in their Memorandum in Support—and as Brown confirms in his Response—he has significant experience filing grievances, having "submitted hundreds of Form-9's, grievances, grievance appeals," and various other filings, so he well understands how the grievance process works. (Doc. 26 at 10; Doc. 30 at 15, ¶ 30; Doc. 30-8 at 1, ¶ 2). And even if this Court accepts Brown's purported confusion about the grievance process, this does not excuse his failure to properly exhaust. *See Beals v. Jay*, 730 Fed. Appx. 633, 637 (10th Cir. 2018) (holding that plaintiff cannot "rely on his purported confusion about the grievance process" because "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing"). Hence, he cannot claim that Pettijohn somehow lulled him into following the wrong procedure.

### III. Conclusion

This Court should dismiss Brown's state law claims and grant summary judgment to Defendants on Brown's federal constitutional claims. Brown's state law claims are untimely, and he has failed to show a genuine dispute of material fact regarding his failure to exhaust his administrative remedies on his constitutional claims. In the alternative, Defendants request that this Court enter summary judgment on their behalf on all claims.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Michael J. Duenes*
Michael J. Duenes, KS No. 26431
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Ph: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of May, 2022, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, 2nd Floor
Topeka, KS 66603
Natasha.Carter@ks.gov

Jon Graves
Kansas Department of Corrections
Hutchinson Correctional Facility
500 S. Reformatory Rd., 1568
Hutchinson, KS 67504
Jon.Graves@ks.gov

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Christopher David Brown #57800
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042
*Plaintiff, pro se*

/s/ *Michael J. Duenes*
Michael J. Duenes
Assistant Attorney General

11