IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER DAVID BROWN,

    **Plaintiff,**

    v.

DANIEL SCHNURR, et al.,

    **Defendants.**

Case No. 21-3105-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Christopher David Brown, a prisoner proceeding pro se and in forma pauperis, brings this civil rights action against Kansas Department of Corrections ("KDOC") officials related to a September 13, 2018 incident at the Hutchinson Correctional Facility ("HCF"). Highly summarized, Plaintiff alleges that Defendant Todd Swenson, an HCF officer, intentionally closed a food pass door on Plaintiff's hand and arm, causing him injuries, and denied him his food. Plaintiff alleges that Defendant Jeffrey Pettijohn, also an HCF Officer, witnessed the incident but refused to help. He further alleges that Defendants violated his First Amendment rights by interfering in the grievance process. The Honorable Sam A. Crow screened the Complaint under 28 U.S.C. § 1915A and allowed Plaintiff an opportunity to amend his complaint or show cause why the case should not be dismissed based on several deficiencies.[1] On January 3, 2022, after considering several motions and notices filed by Plaintiff, Judge Crow dismissed Plaintiff's claims against Defendants Daniel Schnurr, the Warden at HCF, and Carman Baynham, a nurse who treated him at HCF.[2] Judge Crow

---

[1] Doc. 7.
[2] Doc. 16.

permitted Plaintiff to move forward with his federal and state law claims against Swenson and Pettijohn.

Now before the Court is Swenson and Pettijohn's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 25). The Court also considers two motions filed by Plaintiff: Motion Requesting the Court Issue an Order to Show Cause why KDOC Officials/Employee's [sic] Continue to Subject to Numerous Forms of Retaliation for Plaintiff Exercising his First Amendment Rights and to Explain Why the Court Shouldn't Issue a Temporary Preliminary Injunction and/or Protective Order (Doc. 42); and Motion to Correct the Record (Doc. 46). The motions are fully briefed and the Court is prepared to rule. As described more fully below, Plaintiff's motion seeking an order to show cause regarding injunctive relief is denied, Defendant's motion to dismiss or in the alternative for summary judgment is granted, and Plaintiff's motion to correct the record is moot.

## I.  Motion Seeking Injunctive Relief

Plaintiff has repeatedly filed documents in this case claiming that the named Defendants and unnamed KDOC officials engaged in and continue to engage in First Amendment retaliation against him.[3] In his motion seeking a "protective order" or an order to show cause why injunctive relief should not be granted, he claims that KDOC officials regularly retaliate against him for exercising his First Amendment rights to file legal claims and complain about his prison conditions by destroying or losing his grievance forms, denying him medication, placing him with cellmates who KDOC officials know to be dangerous to Plaintiff, lodging false disciplinary actions against him, disconnecting his phone lines during personal calls, and physically harming him. He fears that KDOC officials plan to transfer him to a different facility that will be "worse

---

[3] *See* Docs. 10, 11, 13–15, 34, 37, 42.

2

off than Plaintiff is currently."[4]  And his motion discusses grievance forms he filed on May 17, 2022, for which he was retaliated against by being placed in a cell by himself.  Plaintiff asks the Court to require "KDOC officials" to show cause why the Court should not issue a "Temporary Preliminary Injunction and/or Protective Order" due to First Amendment retaliation.[5]

"The limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"[6]  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[7]  This standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."[8]

The Court denies Plaintiff's request for an order to show cause why a preliminary injunction, or order of protection, should not be issued to prevent ongoing First Amendment retaliation.  Injunctive relief is a "drastic and extraordinary remedy."[9]  Accordingly, the movant must demonstrate the request is related to the conduct that gives rise to the underlying claims in the Complaint.[10]  Plaintiff's underlying claims arise out of an incident that occurred at HCF on September 13, 2018, when Swenson allegedly intentionally closed a food pass door on Plaintiff's hand and arm, causing him injuries, and denied him his meal.  Although Plaintiff alleges in his

---

[4] Doc. 42 at 3.

[5] *Id.* at 1.

[6] *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

[7] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

[8] *Id.* at 21 (collecting cases).

[9] *VoteAmerica v. Schwab*, 576 F. Supp. 3d 862, 882 (D. Kan. 2021) (citations omitted).

[10] *See Hicks v. Jones*, 332 F. App'x 505, 507–08 (10th Cir. 2009).

Complaint that Defendants "continue destroying Plf's Form-9's/official/legal papers regarding *this incident* as a retaliatory act,"[11] his motion seeking injunctive relief discusses conduct by officials other than Swenson and Pettijohn and relates to incidents that occurred after this Complaint was filed.  Because the motion seeks relief that is unrelated to the underlying claims in this case, the Court cannot grant the injunctive relief Plaintiff requests or issue an order to show cause why such injunctive relief should not be granted.

## II.     Federal Claims

Swenson and Pettijohn, the remaining Defendants in this case, move to dismiss, or in the alternative, for summary judgment on Plaintiff's federal claims under § 1983 based on Eleventh Amendment immunity and failure to exhaust administrative remedies.  Defendants move to dismiss under the Eleventh Amendment to the extent Plaintiff alleges official-capacity claims against Swenson and Pettijohn.  A suit for damages against a state official in his official capacity is the treated as a suit against the state and therefore subject to Eleventh Amendment immunity.[12] When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[13]  The Court finds that Defendants' motion to dismiss the official-capacity claims against Swenson and Pettijohn is moot.  The Complaint alleges federal claims against these Defendants in their individual capacities only, and Plaintiff confirms in his response that he intended to sue them in their individual capacities only.  Thus, the Eleventh Amendment does not apply.

---

[11] Doc. 1 at 8.

[12] *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001) (citations omitted).

[13] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

A.  **Summary Judgment Standard**

Defendants rely on matters outside the pleadings to support their exhaustion of administrative remedies affirmative defense, so the Court applies the summary judgment standard in Fed. R. Civ. P. 56(a).[14]  Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[15]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[16]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[17]  A fact is "material" if, under the applicable substantive law, "it is essential to the proper disposition of the claim."[18]  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."[19]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[20]  In responding to a motion for summary judgment, "a party cannot rest on

---

[14] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Defendants properly gave notice at the time of filing that this issue was presented under the summary judgment standard and Plaintiff has had an opportunity to present material on his own behalf material to the motion.  *See* Docs. 27, 30, 33.

[15] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[16] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[17] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[18] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[19] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[21]

### B. Uncontroverted Facts

The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party. Plaintiff alleges in his Complaint that he was the victim of excessive force on September 13, 2018, when Swenson purposefully closed a food pass door on Plaintiff's hand and arm causing injury, pain, and suffering. Plaintiff alleges that Pettijohn witnessed what happened and, despite Plaintiff asking for his help, did not intervene to help him.

On September 21, 2018, Plaintiff submitted a Personal Injury Claim Form pursuant to IMPP 01-118D, requesting $500 for his injuries. He recited the events of September 13, 2018, and named Swenson and Pettijohn. Pettijohn signed this form on September 24, 2018, and the warden received it on October 1, 2018. Pettijohn sent a memo to the warden on November 26, 2018, explaining that there was an investigation into the incident and it was determined that "Swenson did in fact use excessive force in this situation," but "the situation was handled at a supervisory level."[22] The warden disapproved the personal injury claim on March 14, 2019, and the Secretary of Corrections disapproved the claim on March 25, 2019.

Plaintiff submitted several request forms in late 2018 and early 2019 asking for the status of his Personal Injury Claim Form. The form that included the denials of his injury payment request, was returned to him on April 17, 2019.

On April 25, 2019, Plaintiff filed an Inmate Grievance Form, complaining that his personal injury claim was denied and asking for a review of security footage from September 13,

---

[21] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).
[22] Doc. 1-1 at 7.

6

2018. At the top of the form, Plaintiff wrote "Special Kinds of Problems."[23] He argued in the grievance that even if Swenson's use of excessive force was handled at the supervisory level, he has not been compensated for his physical and emotional injuries. He alleged that Pettijohn retaliated against him and lied about the extent of Plaintiff's injuries and medical treatment. He alleged that he received inadequate medical treatment. And he complained about the length of time it took to return the Personal Injury Claim Form to him.

The Unit Team Response on Plaintiff's April 25, 2019 grievance form states: "Per KAR 44-15-101 the grievance procedure is not to be used as a substitute for or part of the injury claims procedure. You can not grieve the property claim response."[24] There is no unit team signature. In the Inmate Response section of the form, Plaintiff responded that he was not satisfied and attempted to submit the document to his Unit Team representative. Plaintiff wrote a note on the form that it was "Returned to me 5-23-2019 by UT Graff at cell again (Returning/Official Mail to Warden's office)."[25]

Warden Daniel Schnurr sent a letter to Plaintiff dated June 17, 2019, with the subject line: "Form-9-Correspondence," stating:

> I have received the form-9 you sent me regarding the grievance you attached and how it was not handled properly.
>
> The grievance that you initially sent to my office was handled properly. It was returned to Unit Team (UTS Graff), since you did not follow the proper grievance procedure according to K.A.R. 44-15-102. At that time, the grievance was returned to you since the issue you brought up concerning your injury claim is a non-grievable issue according to the following K.A.R.:
>
> *KAR 44-15-101a provides that the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate*

---

[23] *Id.* at 40.

[24] *Id.*

[25] *Id.*

> *disciplinary procedure, the classification decision-making process, or the **property loss or personal injury claims procedure**, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure.*
>
> UTS Pettijohn is not retaliating against you and his response to your injury claim #BA0007940 is professional and has been approved.
>
> If you are unhappy with the outcome of the injury claim, you have the right to file a claim with the joints claim committee.[26]

On September 25, 2019, Plaintiff filed a grievance against Swenson and Pettijohn based on their conduct on September 13, 2018. He stated in the form that he incorporates an attached Form-9 "as though it was stated fully herein this grievance."[27] He contended in this grievance that Pettijohn destroyed a "Form-9" he first submitted and complained that Graff refused to process the forms he has turned in complaining about that incident. He also claimed that Pettijohn told him there was no time limit for an investigation to be completed.

On October 4, 2019, Unit Team Supervisor Graff sent Plaintiff a memo, stating:

> [Plaintiff] once again submitted a grievance which you are attempting to address outside the time frame allowed for filing a grievance. . . . You have already once attempted to address this complaint outside the allowed time frame. Simply adding a recent form-9 about the event does not change the fact that the event occurred well outside the time limit. This grievance is being returned to you due to being outside the time frame for filing a grievance and will not receive a response.[28]

A few weeks later, on October 28, 2019, Warden Schnurr wrote Plaintiff a memo stating that the matters raised in his grievance were previously addressed and outside the applicable time frame for filing a grievance under K.A.R. § 44-15-101(b). On November 22, 2019, the Secretary

---

[26] *Id.* at 57.

[27] *Id.* at 69.

[28] *Id.* at 81.

of Corrections responded to Plaintiff's November 18, 2019 appeal of Schnurr's decision, stating that HCF staff's response was appropriate.

According to KDOC records, Plaintiff has filed 293 grievance appeals to the Kansas Secretary of Corrections between September 15, 1993 and November 5, 2021.

### C.  Discussion

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[29] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[30] Failure to exhaust is an affirmative defense; therefore, Defendants bear the burden of pleading it and demonstrating that it applies.[31]

"[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."[32] Even if the inmate begins the grievance procedure, if he does not complete it, he is barred from pursuing relief under § 1983.[33] The exhaustion requirement is not left to the district court's discretion but rather is mandatory, with one

---

[29] 42 U.S.C. § 1997e(a).  Plaintiff argues that his federal claims are not confined to § 1983.  He insists that his federal claims also arise under 28 U.S.C. §§ 2201–2202, 2283–2284, 1331, 1343(a)(3), and 1367(a).  He also cites Fed. R. Civ. P. 38(b) and 65.  *See* Doc. 30 at 5.  None of this authority provides Plaintiff with a federal cause of action.  28 U.S.C. §§ 1331, 1367, and 1343 all govern the scope of federal jurisdiction; they do not create private causes of action.  28 U.S.C. § 2201–2202 govern when a party may seek declaratory relief.  Likewise, 28 U.S.C. §§ 2283 and 2284 are procedural statutes—§ 2283 governs when a federal court may grant an injunction to stay proceedings in state court, while § 2284 governs when a three-judge panel is warranted.  Plaintiff may not assert substantive claims under the Federal Rules of Civil Procedure, which only regulate practice and procedure in the federal courts.  *See* 28 U.S.C. § 2072; *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10 (1941).  The only federal statute cited by Plaintiff in his Complaint that gives rise to a private cause of action is 42 U.S.C. § 1983.

[30] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[31] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Freeman v. Watkins*, 479 F.3d 1257, 1259–60 (10th Cir. 2007).

[32] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[33] *Id.* (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

qualifier—the administrative "remedies must indeed be 'available' to the prisoner."[34] "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy unavailable and a court will excuse the prisoner's failure to exhaust."[35]

The parties dispute whether the prison forms Plaintiff submitted in 2018 and 2019 exhausted his administrative remedies. Defendants argue that the Personal Injury Claim Forms Plaintiff submitted in 2018 did not exhaust his administrative remedies for this § 1983 action, and that his 2019 grievance forms were untimely. Plaintiff responds that prison officials interfered with his attempts to pursue administrative remedies and that the forms he submitted fulfilled the KDOC grievance process requirements.

The KDOC has a four-part grievance system that applies to § 1983 claims, contained in Article 15 of Chapter 44 of the Kansas Administrative Regulations.[36] Under KAR § 44-15-101b:

> Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays. No grievance, regardless of time of discovery, shall be filed later than one year after the event. Any grievance filed later than these deadlines may be returned to the inmate without investigation. The name of the individual returning the grievance, the date of the return, and the reasons for the return shall be noted on the grievance. An inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process, unless an extension of time for the response is agreed to in writing by the inmate and staff person answering the grievance.

---

[34] *Ross v. Blake*, 578 U.S. 632, 639 (2016).

[35] *Lindsey v. Cook*, No. 5:19-CV-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (quoting *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020)).

[36] *See* K.A.R. § 44-15-101a(d)(1)(A)–(B) (stating that the grievance procedure in that article applies to "[c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and [] actions by employees and inmates, and incidents occurring within the facility."); K.A.R. § 44-15-101(b) (setting forth the grievance process).

Defendants argue that Plaintiff failed to timely exhaust because his Article 15 grievance was not submitted until September 25, 2019, more than one year after the alleged excessive force took place.  The Court agrees.  To be sure, Plaintiff filed a personal injury claim within fifteen days on September 21, 2018, pursuant to IMPP 01-118D.  He suggests that his clock did not begin to run until fifteen days after he received back the denial of his personal injury claim on April 17, 2019.  But the regulation makes clear that the clock began to run on September 13, 2018.  The personal injury claim that Plaintiff filed is a "separate and distinct" procedure and does not count as exhausting his claims under the PLRA for the events that transpired on September 13, 2018.[37]  Defendants have come forward with sufficient evidence to demonstrate as a matter of law that Plaintiff failed to timely exhaust his administrative remedies for purposes of the PLRA by filing under the grievance procedure that applies to his § 1983 claims.

Plaintiff makes several additional arguments about why the documents he submitted in 2018 and 2019 fulfilled the PLRA's exhaustion requirement.  First, he contends that KDOC officials destroyed his administrative filings, which should excuse his failure to exhaust.  But Plaintiff has failed to come forward with competent evidence to support this assertion—he simply makes the conclusory assertion that KDOC officials must have destroyed them.  He neither provides copies of a timely Chapter 15 grievance, nor explains whether the destroyed grievance contains all of the content required by Article 15.  And the fact that it took several months for KDOC to investigate his personal injury claim and return his form does not toll the deadline for filing a grievance.  Federal courts in this district have consistently held that the personal injury claim process in Article 16 does not exhaust administrative remedies for

---

[37] *See, e.g.*, *Lewis v. Carrell*, No. 12-cv-3112-DDC-JPO, 2015 WL 413640, at *3 (D. Kan. Jan. 30, 2015); *Lindsey*, 2021 WL 483855, at *2.

purposes of a § 1983 action.[38]  He was required to follow the four-step process in § 44-15-101 within 15 days from the date of the discovery of the event giving rise to the grievance.  Because Plaintiff failed to do so, he did not timely exhaust his administrative remedies.

Plaintiff appears to suggest that "the event giving rise to the grievance" is the denial of his personal injury claim.  But this argument asks the Court to treat his grievance as a timely "appeal" of the decision to deny his personal injury claim.  That is not how the process works.  The regulations explicitly state that "[t]he grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, [or] the property loss or personal injury claims procedure."[39]  And the regulations permit both types of complaints to proceed at the same time.[40]

Next, Plaintiff argues that he filed a "Special Kinds of Problems" claim, which is excepted from the Article 15 grievance requirement and timeline.  This argument is also unavailing.  Under KAR § 44-15-201, an inmate can "bring a problem to the attention of a higher authority without going through the grievance procedure."  If this provision applies, the inmate is permitted to address the document in official mail to the warden, the Kansas Secretary of Corrections, or the state pardon attorney.  This procedure is "reserved for the most difficult and complex problems.  Generally, any matter that can be internally handled under the inmate grievance procedure shall not be considered as appropriate for the use of the official mail

---

[38] *Lewis*, 2015 WL 413640, at *3; *Conley v. Pryor*, No. 11-3200-DDC-KGS, 2015 WL 413638, at *14 (D. Kan. Jan. 30, 2015); *Lindsey*, 2021 WL 483855, at *2; *Lynn v. Willnauer*, No. 19-cv-3117-HLT, 2022 WL 3027013, at *2–3 (D. Kan. Aug. 2, 2022).

[39] KAR § 44-15-101a(d)(2).

[40] KAR § 44-16-104a(c) ("The requirement that the inmate submit the claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state."); *Conley*, 2015 WL 413638, at *13 ("This means an inmate who wishes to pursue *both* a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act.").

correspondence privilege."[41]  The regulation allows an official "who receives a complaint letter [to] return it to the inmate with instructions . . . to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure."[42]

The documents attached to Plaintiff's Complaint demonstrate that Plaintiff's "Special Kinds of Problems" form was returned to his unit team supervisor because he did not follow the grievance procedure, as permitted by KAR § 44-15-201(b).  And there is no evidence that Plaintiff's complaints rose to the level of "the most difficult and complex problems" contemplated by this regulation.  Instead, the matter could be appropriately handled through the grievance procedure.  And it is uncontroverted that the KDOC conducted an investigation.  Given Plaintiff's robust history of grievances within the KDOC, he was clearly familiar with how that process should work yet failed to timely avail himself of the administrative remedies that are a prerequisite to his § 1983 claims.  Moreover, he demonstrated he could submit a grievance when he attempted to submit the untimely form in September 2019.

Finally, Plaintiff suggests that Pettijohn misled him about the steps required to exhaust his claims because he told him to file a Personal Injury Claim Form and suggested his personal injury claim would be approved.  Plaintiff states that he would not have filed this § 1983 case if his personal injury claim would have been approved.  It is true that an administrative remedy is not "available" under the PLRA "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[43]  But there is no competent evidence in the summary judgment record to support Plaintiff's

---

[41] KAR § 44-15-201(a).

[42] *Id.* § 44-15-201(b).

[43] *Ross v. Blake*, 578 U.S. 632, 644 (2016).

contention that Pettijohn thwarted his attempts to take advantage of the Chapter 15 grievance process. It would not have been incorrect for Pettijohn to tell Plaintiff to file a personal injury claim form. And there is no evidence Plaintiff was prevented from filing a timely grievance while the personal injury claim and the investigation was pending. Again, given Plaintiff's experience with the grievance procedure, it is reasonable to infer that he was familiar with those forms and how to initiate the Article 15 grievance process.

In sum, Defendants have come forward with sufficient evidence to demonstrate that there is no genuine issue of material fact about whether Plaintiff failed to exhaust his administrative remedies. Plaintiff has failed to submit competent evidence to oppose the summary judgment motion. Accordingly, Defendants' motion for summary judgment on the federal claims under § 1983 is granted.

### III. State Law Claims

The Court has granted summary judgment in favor of Defendants on the only claims left in this action over which the Court has original jurisdiction. Plaintiff's remaining claims arise under Kansas law. The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[44] Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[45] Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[46] Because the Court finds that Plaintiff's federal claims are subject to dismissal, the

---

[44] 28 U.S.C. § 1367(c)(3).

[45] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997).

[46] *Id.*

Court exercises its discretion and declines to assert supplemental jurisdiction over any remaining state law claims.

### IV. Plaintiff's Motion to Correct Record

Finally, Plaintiff recently filed a motion docketed as "Motion to Correct the Record." In this motion, Plaintiff asks the Court to correct a statement in its July 6, 2022 Order referring to his supplemental response as untimely.[47] Plaintiff argues that he provided his supplemental response to KDOC officials within the filing period, but it was not submitted by them to CM/ECF on time. Plaintiff's motion is moot. Regardless of the timeliness of his filing, the Court considered it in rendering its decision on Defendants' dispositive motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Swenson and Pettijohn's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 25) is **granted**. The motion for summary judgment is granted as to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS FURTHER ORDERD BY THE COURT** that Plaintiff's Motion Requesting the Court Issue an Order to Show Cause why KDOC Officials/Employee's [sic] Continue to Subject to Numerous Forms of Retaliation for Plaintiff Exercising his First Amendment Rights and to Explain Why the Court Shouldn't Issue a Temporary Preliminary Injunction and/or Protective Order (Doc. 42) is **denied**; and his Motion to Correct the Record (Doc. 46) is **moot**.

**IT IS SO ORDERED.**

Dated: August 24, 2022

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE

---

[47] Doc. 40.